JAMES R. FELTON, ESQ. (State Bar No. 138767)
  jfelton@gblawllp.com
JEREMY H. ROTHSTEIN, ESQ. (State Bar No. 316140)
  jrothstein@gblawllp.com
G&B LAW, LLP
16000 Ventura Boulevard, Suite 1000
Encino, California 91436
Tel:  (818) 382-6200 • Fax: (818) 986-6534

Attorneys for Petitioner
JKO Group, LLC and Blackhawk Solar, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re | Case No.: 9:25-bk-10329-RC |
| GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership, | Chapter 11 Proceeding |
| Debtor and Debtor-in-Possession. | REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY |
| | Date:        June 3. 2025<br>Time:        9:00 a.m.<br>Ctrm:        Ctrm 201 |

TO THE HONORABLE RONALD A CLIFFORD, III, UNITED STATES BANKRUPTCY JUDGE AND TO ALL PARTIES IN INTEREST:

Pursuant to Federal Rule of Evidence 201, Movants JKO Group, LLC and Blackhawk Solar LLC (collectively, the "Lender") respectfully request that the Court take judicial notice of the following document in support of their Motion for Relief from the Automatic Stay:

| Exhibit | Document |
|---------|----------|
| A. | *Order Approving Debtor's Motion for Order: (1) Approving Compromise of Controversy with JKO Group, Inc. and (2) Dismissing Chapter 11 Case* filed in Case Number 22-10626 [Dkt. # 119] |

| B. | *Motion for Order: (1) Approving Compromise of Controversy with JKO Group, Inc. and (2) Dismissing Chapter 11 Case* filed in Case Number 22-10626 [Dkt. # 79], attaching the Declaration of Christine Hanna at page 28, and Exhibit 2 to the Hanna Declaration (the "Stipulation"), and Exhibit 5 to the Hanna Declaration (the "Deed in Lieu of Foreclosure") |
|---|---|

The aforementioned documents are the proper subject of a request for judicial notice. Facts proper for judicial notice are those not subject to reasonable dispute and either "generally known" in the community or "capable of accurate and ready determination" by reference to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201. Judicial notice is particularly appropriate for the court's own records in prior litigation related to the case before it. *No Cost Conference, Inc. v. Windstream Communs., Inc.,* 940 F. Supp. 2d 1285, 1295 (S.D. Cal. 2013)(citing *Amphibious Partners, LLC v. Redman,* 534 F.3d 1357, 1361-62 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties) [*and] see also United States v. Howard,* 381 F.3d 873, 876 n.1 (9th Cir. 2004) (taking judicial notice of court records in another case).)

These records attached as Exhibits A and B hereto are the Court's own records in the Debtor's prior bankruptcy case. The Lender respectfully requests that the Court grant this Request for Judicial Notice in its entirety and take judicial notice of **Exhibit A and B** attached to this request.

DATED: May 13, 2025                    G&B LAW, LLP



By: _____
JEREMY H. ROTHSTEIN, ESQ.
Attorneys for Petitioner JKO Group, LLC and
Blackhawk Solar LLC

2548219.1 - 32572.0001

# EXHIBIT A

1   GARRICK A. HOLLANDER – State Bar No. 166316
    ghollander@wghlawyers.com
2   **WINTHROP GOLUBOW HOLLANDER, LLP**
    1301 Dove Street, Suite 500
3   Newport Beach, CA 92660
    Telephone:   (949) 720-4100
4   Facsimile:   (949) 720-4111

5
    General Insolvency Counsel for Global Premier Regency
6   Palms Oxnard, L.P., Debtor and Debtor-in-Possession

**FILED & ENTERED**

**AUG 15 2023**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY rust         DEPUTY CLERK**

7

8                   UNITED STATES BANKRUPTCY COURT    CHANGES MADE BY COURT

9            CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

10

11  In re:                                  Case No. 9:22-bk-10626-RC

12  GLOBAL PREMIER REGENCY PALMS            Chapter 11 Proceeding
    OXNARD, L.P., a California limited
13  partnership,                            **ORDER APPROVING DEBTOR'S**
                                            **MOTION FOR ORDER: (1) APPROVING**
14              Debtor and                  **COMPROMISE OF CONTROVERSY**
                Debtor-in-Possession        **WITH JKO GROUP, INC. AND (2)**
15                                          **DISMISSING CHAPTER 11 CASE**

16                                          DATE:      August 8, 2023
                                            TIME:      2:00 p.m.
17                                          PLACE[1]:  Courtroom 201
                                                       1415 State Street
18                                                     Santa Barbara, CA  91301

19

20          On August 8, 2023 at 2:00 p.m., the Court held a hearing on the *Notice of Motion and*

21  *Motion for Order: (1) Approving Compromise of Controversy with JKO Group, Inc. and (2)*

22  *Dismissing Chapter 11 Case* [Docket No. 79] (the "Motion") filed by Global Premier Regency

23  Palms Oxnard, L.P., a California limited partnership, the debtor and debtor-in-possession in the

24  above-entitled Chapter 11 proceeding (the "Debtor"), the memorandum of points and authorities,

25  and the declaration of Christina Hanna in support of the Motion (the "Hanna Declaration").  The

26  Court having reviewed and considered the Motion, the memorandum of points and authorities, the

27

28  _____
    [1] The hearing on the Motion is scheduled to be heard via Zoom.  Please check the Court's calendar just prior to the
    hearing to confirm. http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/.

    Order#1415985#8c7e09e5-bcdd-453e-86a6-fbb96f26e7be

Hanna Declaration and all exhibits appended thereto, finding that due and proper notice of the

Motion and the hearing on the Motion was appropriately given and no opposition to the Motion

having been filed, and for good and sufficient cause appearing therefore, the Court hereby makes

the following Findings of Fact, Conclusions of Law, and Order:

**IT IS HEREBY FOUND AND DETERMINED** that:

      a.      The notice given of the hearing on the Motion was sufficient under the circumstances of this case.

      b.      Notice of the deadline and procedures to assert an administrative claim as set forth in the Motion was sufficient.

      c.      Christine Hanna has the authority, as Manager of Global Premier America #3, LLC, a California limited liability company, the general partner of the Debtor, to act on behalf of the Debtor, in and out of Chapter 11, to execute, enter into, and deliver the Compromise with JKO Group, LLC (including any successor-in-interest or assignee thereof, "JKO"), and all such other documents necessary to obtain, close, consummate, and perform under the Compromise,[2] and to take such other and further acts as may be necessary or desirable in connection with, and to close and consummate, the Compromise.

      d.      The Compromise is critical to the Debtor's ability to preserve its going concern and emerge from Chapter 11 and provides creditors with the greatest opportunity for payment.

      e.      The Compromise and terms and conditions thereof of comply with the requirements of Rule 9019 of the Federal Rules of Bankruptcy Procedure, and is reasonable, fair, prudent, equitable, and in the best interests of creditors.

      f.      Good and adequate cause exists for granting the Motion.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

    1.      The Motion, as modified herein, is granted;

---

[2] Except as otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Motion.

2.      The findings of fact and conclusions of law of the Court set forth herein and at the Hearing on the Motion shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable herein by Bankruptcy Rule 9014, and the findings and conclusions of the Court at the Confirmation Hearing are incorporated herein by reference. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

3.      Except as otherwise expressly set forth herein, any formal or informal objection to confirmation, to the extent not already withdrawn, waived, or settled, and all reservations of rights included therein, shall be, and hereby are overruled.

4.      The Compromise is hereby modified as follows:

    a.   The closing and funding of the Compromise shall occur no later than August 21, 2023;

    b.   The use of the PACE Loan Proceeds shall remain the same, except for the following modifications:

        i.   $650,000 shall be paid to  administrative expense priority claimants.

        ii.   $14,940.26 shall be paid to Bestway Laundry Solutions on account of its allowed administrative claim.

        iii.   100% of all mechanics lien claims owed by and due from the Debtor shall be paid to the holders of such claims.

        iv.   100% of all non-insider general unsecured claims owed by and due from the Debtor shall be paid to the holders of such claims.  To the extent the non-insider general unsecured claims are less than $422,000, JKO and the professionals shall split equally from the PACE Loan Proceeds the difference between the actual amount and $422,000.

5.      The Compromise, as modified herein,[3] and all terms contained therein are hereby approved in all respects pursuant to Bankruptcy Rule 9019, is binding upon all Persons affected

---

[3] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Compromise. If not defined in the Compromise, such terms shall have the meanings set forth in the Motion or as defined in Section 101 of the Bankruptcy Code, as context dictates.

thereby, except as otherwise stated herein, and shall be effectuated in accordance with the terms thereof.

6.      The Debtor, and Christine Hanna on behalf of the Debtor, is authorized to enter into the Compromise, as modified herein, execute any and all such additional documents as may be necessary to effectuate the Compromise, and take all actions necessary to effectuate the Compromise.

7.      The Loan Documents constitute valid, binding, and enforceable obligations of the Debtor, as modified by the Stipulation and this Order.

8.      JKO shall have an allowed claim against the Debtor of $30,854,934.02 as of August 10, 2023.

9.      Before the Closing under the Compromise, the Debtor shall deliver to G&B Law, LLP, the original completed and notarized grant deed in lieu of foreclosure in the form attached as **Exhibit 5** (the "Deed in Lieu") to the Hanna Declaration. The Deed in Lieu shall be in favor of Blackhawk Solar LLC, a Delaware limited liability company (including any successor-in-interest or assignee thereof, "Deed Holder"). JKO, on behalf of itself and Deed Holder, acknowledges and agrees that the Deed in Lieu provided under this paragraph is not intended to, and does not, transfer title at the time of execution. Deed Holder shall hold and retain the Deed in Lieu provided that the Company complies in all respect with the terms of the Compromise, as modified herein, and there is no Payment Default or Uncured Default, as defined in Paragraph 11 of the Compromise. Upon the occurrence or continuance of a Payment Default or Uncured Default under the Compromise or the Loan Documents, Deed Holder may immediately record the Deed in Lieu and shall immediately notify the Debtor of said recording. JKO and Deed Holder shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions.

10.     Upon a Payment Default or Uncured Default, the Debtor agrees to cooperate in the execution, in a timely manner, of any and all documents that are, or may be, necessary to cause the immediate conveyance of the Property to Deed Holder, including execution of a deed other than the Deed in Lieu. This provision may be enforced by specific performance.

11. The liens and security interests that JKO has on the Property will not merge with the legal estate and title in the Property that may be transferred pursuant to the terms set forth in the Compromise. The liens and Loan Documents will not be released or relinquished, and the priority of the liens of the Loan Documents will not be altered or subordinated to any other liens or interests. JKO may merge the liens and security interests with the fee or leasehold title to the property, but only by a separate document recorded later or through foreclosure. The statutes of limitation applicable to the exercise of the JKO's rights and remedies under the Loan Documents are extended and tolled until four years after the Maturity Date.

12. Upon a Payment Default or an Uncured Default, JKO may exercise all rights and remedies available under the Loan Documents as if fully described and incorporated into the Compromise. All of JKO's remedies under the Compromise and the Loan Documents are cumulative with one another and with remedies under applicable law.

13. The Debtor is authorized to continue operating its business and pay its creditors in the ordinary course of business, as projected in the Budget attached as **Exhibit 6** to the Hanna Declaration, to the extent funds exist to pay such creditors, and such payment is consistent with the terms of the Compromise and this Order.

14. Except as otherwise provided in the Compromise, Budget or Motion, or until such time as the Debtor fails to pay its debts as projected in the Budget, all persons or entities who have held, hold or may hold claims against, or interests in, the Debtor shall be enjoined on and after the date of entry of this Order and through the Maturity Date of the Compromise, from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Debtor's property, against the estate or against the proceeds of such property, on account of any such claim or interest; (ii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor's property or interests in such property, on account of any such claim or interest; (iii) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor or against the property or interest in property of the Debtor on account of any claim or interest; and (iv) asserting any claim or interest against the Debtor. This paragraph shall not apply to JKO or Deed Holder.

15.     Except as provided in the Compromise, Motion of this Order, effective as of the date of the entry of this Order, all Persons shall be precluded from asserting against the Debtor, its partners, officers, directors, agents, attorneys, consultants, and each of their successors, or their property, any claims, debts, rights, causes of action, liabilities, or equity interests based upon any act, omission, transaction, or other activity of any nature that occurred during the Debtor's bankruptcy, as a result of the filing of the bankruptcy, or anything related to, or in connection with, the bankruptcy and this or any Order of the Court. This paragraph shall not apply to JKO or Deed Holder.

16.     This Chapter 11 case is hereby dismissed, effective immediately without further order of the Court, immediately following the closing of the PACE Loan, which shall occur no later than August 21, 2023.

17.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, or the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California to the contrary, including, without limitation, Section 349 of the Bankruptcy Code all prior orders and judgments entered in this case, including, without limitation this order and the Court's Order granting the Debtor's Motion for Order Authorizing Debtor To Enter Into Assessment Contract and Obtain Debtor-in-Possession Financing Secured Against Real Property, shall remain in full force and effect, shall be unaffected by the dismissal of this case, are legally binding on all applicable parties, and are specifically preserved for purposes of finality of judgment and res judicata.

18.     Nothing in this Order, including without limitation Paragraphs 14 and 15, shall impair or alter the rights or remedies of the CSCDA under the DIP Financing.  Paragraphs 16, 17, and 18 of this Order may not be modified without the express written consent of CSCDA.

19.     Nothing in this Order, the Motion, or the Compromise, including, the amounts agreed to be paid to JKO pursuant to the Compromise, shall be binding or have any effect on the Guaranties to the Loan Documents, including, the amount, if any, owing on account of the Guaranties.  Any amounts that may become due by the Guaranties shall be based on the Loan Documents alone.

20.     Notwithstanding the dismissal of this case, to the extent allowed by applicable law, this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation, interpretation, or enforcement of the Compromise, the Motion, this Order, or any other Order of this Court entered in this case.

21.     No further notice of hearing shall be necessary to effectuate the foregoing.

# # #

Date: August 15, 2023

Ronald A. Clifford III
United States Bankruptcy Judge

# EXHIBIT B

GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for Global Premier Regency
Palms Oxnard, L.P., Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>GLOBAL PREMIER REGENCY PALMS OXNARD, L.P., a California limited partnership,<br><br>          Debtor and<br>          Debtor-in-Possession | Case No. 9:22-bk-10626-RC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING COMPROMISE OF CONTROVERSY WITH JKO GROUP, INC. AND (2) DISMISSING CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; AND SUPPORTING DECLARATION OF CHRISTINE HANNA IN SUPPORT THEREOF**<br><br>DATE:      August 8, 2023<br>TIME:      2:00 p.m.<br>PLACE:[1]  Courtroom 201<br>               1415 State Street<br>               Santa Barbara, CA  91301 |

---

[1] The hearing on the Motion is scheduled to be heard via Zoom.  Please check the Court's calendar just prior to the hearing to confirm. http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 5

I.    INTRODUCTION ............................................................................................ 5

II.   STATEMENT OF FACTS ................................................................................. 5
      A.    Background of the Debtor................................................................. 5
      B.    Events Precipitating Chapter 11 Filing ............................................ 6
      C.    Assets ............................................................................................... 7
      D.    Liabilities ......................................................................................... 8
      E.    The Compromise............................................................................... 9
      F.    Proposed Disposition of Case ........................................................... 13

III.  THE COMPROMISE IS REASONABLE, FAIR AND EQUITABLE AND
      IS IN THE BEST INTERESTS OF THE ESTATE ...................................... 14

      A.    The Probability of Success on the Merits ......................................... 16
      B.    Difficulty in Collection .................................................................... 16
      C.    The Complexity, Expense and Inconvenience of Litigation............. 16
      D.    The Interest of the Debtor's Creditors ............................................ 16

IV.   THE COURT SHOULD DESIGNATE CHRISTINE HANNA AS THE
      PERSON IN CONTROL OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1107(a)
      AND F.R.B.P. 9001(5) ..................................................................................... 17

V.    THE DEBTOR SHOULD BE AUTHORIZED TO PAY ITS CREDITORS ........... 19

VI.   THE BANKRUPTCY COURT SHALL DISMISS THIS BANKRUPTCY
      BASED ON THE EXISTENCE OF GOOD CAUSE ............................................. 20

      A.    The Court Has Authority, and Based on the Existence of Good Cause, Must
            Dismiss this Bankruptcy ................................................................. 20
      B.    Dismissal is in the Best Interests of the Debtor's Creditors and Estate
            Because Dismissal Represents the Best Option for Recovery to Creditors... 22
      C.    Creditors Will Not Suffer Any Legal Prejudice ............................. 22

VII.  ALL ORDERS OF THE COURT IN THIS CHAPTER 11 PROCEEDING
      SHOULD SURVIVE DISMISSAL ..................................................................... 23

VIII. CONCLUSION................................................................................................ 23

# TABLE OF AUTHORITIES

**<u>Cases</u>**

<u>In re A & C Props.</u>
784 F.2d at 1380-82; In re Walsh Const., 669 F.2d at 1328 ...............................................15, 16, 18

<u>In re Continuum Care Services, Inc.</u>,
375 B.R. 692, 694 (Bankr.S.D.Fla. 2007) ....................................................................................19

<u>Czyzewski v. Jevic Holding Corp</u>.
137 S. Ct. 973, 197 L. Ed. 2d 398 (2017) ....................................................................................21

<u>In re Derivium Capital, LLC</u>
2010 WL 11719990, at *3 (Bankr.D.S.C. 2010) .........................................................................19

<u>In re Ditter</u>,
13 F. App'x 686, 687, 2001 WL 791733 (9th Cir. 2001) .............................................................22

<u>In re Eastman</u>,
188 B.R. 621, 624 (9th Cir. BAP 1995) .......................................................................................24

<u>In re Geller</u>,
74 B.R. 685, 688-89 (Bankr. E.D. Pa. 1987) ...............................................................................23

<u>In re Hall</u>,
15 B.R. 913, 719 (B.A.P. 9th Cir. 1981) .....................................................................................23

<u>In re Hickman</u>,
384 B.R. 832, 840 (B.A.P. 9th Cir. 2008) ...................................................................................22

<u>In re Integrated Knowledge Mktg., Inc.</u>,
2007 WL 7540949, at *6 (B.A.P. 9th Cir. Nov. 6, 2007),
    aff'd, 433 F. App'x 566 (9th Cir. 2011) ...................................................................................23

<u>In re Iorizzo</u>,
35 B.R. 465, 467 (Bankr.E.D.N.Y. 1983) ....................................................................................19

<u>In re Kimball</u>,
19 B.R. 300, 302 (Bankr. D. Me. 1982).......................................................................................23

<u>In re Kimble</u>,
96 B.R. 305, 307-308 (Bankr. D. Mont. 1988).......................................................................23, 24

<u>Lambert v. Flight Transp. Corp.</u> (In re Flight Transp. Corp. Sec. Litigs.)
730 F.2d 1128, 1135 (8th Cir. 1984), cert. denied, 469 U.S. 1207 (1985) ....................................16

<u>In re Leach</u>,
130 B.R. 855, 857 (B.A.P. 9th Cir. 1991).....................................................................................23

In re Lee Way Holding Co.,
120 B.R. 881, 891 (Bankr. S.D. Ohio 1990) (citation omitted)..................................................14

In re Martin-Trigona,
35 B.R. 596, 598-99 (Bankr. S.D.N.Y. 1983)...............................................................................24

Martin v. Kane (In re A & C Props.),
784 F.2d 1377, 1380-81 (9th Cir. 1986) (citation omitted)
cert. denied, Martin v. Robinson, 479 U.S. 854 (1986)................................................................14

Matter of Gaslight Club, Inc.,
782 F.2d 767, 771 fn. 6 (7th Cir. 1986) ........................................................................................20

Matter of Inter. Airport Inn P'ship,
517 F.2d 510, 512 (9th Cir. 1975). ...............................................................................................22

Newman v. Stein,
464 F.2d 689, 698 (2nd Cir. 1972), cert. denied, 409 U.S. 1039 (1972) ......................................15

In re Mazzocone,
183 B.R. 402 (Bankr. E.D. Pa. 1995) aff'd. 200 B.R. 568 (E.D. Pa. 1996).................................23

In re Mercado-Jimenez,
193 B.R. 112, 117 (D.P.R. 1996)...................................................................................................23

In re Milden,
111 F.3d 138, 1997 WL 189302, at *3 (9th Cir. 1997) ................................................................16

In re Northwest Associates, Inc.,
245 B.R. 183, 186 (Bankr.E.D.N.Y. 1999)...................................................................................20

In re Pine Lake Vill. Apartment Co.,
16 B.R. 750, 753 (Bankr. S.D. N.Y.1982)....................................................................................24

In re RAI Marketing Services, Inc.
20 B.R. 943, 945-46 (Bankr. D. Kansas 1982)..............................................................................24

In re Richmond Unified School Dist.
133 B.R. 221, 224 (Bankr. N.D. Cal. 1991) .................................................................................23

In re Stevenson
2011 WL 2413172 (Bankr. D. Ariz. June 9, 2011).......................................................................23

In re Walsh Const.
669 F.2d at 1328-29 (citations omitted).........................................................................................15

United States v. Alaska Nat'l Bank (In re Walsh Const., Inc.)
669 F.2d 1325, 1328 (9th Cir. 1982) .............................................................................................15

265080

<u>In re Woodson</u>,
    839 F.2d 610, 620 (9th Cir. 1999) ................................................................................15

<u>Woodson v. Fireman's Fund Ins. Co. (In re Woodson)</u>
    839 F.2d 610, 620 (9th Cir. 1988) ................................................................................16

**<u>Statutes</u>**
11 U.S.C. § 305(a) ..............................................................................................................20
11 U.S.C. § 305(a)(1) ..........................................................................................................19
11 U.S.C. § 1107(a) .....................................................................................................15, 17

**<u>Other Authorities</u>**
10 Collier on Bankruptcy ¶ 9001.06 (16th 2023) ............................................................16
<u>Collier on Bankruptcy</u>, Rule 9001(5) ...............................................................................16
Bankr. Proc. Manual § 9001:1 (2023 ed.) .........................................................................16
Chou, <u>Corporate Governance in Chapter 11</u>, 65 Am. Bankr. L.J. 559, 577 (1991) ........16
<u>H.R. Rep. No. 95-595</u>, 95th Cong., 1st Sess. 325 (1977). ...............................................20

**<u>Rules</u>**
Fed. R. Bankr. P. 9001(5) ..........................................................................................15, 16, 17
Fed. R. Bankr. P. 9019(a). ..................................................................................................12
Fed.R.Bankr.P. 1017(a) .......................................................................................................19
Local Bankruptcy Rule 9013-1 .............................................................................................1

265080

**TO THE HONORABLE RONALD CLIFFORD, UNITED STATES
BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE,
CREDITORS AND PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE** that a hearing will be held on August 8 at 2:00 p.m. on the
within Motion for Order: (1) Approving Compromise of Controversy with JKO Group, Inc., and
(2) Dismissing Chapter 11 Case ("Motion") filed by Global Premier Regency Palms, L.P., debtor
and debtor-in-possession (the "Debtor").  By the Motion, the Debtor seeks entry of an order:

1.      Granting the Motion pursuant to an order containing findings and in a form
substantially similar to the one attached hereto as **Exhibit 1**;

2.      Approving the compromise of controversy as set forth in the Stipulation Resolving
Claims and Disputes Between the Debtor and JKO Group, Inc. (the "Compromise") attached
hereto as **Exhibit 2**;

3.      Designating Christine Hanna as the person in control of the Debtor with authority to
act on behalf of the Debtor, pursuant to 11 U.S.C. § 1107(a) and F.R.B.P. 9001(5), and in
particular, authorizing Christine Hanna to enter into the Compromise on behalf of the Debtor and
to execute any and all such additional documents, including the Deed in Lieu attached hereto as
**Exhibit 5** and incorporated herein by this reference, as may be necessary to effectuate the
Compromise, and take all actions necessary to effectuate the Compromise;

4.      Authorizing and compelling the Debtor to pay all administrative claims, as
described herein, subject to the terms of the Compromise and an order approving the fees of
professionals, the applications for which will be heard concurrently with the Motion;

5.      Authorizing the Debtor to continue operating its business and pay its creditors in the
ordinary course of business, as projected in the Budget attached as **Exhibit 6** to the Hanna
Declaration, to the extent funds exist to pay such creditors, and such payment is consistent with the
terms of the Compromise;

6.      Dismissing the chapter 11 case pursuant to the terms contained herein, effective
upon the later of the: (a) approval of debtor in possession financing necessary to consummate the

Compromise; (b) consummation of the Compromise; (c) payment of all unpaid administrative

expenses incurred in this case; and (d) entry of the order granting this Motion;

7.      Maintaining the effectiveness of all prior orders and judgments entered in this

case, and that the Compromise and the Bankruptcy Court's order approving the Compromise

shall remain effective and binding on the parties to the Compromise;

8.      Retaining jurisdiction by the Court over any entered order or agreement approved

by this Court in this case and any and all disputes that arise or relates thereto; and

9.      Such other and further relief as the Court deems appropriate.

This Motion is based upon the Memorandum of Points and Authorities set forth

hereinbelow, the Declaration of Christine Hanna ("Hanna Declaration") appended hereto, all

pleadings, papers and records on file with the Court and such other evidence, oral or documentary,

as may be presented to the Court at the time of the hearing on the within Motion.

**IF YOU DO NOT OPPOSE THE MOTION, YOU NEED NOT TAKE ANY**

**FURTHER ACTION.  HOWEVER, IF YOU DO OPPOSE THE MOTION, PURSUANT**

**TO LOCAL BANKRUPTCY RULE 9013-1, ANY OPPOSITION TO THE MOTION MUST**

**BE FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO**

**THE HEARING ON THE MOTION.  YOU MUST FILE ANY SUCH OPPOSITION WITH**

**THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, LOCATED AT 1415**

**STATE STREET, SUITE 233, SANTA BARBARA, CA 93101.  YOU MUST ALSO SERVE**

**A COPY OF ANY SUCH OPPOSITION UPON COUNSEL FOR THE DEBTOR AT THE**

**MAILING ADDRESS STATED IN THE UPPER LEFT CORNER OF THE FIRST PAGE**

**OF THIS NOTICE AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE**

**LOCATED AT 1415 STATE STREET, SUITE 148, SANTA BARBARA, CA 93101.**

**PLEASE TAKE FURTHER NOTICE THAT IF YOU ASSERT AN**

**ADMINISTRATIVE CLAIM (A CLAIM FOR GOODS OR SERVICES PROVIDED**

**POST-PETITION TO THE DEBTOR – NOT ITS SUBSIDIARY), THEN YOU MUST,**

**WITHIN FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION, FILE**

**WITH THE UNITED STATES BANKRUPTCY COURT AND SERVE UPON THE**

265080

1    **DEBTOR AND ITS COUNSEL A REQUEST FOR THE ALLOWANCE OF AN**

2    **ADMINISTRATIVE CLAIM, INCLUDING EVIDENCE IN SUPPORT OF SUCH CLAIM.**

3          **FAILURE TO TIMELY FILE AND SERVE AN OPPOSITION TO THE MOTION**

4    **OR REQUEST FOR ALLOWANCE OF ADMINISTRATIVE CLAIM MAY RESULT IN**

5    **ANY SUCH OPPOSITION OR REQUEST BEING WAIVED, AND THE COURT MAY**

6    **ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER NOTICE.**

7    **MOREOVER, SHOULD YOU FAIL TO ATTEND THE HEARING ON THE MOTION,**

8    **THE COURT IS AUTHORIZED TO ENTER YOUR DEFAULT AND TO GRANT THE**

9    **RELIEF REQUESTED BY THE DEBTOR IN THE MOTION.**

10

11   DATED:  July 14, 2023                    **WINTHROP GOLUBOW HOLLANDER, LLP**

12

13                    By:____/s/ *Garrick A. Hollander*_____
                            Garrick A. Hollander

14                    General Insolvency Counsel for Debtor and Debtor-
                       in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

265080

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor commenced this case to stay the foreclosure of the Debtor's real property and nursing facility and restructure the debt of JKO Group, LLC ("JKO"), its senior secured creditor. The Debtor has reached an agreement to restructure its debt to JKO, thereby providing a path to pay its creditors. The resolution of JKO's claim eliminates the Debtor's need to remain in bankruptcy, and paves the way for a prompt dismissal.

Approving the Compromise resolves the issues with the Debtor's senior secured creditor, who holds the majority of the claims in this case. Meanwhile, dismissing the case is not only a required condition of the Compromise, but it also relieves the Debtor of the administrative expense of pursuing a plan process and the risk associated with plan confirmation. Based on the foregoing, the Debtor submits that it is in the best interests of creditors to approve the Compromise, authorize the dismissal of the case, and approve all other relief requested herein.

## II.

## STATEMENT OF FACTS

### A.    Background of the Debtor

The Debtor was formed in 2014 to purchase land and develop and operate an assisted living/memory care facility in Oxnard, California. Global Premier America #3, LLC ("GP") is the general partner of, and has complete decision making control over, the Debtor.[2] Pursuant to the GP's Operating Agreement and amendments thereto, the Managers of the GP, which are defined as Christine Hanna and Andrew Hanna, together or *separately*, each have full authority to manage and operate the GP.[3] Accordingly, Christine Hanna has authority to manage and operate the GP, and thus, manage and operate the Debtor. Accordingly, Christine Hanna had authority to

---

[2] See, e.g., Section 10(a) of the Debtor's limited partnership agreement, which is attached as **Exhibit 3** to the Hanna Declaration (General Partner shall be solely responsible for the day-to-day operations of the Partnership business and shall have all rights and powers generally conferred by law or necessary, advisable or consistent in connection therewith, or in connection with accomplishing the purposes of the Partnership as set forth in Section 3).

[3] See, for example, sections 1.7 and 2(e) of the First Amendment to Operating Agreement of Global Premier America #3, LLC, a true and correct copy of the GP's Operating Agreement and amendment thereto are attached collectively as **Exhibit 4** to the Hanna Declaration.

265080

1   file, on behalf of the Debtor, a petition for relief under Chapter 11 of the Bankruptcy Code, enter

2   into the Compromise, and file this Motion.

3         The Debtor was initially funded with $12 million of investment from foreign investors,

4   who invested in the Debtor pursuant to a program of the United States government to allow

5   foreign investors to make investments in the United States in order to obtain residency status.

6   This program is designed to stimulate the U.S. economy through job creation and capital

7   investment.  The Debtor's successful completion and operation of this project preserves jobs,

8   protects the investment of these foreign investors, and ensures their continued residency in the

9   United States.

10        The Debtor owns and since January 2021, with its wholly owned non-debtor subsidiary,

11   Global Regency Oxnard Senior Care Services LLC, dba Regency Palms Senior Living, a

12   California limited liability company, operates an assisted living/memory care facility located on

13   the Property. Regency Senior Living provides housing and a full spectrum of care and services to

14   fragile seniors in need of a moderate level of medical assistance, including specialized memory

15   care for seniors who suffer from Alzheimer's Disease and other forms of dementia.  The Debtor's

16   subsidiary employ approximately 60 persons.  The Debtor's sole revenue source is the rental

17   income and distributions, if any, from its sole tenant, Regency Senior Living.

18       **B.**     **Events Precipitating Chapter 11 Filing**

19        Similar to many other companies, in 2020, the Debtor experienced significant financial

20   and operational challenges as a result of the COVID-19 pandemic.  In the course of building its

21   assisted living/memory care facility, the outbreak of COVID-19, and the subsequent shutdown

22   and imposition of restrictions, caused construction delays and cost overruns for the Debtor's

23   project.  A Certificate of Occupancy was ultimately issued on June 17, 2020, and thereafter a

24   license was issued by the Department of Social Services.  It was only at this time when the Debtor

25   was first authorized to begin to accept residents into its facility.

26        While the facility opened in January of 2021, the COVID-19 pandemic continued to

27   negatively impact nursing homes and senior care facilities like the Debtor's business by restricting

28   the Debtor's ability to accept residents into its facility. These restrictions caused unexpected

265080

delays in the Debtor's ability to receive residents in the assisted living facility during 2021 and into 2022.

Pursuant to its loan obligations, the Debtor was required to make monthly interest payments in the amount of $129,202.  The interest payments were set up in the loan through an account called an "interest reserve."  When the loan was originally funded, $1,196,000 of the loan amount was placed in this interest reserve account.  Every month, monthly interest payments would be paid from that interest reserve account.

In October of 2021, the Debtor entered into discussions with its bank for a COVID-19 forbearance agreement, which would have prevented the loan from going into default at that time. The discussions were unsuccessful.

On or about April 22, 2022, the Debtor was informed that its bank sold the Debtor's loan to JKO.  On April 25, 2022, the Debtor received a Notice of Default and Election to Sell Under Deed of Trust recorded in the Official Records, County of Ventura, Doc No. 2022000005980. Pursuant to this notice, the Trustee Sale was scheduled for May 17, 2022.

On May 6, 2022, the Debtor commenced a lawsuit against JKO seeking, among other things, a temporary restraining order, preliminary injunction, and permanent injunction, to enjoin the JKO from proceeding with the Trustee Sale.  On May 10, 2022, the state court granted the Debtor's *ex parte* application for a temporary restraining order.  The state court, however, ultimately denied the Debtor's request for injunctive relief.  The temporary restraining order issued on May 10, 2022 was dissolved.  The Trustee Sale was rescheduled and continued from time to time until August 18, 2022, prior to which the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**C.    Assets**

The Debtor's primary assets are the Property and its 100% interest in Regency Senior Living.  The Debtor also owns 100% interests in the following subsidiaries, Global Food, Global Health, and Global Senior Care; however, none of these entities have or ever had any assets or business operations.  For more details on the Debtor's assets, see the Debtor's bankruptcy schedules [Docket No. 17].  In an appraisal dated April 7, 2022, the Property was estimated to

265080

have an "as-is" value of $40,600,000 as of November 15, 2021, and prospective value at
stabilization of $42,700,000 for the date December 1, 2022.

### D.    Liabilities

The following is a summary of the Debtor's pre-petition and post-petition liabilities:

***General Unsecured Claims***:  The Debtor owes $4,678,782 to pre-petition creditors
holding general unsecured claims.  Approximately $4,262,349 of these claims are held by insiders
or affiliates of insiders of the Debtor.

***Secured Debt***: On June 27, 2018, the Debtor obtained a loan from Nano Banc in the
amount of $15.5 million to purchase the Property and build and operate an assisted living/memory
care facility at the Property.  The Nano Banc loan was evidenced by, among other things, a
Construction Loan Agreement and Promissory Note.  In connection with the loan, the Debtor
provided a Deed of Trust in favor of Nano Banc.  Nano Banc also filed a UCC-1 financing
statement dated August 30, 2018 with the California Secretary of State.

On March 23, 2020, executed a new promissory note in the amount of $23 million.  The
Debtor also executed a Commercial Security Agreement, pursuant to which the Debtor granted a
security interest in collateral, including inventory, accounts (including but not limited to all
health-care-insurance receivables), and cash.  On November 19, 2020, the parties executed a
change in terms agreement to increase the loan from $23 million to $25.5 million, and assign a
deposit account in the amount of $500,000 held at Nano Banc as additional security to make the
interest payments in the event the interest reserve was depleted.

On or about April 22, 2022, Nano sold and assigned to JKO 100% of Nano's interests in
its claims against the Debtor.  As of the Petition Date, JKO asserts a secured claim against the
Debtor's Assets in the amount of approximately $28 million.  As of the Petition Date, the Debtor
had $64.31 in cash and $7,317.87 in accounts receivable from Regency Senior Living. Based on
the terms of the Compromise, JKO's claim is $30,489,629 as of June 30, 2023.

Top Tier Painting and ArtMex Artistic Design, Inc. also assert secured claims against the
Property in the amounts of $87,147 and $22,660, respectively. These asserted secured claims are
based on alleged mechanics lien rights arising from contracting services provided to the Debtor.

265080

***Administrative Claims***.  The Debtor owes approximately $750,000 to its professionals (general insolvency counsel and financial advisor).  The Debtor is not aware of any additional administrative claims held or asserted against the Debtor's estate.

**E.    The Compromise**

The Debtor and JKO have been working diligently throughout this case toward resolution of its disputes over claim amount and restructuring of its debt.  The Debtor and JKO have resolved their disputes over the rights to, and claims arising from, the loan, which resolution paves the way for emergence from chapter 11.  To that end, the Debtor and JKO have entered into the Compromise resolving claims and re-defining the parties' rights and obligations.  The Debtor and JKO now seek approval of the Compromise and authority to enter into the Compromise.  The following is a summary of the material terms of the Compromise[4]:

1.  PACE Loan.  The Debtor shall obtain a PACE loan in the amount of approximately $12,800,000. The Debtor shall not execute the PACE Loan documents until they have been reviewed and approved by JKO in writing in its sole discretion. The PACE Loan may include a contractual assessment on the Property that would be recorded with the local tax authority, with delinquent assessments subject to the same process and penalties as property taxes.[5]

2.  PACE Loan Proceeds. JKO will receive all proceeds of the PACE Loan, subject to the following exceptions: (a) PACE Loan Capitalized Interest estimated at $2,170,000, which shall be held in reserve for the PACE loan and in an account inaccessible to the Debtor, Andrew Hanna, Christine Hanna, or any Debtor Related Party without JKO's written consent; (b) PACE loan expenses estimated at $386,471; (c) Chapter 11 administrative expenses capped at $750,000; (d) working capital reserve of $150,000 ("Working Capital") for Debtor; and (e) $102,581.72 for past due property taxes.  JKO shall withhold from the PACE Loan proceeds $1,068,000 to be used as a reserve for Monthly Payments then apply the remaining PACE Loan proceeds in accordance with the Loan Documents.

3.  Closing. The closing (the "Closing") and funding of the transaction shall be the later of: (i) two (2) business days after the date of funding and closing of the PACE Loan; (ii) two (2) business days after entry of an order granting the Motion; or (iii) August 15, 2023.

4.  Disposition of Bankruptcy Case. Debtor's bankruptcy case shall be dismissed upon Closing or as soon as practicable thereafter, with the Bankruptcy Court retaining jurisdiction over disputes arising from this agreement.

---

[4] To the extent there is an inconsistency between this summary and the Compromise, the Compromise shall govern.
[5] Consistent with this obligation, the Debtor will be filing on shortened time a Motion for Order Authorizing Debtor to Enter into Assessment Contract and Obtain Debtor in Possession Post-Petition Financing Secured Against Real Property, which will need to be, and thus, expected to be, heard concurrently with this Motion.

265080

5. <u>Monthly Payments</u>. Debtor shall re-commence paying monthly payments under the Promissory Note in the amount of $89,000 per month. Monthly principal and interest at the non-default rate will continue to accrue at $152,921.82 per month. In addition, default interest will continue to accrue at $3,541.67 per day. All accrued and unpaid amounts shall be added to the Loan balance on a monthly basis.

6. <u>Payments of Available Cash / Expense Pre-Approval</u>.

   a. The Company's[6] disbursements in any given calendar month shall not exceed the amounts specified in **Schedule 2** to the Compromise based on the occupancy rate at the Property on the first day of the month; provided that the Company may apply up to $20,000 per month of Working Capital to spending in excess of the amounts in **Schedule 2** without JKO's prior approval until the Working Capital is exhausted. If the Company applies any Working Capital in that manner, it must provide immediate notice of the amount of Working Capital used and the disbursements for which it was used.

   b. The Company may exceed the disbursement limit described in 6.a. above only if JKO approves such excess disbursement in advance, in writing, which prior approval shall not be unreasonably withheld. JKO's approval of an disbursement in a given month shall not be deemed approval of said disbursement in any other month, unless JKO expressly states as such.

   c. If Company's gross income for a given month exceeds the disbursements authorized pursuant to paragraph 6a and 6b, the Debtor may use any such "excess income" to refuel the working capital balance back to $150,000, to the extent it had dropped. Thereafter, the Debtor shall pay JKO all of the excess income for such month by the 5th business day of the subsequent month.

   d. Debtor shall provide JKO a report showing income, expenses, and occupancy rate for each month by the **20th** business day of the subsequent month.

7. <u>Maturity Date</u>. The Maturity Date for the loan shall be the second anniversary of the Closing at which date the Debtor shall pay all outstanding principal, interest, fees, and expenses then due and owing under the Note.

8. <u>Events of Default</u>.

   a. It shall be an "Event of Default" under the Compromise if (i) the Company fails to make any payment of the Loan when due, including on the Maturity Date ("Payment Default"); (ii) the Company fails to comply with or perform any term, obligation, or condition in this Stipulation; (iii) the Debtor defaults under the PACE Loan; (iv) there occurs any Event of Default under any Loan Document (a "Loan Default"); or (v) the Closing does not occur by August 15, 2023. Notwithstanding the foregoing, the following shall not be Events of Default under this Stipulation: (a) a Loan Default that occurred prior to, exists as of, and/or continues after the

---

[6] The term Company shall mean the Debtor and its subsidiary.

265080

Closing; (b) the Debtor's insolvency; (c) the Debtor's non-compliance with the "Net Liquid Assets," "Debt Coverage Ratio" requirements on page 3 of the Business Loan Agreement; (d) the pendency of the Bankruptcy Case; (e) a default that falls within any of the following identified categories of Events of Default enumerated in the Loan Documents: (i) Default in Favor of Third Parties; (ii) Events Affecting Guarantor other than Christine Hanna; (iii) Event Affecting General Partner that were not caused by Christine Hanna; (v) Adverse Change; and/or (vi) Insecurity; (f) any Event of Default arising from or related to the acts, omissions, insolvency, death, or financial condition of Andrew Hanna and Global Premier, LLC; (g) any Event of Default arising from claims against the Company that existed as of the Petition Date; or (h) any Event of Default necessitated by the Company's compliance with the terms of this Stipulation. For sake of clarification, obtaining the PACE loan and any consequences arising from the Company not paying claims that existed as of the Petition Date, including any litigation, recording of liens, etc., shall not constitute an Event of Default.

b.  In the event that the Company should default in the performance of any of its obligations hereunder, except for a Payment Default, the remedies for which are specifically provided herein, JKO shall provide to the Company and the Company's counsel, (collectively, the "Noticed Parties") via e-mail and first-class mail, written notice of any such default ("Default Notice"). The Default Notice shall be deemed received one Court day after JKO's service of such notice. The Company shall have a grace period of three (3) Court days after the Company's receipt of the Default Notice ("Grace Period") within which to cure such default. If the Company does not cure the Event of Default within the Grace Period (an "Uncured Default"), JKO and Deed Holder (defined below) may immediately pursue all remedies, including recording the Deed in Lieu (defined below) conditionally provided as part of this Stipulation.

c.  The Company may oppose any such Uncured Default asserted by JKO by filing in the Bankruptcy Court a motion contesting the asserted Uncured Default ("Contesting Motion"), which must be filed within three (3) Court days after receipt of the Default Notice. The Company's Contesting Motion shall be limited to: (a) whether the asserted default occurred; (b) whether the asserted default is excused; or (c) whether the Company timely cured the asserted default. If the Court finds that the Company did not commit an Event of Default, was excused from committing an Event of Default, or timely cured an Event of Default, the Company shall be authorized to continue operating in ownership and possession of its Property pursuant to the terms of the Stipulation. If Deed Holder has recorded the Deed in Lieu, Deed Holder must promptly execute a grant deed or other mutually acceptable conveyance to transfer the Property back to the Debtor. This provision may be enforced by specific performance.

9.  Holding of Deed in Lieu of Foreclosure.

a.  Not later than 3 business days after the execution of this Stipulation, the Debtor shall deliver to G&B Law, LLP, the original completed and notarized grant deed in

265080

lieu of foreclosure in the form attached hereto as **Exhibit 5** (the "Deed in Lieu"). The Deed in Lieu shall be in favor of Blackhawk Solar, LLC, a Delaware limited liability company, prior to the entry of the Approval Order ("Deed Holder"). JKO, on behalf of itself and Deed Holder, acknowledges and agrees that the Deed in Lieu provided under this paragraph is not intended to, and does not, transfer title at the time of execution. Deed Holder shall hold and retain the Deed in Lieu provided that the Company complies in all respect with the terms of this Stipulation and there is no Payment Default or Uncured Default, as defined in Paragraph 11 of the Compromise. Upon the occurrence or continuance of a Payment Default or Uncured Default under this Stipulation or the Loan Documents, Deed Holder may immediately record the Deed in Lieu and shall immediately notify the Debtor of said recording. JKO and Deed Holder shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions.

    b. Upon a Payment Default or Uncured Default, the Debtor agrees to cooperate in the execution, in a timely manner, of any and all documents that are, or may be, necessary to cause the immediate conveyance of the Property to Deed Holder, including execution of a deed other than the Deed in Lieu. This provision may be enforced by specific performance.

    c. The liens and security interests that JKO has on the Property will not merge with the legal estate and title in the Property that may be transferred pursuant to this Paragraph 9.c. The liens and Loan Documents will not be released or relinquished, and the priority of the liens of the Loan Documents will not be altered or subordinated to any other liens or interests. JKO may merge the liens and security interests with the fee or leasehold title to the property, but only by a separate document recorded later or through foreclosure. The statutes of limitation applicable to the exercise of the JKO's rights and remedies under the Loan Documents are extended and tolled until four years after the Maturity Date.

10. <u>Additional Remedies for Default</u>.  Upon a Payment Default or an Uncured Default, JKO may exercise all rights and remedies available under the Loan Documents as if fully described and incorporated herein. All of JKO's remedies under this Stipulation and the Loan Documents are cumulative with one another and with remedies under applicable law.

11. <u>Security</u>. JKO's loan will be secured by all assets of the Debtor, and the Company shall take all actions and execute all documents necessary for JKO to perfect its security interest.

12. <u>"Allowance" of Claim</u>. JKO's claim shall be fixed at $30,489,629.27 as of June 30, 2023, as calculated in **Schedule 1** attached to the Compromise, subject to adjustment of accrued interest and default interest based on the date of the Approval Order, JKO's actual legal fees, and any other expenses accrued through that date, which shall be incorporated into the Approval Order.

13. <u>Contingent Mutual Releases</u>

    a. Effective only upon timely payment of the Loan in full by the Maturity Date, the Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under

265080

common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting in concert with them (collectively, with respect to each Party, its "Related Parties"), and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, expenses (including attorneys' fees and costs actually incurred) (collectively, "Claims"), which either Party or its Related Parties has, or may have had, against the other Party or Related Parties, whether or not apparent or yet to be discovered, related to the Litigation, the Loan Documents, or the Bankruptcy Case.

b. The aforementioned releases shall not include any Claim of or against (i) Andrew Hanna, or (ii) his affiliates other than the Company, GPA, or Christine Hanna. Nothing in the aforementioned paragraph is intended to limit JKO's ability to execute or collect on any judgment against Andrew Hanna.

14. <u>Dismissal of Litigation/Release of Claims</u>. The Debtor and JKO shall forbear from any further prosecution of the Litigation so long as there is no Payment Default or Uncured Default hereunder. The Litigation shall remain pending during the period of forbearance. Upon timely payment of the Loan in full by the Maturity Date, the Parties shall promptly dismiss the Litigation with prejudice, except as against Andrew Hanna.

15. <u>Disposition of Bankruptcy Case</u>. The Bankruptcy Case shall be dismissed upon Closing or as soon as practicable thereafter, with the Bankruptcy Court retaining jurisdiction as provided in the Compromise.

## F.    **Proposed Disposition of Case**

Entry into the Compromise and obtaining the PACE loan will pave the way for the Debtor to pay its senior secured creditor pursuant to the terms of the Compromise, and once JKO is paid in full, try to pay creditors to the extent there is sufficient cash flow available to do so. The Budget attached as **Exhibit 6** sets forth the projected distributions to be made to creditors in this case. The Debtor seeks authority to enter into the Compromise, and dismiss the case to allow the Debtor to effectuate the terms of the Compromise and pay creditors consistent with the timing set forth in the Budget. To that end, the Debtor also seeks to enjoin the creditors from pursuing any

265080

collection effort against the Debtor or its property, so long as the Debtor pays its obligations as set forth in the Budget. This provision shall not affect JKO, the Deed Holder (as defined in the Compromise), their successors-in-interest, or assignees.

### III.

### THE COMPROMISE IS REASONABLE, FAIR AND

### EQUITABLE AND IS IN THE BEST INTERESTS OF THE ESTATE

The Debtor believes that the Compromise is in the best interests of the estate and meets all of the requirements of Rule 9019(a) of the Bankruptcy Rules relative to bankruptcy court approval of compromises of controversy.  Rule 9019(a) of the Bankruptcy Rules provides that:

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

It is well established that bankruptcy courts favor compromises.  *See In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990) (citation omitted).  "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) (citation omitted), *cert. denied, Martin v. Robinson*, 479 U.S. 854 (1986).  A bankruptcy court does not need to conduct an exhaustive investigation into the merits of the claims sought to be compromised.  *See United States v. Alaska Nat'l Bank (In re Walsh Const., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, a bankruptcy court need only determine that the outcome of the litigation is open to reasonable doubt.  *See In re Walsh Const.*, 669 F.2d at 1328-29 (citations omitted).  Even if faced with objections, a bankruptcy court may still approve a settlement if it is in the best interests of the bankruptcy estate and creditors.  *See A & C Props.*, 784 F.2d at 1382 (citation omitted).

Likewise, a bankruptcy court is not required to decide the questions of law and fact raised in the controversies sought to be settled, nor is it required to determine whether the settlement presented is the best one that could possibly have been achieved.  Rather, it is sufficient that the

265080

settlement not fall "below the lowest point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2nd Cir. 1972), *cert.* denied, 409 U.S. 1039 (1972).

The Ninth Circuit Court of Appeals has recognized that bankruptcy courts have wide discretion in approving compromise agreements. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1999); *In re A & C Props.*, 784 F.2d at 1380-81 ("The purpose of a compromise agreement is to allow the debtor and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims").

In evaluating a proposed compromise in a bankruptcy case, a bankruptcy court need not conduct an exhaustive investigation of the disputed issues or conduct a trial with respect to such issues, but need find only that the proposed compromise is fair and equitable and that the negotiations between the parties were conducted in good faith. *In re A & C Props.*, 784 F.2d at 1380-82; *In re Walsh Const.*, 669 F.2d at 1328 ("The bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim"). A compromise proposed in a bankruptcy case should be approved if it falls above the lowest point in the range of reasonableness. *In re Milden*, 111 F.3d 138, 1997 WL 189302, at *3 (9th Cir. 1997) ("Rather than conducting a detailed evaluation of the merits of the state court action, the bankruptcy court's function is to examine the proposed settlement to determine if it falls below the lowest point in the range of reasonableness.").

The Ninth Circuit has identified four factors that a bankruptcy court should consider in determining whether a proposed settlement agreement is fair and equitable:

> (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (quoting *Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litigs.*), 730 F.2d 1128, 1135 (8th Cir. 1984), *cert. denied*, 469 U.S. 1207 (1985)); *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988).

Applying the factors identified by the Ninth Circuit in determining whether a proposed compromise is fair and equitable, it is clear that the Compromise should be approved.

265080

**A.      The Probability of Success on the Merits**

The Debtor recognizes that, particularly given today's financial economy, there is significant risk that it may not be able to confirm a plan over the objection of JKO, and the Debtor knows that JKO will vigorously oppose plan confirmation.  The Debtor further recognizes that it will incur significant fees in a contested of confirmation battle, which will further increase the hurdles for plan confirmation.  The Compromise eliminates any inherent uncertainty with respect to the resolution of the foregoing.  Thus, this part of the *A&C Properties* test favors Court approval of the Compromise.

**B.      Difficulty in Collection**

While the Debtor had commenced pre-petition litigation against JKO, the Debtor recognizes that these claims are, at most, offsets against the claim owing to JKO.  In other words, the Debtor is not seeking recovery against JKO, so this prong is not applicable.

**C.      The Complexity, Expense and Inconvenience of Litigation**

Litigation over plan confirmation and any litigation against JKO would be significant. Currently, the Debtor does not have the financial wherewithal to fund this litigation.  Settlement of the foregoing, therefore, will save the Debtor's estate substantial expense and will avoid the risk, delays and inconvenience attendant to litigation.  Accordingly, this part of the A&C Properties test favors Court approval of the Compromise.

**D.      The Interest of the Debtor's Creditors**

JKO struck a very hard bargain leaving the Debtor with very limited and difficult options. Based on the facts and circumstances at this time, the Debtor believes that while it may not be great, the Compromise serves as the best option for the Debtor's creditors.  The Debtor believes that it faces significant hurdles in plan confirmation, with the failure to succeed resulting in the Debtor losing its property and entire business, and creditors receiving nothing.  In contrast, while the Debtor does not know whether it will be able to make all the payments as provided for in the Compromise, the Debtor recognizes that the Compromise provides the Debtor with time to try to reorganize and/or secure additional funding to pay creditors.  Accordingly, the Debtor believes, in its business judgment, that, given the facts and circumstances, the Compromise is a fair and

265080

reasonable result, and shows adequate deference to the Debtor's creditors.  Accordingly, this part of the *A&C Properties* test favors Court approval of the Compromise.

Therefore, upon application of all four factors of the *A&C Properties* test, the Compromise is fair and equitable and should be approved by the Court.

## IV.

### THE COURT SHOULD DESIGNATE CHRISTINE HANNA AS THE PERSON IN CONTROL OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1107(a) AND F.R.B.P. 9001(5)

By this Motion, the Debtor further requests an order designating Christine Hanna as the person in control of the Debtor who is authorized to act on behalf of the Debtor, pursuant to 11 U.S.C. § 1107(a) and F.R.B.P. 9001(5), and in particular, authorizing Christine Hanna to enter into the Compromise on behalf of the Debtor and to execute any and all such additional documents, including the Deed in Lieu, as may be necessary to effectuate the Compromise.

Bankruptcy Rule 9001(5) provides that, where the debtor is not a natural person, the Bankruptcy Court can designate a particular officer, partner or other person in control, to act on behalf of such debtor:

> When any act is required by these rules to be performed by a debtor … and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes, **if designated by the court**, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control; (B) if the debtor is a partnership, "debtor" includes any or all of its general partners or, **if designated by the court**, any other person in control.

F.R.B.P. 9001(5) (emphasis added).  See also 11 U.S.C. § 1107(a) (debtor in possession has virtually all of the rights, powers and duties of a trustee subject to "such limitations or conditions as the court prescribes").

Case law has consistently interpreted Bankruptcy Rule 9001(5) and Section 1107(a) to authorize the Bankruptcy Court to designate a particular individual to control and act on behalf of a corporate or partnership-debtor.  "This rule permits this court to designate an individual as the person in control of a corporation."  In re Continuum Care Services, Inc., 375 B.R. 692, 694 (Bankr.S.D.Fla. 2007).  See also In re Derivium Capital, LLC, 2010 WL 11719990, at *3 (Bankr.D.S.C. 2010) ("The Court has the authority to designate [individual member of debtor-

LLC] as the representative of Debtor pursuant to Fed. R. Bankr. P. 9001(5)…"); In re Iorizzo, 35 B.R. 465, 467 (Bankr.E.D.N.Y. 1983) ("In cases where a debtor is a corporation, the Bankruptcy Rules provide that the Court may designate officers, directors, trustees or other controlling bodies to be considered the debtor for this and similar purposes."). *See also* Bankr. Proc. Manual § 9001:1 (2023 ed.) ("[F.R.B.P. 9001(5)] allows the court to designate officers, partners, etc., to act on behalf of a debtor that is not a natural person."); Chou, Corporate Governance in Chapter 11, 65 Am. Bankr. L.J. 559, 577 (1991) ("This rule [9001(5)] recognizes that the corporation, an artificial person, cannot by itself implement the rules and operate the business. Management or controlling persons designated by a bankruptcy court are to perform particular acts required by the rules.")

As stated in the treatise, Collier on Bankruptcy, Rule 9001(5) authorizes the court to "appoint" an individual to perform the duties on behalf of the corporate or partnership debtor:

> [I]f the debtor is not a natural person but is a corporation or a partnership (both of which are included in the definition of "person"), **the court may appoint one or more individuals to perform the duties** imposed upon the debtor by these and other rules. If the debtor is a corporation, the debtor includes, if designated by the court, one or more of "any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control." If the debtor is a partnership, the "debtor" includes any or all of its general partners or, if designated by the court, any other person in control.

10 Collier on Bankruptcy ¶ 9001.06 (16th 2023) (emphasis added) (footnotes omitted).

Courts have also recognized that the person designated to act on behalf of the debtor need *not* be someone with a formal title as an officer, shareholder or partner. See In re Northwest Associates, Inc., 245 B.R. 183, 186 (Bankr.E.D.N.Y. 1999) ("it is clear that a court can look beyond an individual's formal title with the Debtor corporation (or lack of formal title) to make a determination if a party is in control of a corporation based on the party's duties and responsibilities vis-a-vis the Debtor."); Matter of Gaslight Club, Inc., 782 F.2d 767, 771 fn. 6 (7th Cir. 1986) (observing that Rule 9001(5) "anticipates that a person performing the duties of debtor in possession need not be an officer, director or controlling shareholder" but rather can be "any other person in control").

As set forth in the Hanna Declaration, Global Premier America #3, LLC ("GP") is the

265080

general partner of the Debtor and has complete control over the decision making of the Debtor. Pursuant to the GP's Operating Agreement and amendments thereto, the Managers of the GP, which are defined as Christine Hanna and Andrew Hanna, together or separately, each have full authority to manage and operate the GP.[7]  Thus, Christine Hanna has authority to manage and operate the GP, and thus, manage and operate the Debtor.  In practice, Christine Hanna has and continues to be the "person in control" of the Debtor.  Accordingly, Christine Hanna had authority to file, on behalf of the Debtor, a petition for relief under Chapter 11 of the Bankruptcy Code, enter into the proposed DIP Financing, and file this Motion.

The parties have requested confirmation of Christine Hanna's authority to act on behalf of the Debtor.  Accordingly, the Debtor requests that Christine Hanna be formally designated as the person who is authorized to act on behalf of the Debtor, pursuant to 11 U.S.C. § 1107(a) and F.R.B.P. 9001(5), and in particular, authorizing Christine Hanna to enter into the Compromise on behalf of the Debtor and to execute any and all such additional documents, including the Deed in Lieu, as may be necessary to effectuate the Compromise.

**V.**

**<u>THE DEBTOR SHOULD BE AUTHORIZED TO PAY ITS CREDITORS</u>**

Based on the Debtor's financial condition, risk of losing the Debtor's property through a foreclosure, thereby wiping out all creditors, and the Compromise with JKO, the Debtor believes that approval of the Compromise and dismissal represents the most likely, if not only, realistic prospect to pay creditors.  In addition to dismissal being a critical condition to the Compromise, the Debtor submits that there is no reason to incur the additional administrative expense to proceed with the approval of a disclosure statement and confirmation of a plan, particularly since: (i) the only reason for filing this bankruptcy has been resolved; and (ii) proceeding with plan confirmation poses too much uncertainty and risk.  Similarly, there is no reason to convert the case to chapter 7 because under a chapter 7, unsecured creditors will definitely not receive any distribution; in contrast, under the proposed dismissal, creditors are intended to be paid in full to

---

[7] See, for example, sections 1.7 and 2(e) of the First Amendment to Operating Agreement of Global Premier America #3, LLC.  A true and correct copy of the GP's Operating Agreement and amendment thereto are attached collectively as **Exhibit 4** to the Hanna Declaration.

265080

the extent the Debtor is able to pay JKO is paid in full, and in any event, have a chance of recovery. Accordingly, there is no benefit, and only prejudice, in the event a chapter 7 trustee were to be appointed. The most efficient disposition of this case and the one that will maximize distributions to the estate's creditors is to approve the Compromise and dismiss the case and simply allow the Debtor to pay creditors as contemplated.

The proposed distribution is consistent with the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 197 L. Ed. 2d 398 (2017), which generally restricts bankruptcy courts from approving structured dismissals only where distributions do not follow ordinary priority rules without the consent of affected creditors. Here, the Debtor's proposal does not modify the rules of priority. Moreover, the Debtor's Budget reflects payment in full to all creditors. Accordingly, the Motion is consistent with <u>Jevic</u>.

## VI.

### <u>THE BANKRUPTCY COURT SHALL DISMISS THIS BANKRUPTCY BASED ON THE EXISTENCE OF GOOD CAUSE</u>

The Debtor has resolved the only reason it filed bankruptcy, and is now able to emerge from chapter 11 and pave the way to try to pay creditors as provided for in the Budget. Based on the foregoing, the Debtor has determined that remaining in bankruptcy at this point only prejudices creditors, whereas dismissal is in the best interest of creditors.

A.    <u>The Court Has Authority, and Based on the Existence of Good Cause, Must Dismiss this Bankruptcy</u>

Courts have adopted a liberal standard in granting motions for voluntary dismissal. It is well established in the Ninth Circuit that a debtor is entitled to voluntarily dismiss its bankruptcy proceeding; "unless dismissal will cause some plain legal prejudice to the creditors, it normally will be proper." *Matter of Inter. Airport Inn P'ship*, 517 F.2d 510, 512 (9th Cir. 1975). See also *In re Ditter*, 13 F. App'x 686, 687, 2001 WL 791733 (9th Cir. 2001) ("A voluntary dismissal is proper unless it results in 'plain legal prejudice' to the creditors.").

The Ninth Circuit BAP decisions under the Bankruptcy Code have repeatedly followed this rule. See *In re Hickman*, 384 B.R. 832, 840 (B.A.P. 9th Cir. 2008) ("A case will not be

-20-

265080

dismissed on the motion of a debtor if such dismissal would cause 'some plain legal prejudice' to

a creditor."); *In re Leach*, 130 B.R. 855, 857 (B.A.P. 9th Cir. 1991) ("The law in the Ninth Circuit

is clear: a voluntary Chapter 7 debtor is entitled to dismissal of his case so long as such dismissal

will cause no 'legal prejudice' to interested parties."); *In re Hall*, 15 B.R. 913, 719 (B.A.P. 9th

Cir. 1981); *In re Integrated Knowledge Mktg., Inc.*, 2007 WL 7540949, at *6 (B.A.P. 9th Cir.

Nov. 6, 2007), aff'd, 433 F. App'x 566 (9th Cir. 2011).[8]

The court in *In re Kimble*, 96 B.R. 305 (Bankr. D. Mont. 1988) opined:

> [W]e would be hard pressed to articulate just what circumstances could constitute
> such 'plain legal prejudice', including the considerations of economy and
> integrity of the Courts, to justify the result of denial of a request to voluntarily
> dismiss. Hence, *we would grant such a motion in all but extraordinary
> circumstances*.

*In re Kimble*, 96 B.R. at 307 (emphasis added).

In addition, § 305(a)(1), applicable to both voluntary and involuntary bankruptcy petitions,

provides that a case may be dismissed if the parties are "better served by such dismissal".

> (a) The court, after notice and a hearing, may dismiss a case under this title, or
> may suspend all proceedings in a case under this title, at any time if –
> (1) the interests of creditors and the debtor would be better served by such
> dismissal or suspension.

§ 305(a)(1).

The bankruptcy courts have the power to dismiss a bankruptcy case if the interests of both

the "creditors and the debtor" would be "better served" by a dismissal.  In re Eastman, 188 B.R.

621, 624 (9th Cir. BAP 1995); In re RAI Marketing Services, Inc., 20 B.R. 943, 945-46 (Bankr. D.

Kansas 1982); In re Martin-Trigona, 35 B.R. 596, 598-99 (Bankr. S.D.N.Y. 1983); In re Pine Lake

---

[8] *See also In re Richmond Unified School Dist.*, 133 B.R. 221, 224 (Bankr. N.D. Cal. 1991) ("The same ['legal prejudice'] rule would presumably apply to a Chapter 11 debtor's motion to dismiss pursuant to § 1112(b)...."); *In re Stevenson*, 2011 WL 2413172 (Bankr. D. Ariz. June 9, 2011) ("The creditors of the estate will not suffer 'plain legal prejudice' by dismissal."); *In re Kimble*, 96 B.R. 305, 308 (Bankr. D. Mont. 1988) ("the Debtor's request should ordinarily be granted unless some 'plain legal prejudice' will result to the creditors."); *In re Mercado-Jimenez*, 193 B.R. 112, 117 (D.P.R. 1996) ("Particularly with respect to voluntary dismissals under Fed.R.Bankr.P. 1017(a), ordinarily, the granting of a voluntary motion to dismiss rests with the sound discretion of the Referee and is reversible only for an abuse of that discretion. And unless dismissal will cause some plain legal prejudice to the creditors, it normally will be proper."); *In re Geller*, 74 B.R. 685, 688-89 (Bankr. E.D. Pa. 1987) ("generally, a debtor wishing dismissal of a case should obtain this result in all but extraordinary situations."); *In re Mazzocone*, 183 B.R. 402 (Bankr. E.D. Pa. 1995) *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (when debtor requests dismissal of Chapter 11 case, such relief should be granted unless party opposing the relief establishes that "plain legal prejudice" to creditors would otherwise result); *In re Kimball*, 19 B.R. 300, 302 (Bankr. D. Me. 1982) ("Generally, voluntary dismissals are granted 'unless dismissal will cause some plain legal prejudice to the creditors.'").

265080

Vill. Apartment Co., 16 B.R. 750, 753 (Bankr. S.D. N.Y.1982).  The legislative history reflects

that dismissal is proper under § 305(a) *inter alia* where an arrangement is being worked out by

creditors and the debtor out of court, there is no prejudice to the rights of creditors in that

arrangement. See, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 325 (1977).

    **B.**    **Dismissal is in the Best Interests of the Debtor's Creditors and Estate Because Dismissal Represents the Best Option for Recovery to Creditors**

A variety of factors demonstrate that it is in the best interest of the Debtor's estate and

creditors to dismiss the instant chapter 11 proceeding and authorize to allow the Debtor to pay its

creditors in the ordinary course of business once JKO is paid pursuant to the terms of the

Compromise.

The Debtor does not have the financial wherewithal to engage in protracted litigation in a

plan confirmation process.  Pursuing a confirmation of a plan will cost the estate significant

administrative expense and subject creditors to catastrophic consequences with the significant risk

associated with plan confirmation.  Converting the case to chapter 7 would only provide certainty

that all creditors will be wiped out.  In contrast, dismissing the case pursuant to the terms of the

Compromise will eliminate the cost and risk associated with plan confirmation, and provide

creditors with the greatest opportunity to be paid in full.

Based on the foregoing, it is in the best interests of creditors for this Court to authorize

distributions to creditors pursuant to the Budget and dismiss the Debtor's chapter 11 case as

described herein.

    **C.**    **Creditors Will Not Suffer Any Legal Prejudice**

In the case at bar, dismissal of the Debtor's chapter 11 case will not result in any prejudice

to creditors.  Dismissal of this case will provide the Debtor with time to reorganize and pay its

creditors, without the administrative expense and risk of proceeding with the plan and disclosure

statement process.  The largest secured creditor, who is the only party that effectively has

appeared and raised any issues in this case, not only consents to, but conditions the Compromise

upon, dismissal of the case.  The Debtor intends to pay creditors in full.  Accordingly, there is no

benefit to be derived by keeping the case in chapter 11, nor is there prejudice that could be

265080

suffered by creditors if the case were dismissed.  Based on the foregoing, the Debtor submits that there is no "plain legal prejudice" to creditors, and, therefore, the Debtor is entitled to an order dismissing its chapter 11 case.

## VII.

### ALL ORDERS OF THE COURT IN THIS

### CHAPTER 11 PROCEEDING SHOULD SURVIVE DISMISSAL

The Debtor submits that, for the same reasons as stated above with respect to the dismissal of this bankruptcy proceeding, cause exists for all orders entered in this chapter 11 case by this Court (as the same may be further amended, supplemented, modified and/or restated by this Court), to survive and remain in full force and effect upon the dismissal of the chapter 11 case, notwithstanding Section 349 of the Bankruptcy Code.  This Court's provision for the survival of all orders entered in the underlying bankruptcy proceeding or any related adversary proceeding is necessary to protect the integrity of the Debtor's efforts to resolve the underlying controversies in this case and matters related thereto without need for further or additional litigation.

## VIII.

### CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court enter an order granting the relief requested herein.

DATED:  July 14, 2023                          **WINTHROP GOLUBOW HOLLANDER, LLP**


                                               By:___/s/  *Garrick A. Hollander*_____
                                                      Garrick A. Hollander
                                               General Insolvency Counsel for
                                               Debtor and Debtor-in-Possession

-23-

265080

## DECLARATION OF CHRISTINE HANNA

I, Christine Hanna, declare and state as follows:

1.      I am the Manager of Global Premier America #3, LLC, the general partner of Global Premier Regency Palms Oxnard, L.P., a California limited partnership and the debtor and debtor-in-possession in the above-captioned Chapter 11 proceeding (the "Debtor").  The matters set forth herein are within my own personal knowledge, and, if called upon to testify, I could and would do so competently and truthfully.

2.      I make this declaration in support of the Debtor's Notice of Motion and Motion For Order: (1) Approving Compromise of Controversy with JKO Group, Inc., and (2) Voluntarily Dismissing Chapter 11 Case ("Motion") filed by the Debtor.  I have reviewed the Motion and, to the best of my knowledge, the factual representations contained therein regarding the Firm's representation of the Debtor are materially true and correct.

3.      The Debtor commenced this case to stay the foreclosure of the Debtor's real property and nursing facility and restructure the debt of JKO Group, LLC ("JKO"), its senior secured creditor.  The Debtor has reached an agreement to restructure its debt to JKO, thereby providing a path to pay its creditors.  The resolution of JKO's claim eliminates the Debtor's need to remain in bankruptcy, and paves the way for a prompt dismissal.

4.      Approving the Compromise resolves the issues with the Debtor's senior secured creditor, who holds the majority of the claims in this case.  Meanwhile, dismissing the case is not only a required condition of the Compromise, but it also relieves the Debtor of the administrative expense of pursuing a plan process and the risk associated with plan confirmation.  Based on the foregoing, I submit that it is in the best interests of creditors to approve the Compromise, authorize the dismissal of the case, and approve all other relief requested herein.

5.      The Debtor was formed in 2014 to purchase land and develop and operate an assisted living/memory care facility in Oxnard, California.  Global Premier America #3, LLC

265080

("GP") is the general partner of, and has complete decision making control over, the Debtor.[9]

Pursuant to the GP's Operating Agreement and amendments thereto, the Managers of the GP,

which are defined as Christine Hanna and Andrew Hanna, together or separately, each have full

authority to manage and operate the GP.[10]  Thus, I have authority to manage and operate the GP,

and thus, manage and operate the Debtor.  In practice, I have and continue to be the "person in

control" of the Debtor.  Accordingly, I have authority to file, on behalf of the Debtor, a petition

for relief under Chapter 11 of the Bankruptcy Code, enter into the Compromise, and file this

Motion.

6.    The Debtor was initially funded with $10 million of investment from foreign

investors, who invested in the Debtor pursuant to a program of the United States government to

allow foreign investors to make investments in the United States in order to obtain residency

status.  This program is designed to stimulate the U.S. economy through job creation and capital

investment.  The Debtor's successful completion and operation of this project preserves jobs,

protects the investment of these foreign investors, and ensures their continued residency in the

United States.

7.    The Debtor owns and since January 2021, with its wholly owned non-debtor

subsidiary, Global Regency Oxnard Senior Care Services LLC, dba Regency Palms Senior

Living, a California limited liability company, operates an assisted living/memory care facility

located on the Property. Regency Senior Living provides housing and a full spectrum of care

and services to fragile seniors in need of a moderate level of medical assistance, including

specialized memory care for seniors who suffer from Alzheimer's Disease and other forms of

dementia.  The Debtor's subsidiary employ approximately 60 persons.  The Debtor's sole

---

[9] See, e.g., Section 10(a) of the Debtor's limited partnership agreement, which is attached hereto as **Exhibit 3** and incorporated herein by this reference (General Partner shall be solely responsible for the day-to-day operations of the Partnership business and shall have all rights and powers generally conferred by law or necessary, advisable or consistent in connection therewith, or in connection with accomplishing the purposes of the Partnership as set forth in Section 3).

[10] See, for example, sections 1.7 and 2(e) of the First Amendment to Operating Agreement of Global Premier America #3, LLC, a true and correct copy of the GP's Operating Agreement and amendment thereto are attached collectively hereto as **Exhibit 4** and incorporated herein by this reference.

265080

revenue source is the rental income and distributions, if any, from its sole tenant, Regency Senior Living.

8.     Similar to many other companies, in 2020, the Debtor experienced significant financial and operational challenges as a result of the COVID-19 pandemic.  In the course of building its assisted living/memory care facility, the outbreak of COVID-19, and the subsequent shutdown and imposition of restrictions, caused construction delays and cost overruns for the Debtor's project.  A Certificate of Occupancy was ultimately issued on June 17, 2020, and thereafter a license was issued by the Department of Social Services.  It was only at this time when the Debtor was first authorized to begin to accept residents into its facility

9.     While the facility opened in January of 2021, the COVID-19 pandemic continued to negatively impact nursing homes and senior care facilities like the Debtor's business by restricting the Debtor's ability to accept residents into its facility. These restrictions caused unexpected delays in the Debtor's ability to receive residents in the assisted living facility during 2021 and into 2022.

10.     Pursuant to its loan obligations, the Debtor was required to make monthly interest payments in the amount of $129,202.  The interest payments were set up in the loan through an account called an "interest reserve."  When the loan was originally funded, $1,196,000 of the loan amount was placed in this interest reserve account.  Every month, monthly interest payments would be paid from that interest reserve account.

11.     In October of 2021, the Debtor entered into discussions with its bank for a COVID-19 forbearance agreement, which would have prevented the loan from going into default at that time.  The discussions were unsuccessful.

12.     On or about April 22, 2022, the Debtor was informed that its bank sold the Debtor's loan to JKO.  On April 25, 2022, the Debtor received a Notice of Default and Election to Sell Under Deed of Trust recorded in the Official Records, County of Ventura, Doc No. 2022000005980.  Pursuant to this notice, the Trustee Sale was scheduled for May 17, 2022.

13.     On May 6, 2022, the Debtor commenced a lawsuit against JKO seeking, among other things, a temporary restraining order, preliminary injunction, and permanent injunction, to

265080

enjoin the JKO from proceeding with the Trustee Sale.  On May 10, 2022, the state court

granted the Debtor's ex parte application for a temporary restraining order.  The state court,

however, ultimately denied the Debtor's request for injunctive relief.  The temporary restraining

order issued on May 10, 2022 was dissolved.  The Trustee Sale was rescheduled and continued

from time to time until August 18, 2022, prior to which the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

14. The Debtor's primary assets are the Property and its 100% interest in Regency

Senior Living.  The Debtor also owns 100% interests in the following subsidiaries, Global Food,

Global Health, and Global Senior Care; however, none of these entities have or ever had any

assets or business operations.  For more details on the Debtor's assets, see the Debtor's

bankruptcy schedules [Docket No. 17].  In an appraisal dated April 7, 2022, the Property was

estimated to have an "as-is" value of $40,600,000 as of November 15, 2021, and prospective

value at stabilization of $42,700,000 for the date December 1, 2022.

15. The following is a summary of the Debtor's pre-petition and post-petition

liabilities:

A. **General Unsecured Claims**: The Debtor owes $4,678,782 to pre-petition

creditors holding general unsecured claims.  Approximately $4,262,349 of these claims

are held by insiders or affiliates of insiders of the Debtor.

B. **Secured Debt**:          On June 27, 2018, the Debtor obtained a loan from

Nano Banc in the amount of $15.5 million to purchase the Property and build and

operate an assisted living/memory care facility at the Property.  The Nano Banc loan was

evidenced by, among other things, a Construction Loan Agreement and Promissory

Note.  In connection with the loan, the Debtor provided a Deed of Trust in favor of Nano

Banc.  Nano Banc also filed a UCC-1 financing statement dated August 30, 2018 with

the California Secretary of State.

C. On March 23, 2020, executed a new promissory note in the amount of

$23 million.  The Debtor also executed a Commercial Security Agreement, pursuant to

which the Debtor granted a security interest in collateral, including inventory, accounts

265080

(including but not limited to all health-care-insurance receivables), and cash.  On November 19, 2020, the parties executed a change in terms agreement to increase the loan from $23 million to $25.5 million, and assign a deposit account in the amount of $500,000 held at Nano Banc as additional security to make the interest payments in the event the interest reserve was depleted.

D.    On or about April 22, 2022, Nano sold and assigned to JKO 100% of Nano's interests in its claims against the Debtor.  As of the Petition Date, JKO asserts a secured claim against the Debtor's Assets in the amount of approximately $28 million.  As of the Petition Date, the Debtor had $64.31 in cash and $7,317.87 in accounts receivable from Regency Senior Living. Based on the terms of the Compromise, JKO's claim is $30,489,629 as of June 30, 2023.

E.    Top Tier Painting and ArtMex Artistic Design, Inc. also assert secured claims against the Property in the amounts of $87,147 and $22,660, respectively. These asserted secured claims are based on alleged mechanics lien rights arising from contracting services provided to the Debtor.

F.    **Administrative Claims**.  The Debtor owes approximately $750,000 to its professionals (general insolvency counsel and financial advisor).  I am not aware of any additional administrative claims held or asserted against the Debtor's estate.

16.    The Debtor and JKO have been working diligently throughout this case toward resolution of its disputes over claim amount and restructuring of its debt.  The Debtor and JKO have resolved their disputes over the rights to, and claims arising from, the loan, which resolution paves the way for emergence from chapter 11.  To that end, the Debtor and JKO have entered into the Compromise resolving claims and re-defining the parties' rights and obligations.  A true and correct copy of the Compromise is attached hereto as **Exhibit 2** and incorporated herein by this reference.

17.    Entry into the Compromise and obtaining the PACE loan will pave the way for the Debtor to pay its senior secured creditor pursuant to the terms of the Compromise, and if

265080

1    paid in full, thereafter pay creditors to the extent the Debtor's cash flow is sufficient to pay

2    creditors.

3        18.    I supervised Wilshire Pacific Advisors in the preparation of a cash flow budget

4    for the Debtor for the next five years, which reflects an estimated projection of the Debtor's

5    receipts and disbursements, including projected distributions to be made to creditors in this case.

6    A true and correct copy of the Budget is attached hereto as **Exhibit 6** and incorporated herein by

7    this reference.

8        19.    I recognize that, particularly given today's financial economy, there is significant

9    risk that it may not be able to confirm a plan over the objection of JKO, and I know that JKO

10   will vigorously oppose plan confirmation.  I further recognize that the Debtor will incur

11   significant fees in a contested of confirmation battle, which will further increase the hurdles for

12   plan confirmation.  The Compromise eliminates any inherent uncertainty with respect to the

13   resolution of the foregoing.

14       20.    While the Debtor had commenced pre-petition litigation against JKO, the Debtor

15   recognizes that these claims are, at most, offsets against the claim owing to JKO.  In other

16   words, the Debtor is not seeking recovery against JKO, so this prong is not applicable.

17       21.    Litigation over plan confirmation and any litigation against JKO would be

18   significant.  Currently, the Debtor does not have the financial wherewithal to fund this litigation.

19   Settlement of the foregoing, therefore, will save the Debtor's estate substantial expense and will

20   avoid the risk, delays and inconvenience attendant to litigation.

21       22.    JKO struck a very hard bargain leaving the Debtor with very limited and difficult

22   options.  Based on the facts and circumstances at this time, I believe that while it may not be

23   great, the Compromise serves as the best option for the Debtor's creditors.

24       23.    Based on the facts and circumstances at this time, I believe that the Compromise

25   serves as the best, if not only, option for the Debtor's creditors.  I believe that the Debtor faces

26   significant hurdles in plan confirmation, with the failure to succeed resulting in the Debtor

27   losing its property and entire business, and creditors receiving nothing.  In contrast, while I do

28   not know whether the Debtor will be able to make all the payments as provided for in the

265080

Compromise, I recognize that the Compromise provides the Debtor with time to try to reorganize and/or secure additional funding to pay creditors. Accordingly, I believe, in my business judgment, that, given the facts and circumstances, the Compromise is a fair and reasonable result and shows adequate deference to the Debtor's creditors.

24.     Based on the Debtor's financial condition, risk of losing the Debtor's property through a foreclosure, thereby wiping out all creditors, and the Compromise with JKO, I believe that approval of the Compromise and dismissal represents the most likely, if not only, realistic prospect to pay creditors. In addition to dismissal being a critical condition to the Compromise, I submit that there is no reason to incur the additional administrative expense to proceed with the approval of a disclosure statement and confirmation of a plan, particularly since: (i) the only reason for filing this bankruptcy has been resolved; and (ii) proceeding with plan confirmation poses too much uncertainty and risk. Similarly, there is no reason to convert the case to chapter 7 because under a chapter 7, unsecured creditors will definitely not receive any distribution; in contrast, under the proposed dismissal, creditors are intended to be paid in full, and in any event, have a chance of recovery. Accordingly, there is no benefit, and only prejudice, in the event a chapter 7 trustee were to be appointed. The most efficient disposition of this case and the one that will maximize distributions to the estate's creditors is to approve the Compromise and dismiss the case and simply allow the Debtor to pay creditors as contemplated.

25.     The Debtor has resolved the only reason it filed bankruptcy, and is now able to emerge from chapter 11 and pave the way to try to pay creditors as provided for in the Budget. Based on the foregoing, I have determined that remaining in bankruptcy at this point only prejudices creditors, whereas dismissal is in the best interest of creditors.

26.     A variety of factors demonstrate that it is in the best interest of the Debtor's estate and creditors to dismiss the instant chapter 11 proceeding and authorize to allow the Debtor to pay its creditors in the ordinary course of business once JKO is paid pursuant to the terms of the Compromise.

27.     The Debtor does not have the financial wherewithal to engage in protracted litigation in a plan confirmation process. Pursuing a confirmation of a plan will cost the estate

265080

significant administrative expense and subject creditors to catastrophic consequences with the significant risk associated with plan confirmation.  Converting the case to chapter 7 would only provide certainty that all creditors will be wiped out.  In contrast, dismissing the case pursuant to the terms of the Compromise will eliminate the cost and risk associated with plan confirmation, and provide creditors with the greatest opportunity to be paid in full.

28.    Based on the foregoing, it is in the best interests of creditors for this Court to authorize distributions to creditors pursuant to the Budget and dismiss the Debtor's chapter 11 case as described herein.

29.    In the case at bar, dismissal of the Debtor's chapter 11 case will not result in any prejudice to creditors.  Dismissal of this case will provide the Debtor with time to reorganize and pay its creditors, without the administrative expense and risk of proceeding with the plan and disclosure statement process.  The largest secured creditor, who is the only party that effectively has appeared and raised any issues in this case, not only consents to, but conditions the Compromise upon, dismissal of the case.  The Debtor intends to pay creditors in full. Accordingly, there is no benefit to be derived by keeping the case in chapter 11, nor is there prejudice that could be suffered by creditors if the case were dismissed.  Based on the foregoing, the Debtor submits that there is no "plain legal prejudice" to creditors, and, therefore, the Debtor is entitled to an order dismissing its chapter 11 case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of July 2023, at Irvine, California.

_____
Christine Hanna

-31-

265080

EXHIBIT 1

EXHIBIT 2

DocuSign Envelope ID: 9626FB36-BAAC-47BA-AA4F-84F588DA093C

# STIPULATION

This Stipulation (the "Stipulation") is entered into as of June 20, 2023, by and between, Global Premier Regency Palms Oxnard, L.P. (the "Debtor"), Global Regency Oxnard Senior Care Services, LLC (the "Subsidiary" and, with the Debtor, the "Company"), on the one hand, and on the other hand, JKO Group, LLC ("JKO"), a Delaware limited liability company ("JKO"). The Debtor, the Subsidiary, and JKO shall be referred to herein individually as a "Party" or collectively as the "Parties."

# R E C I T A L S

The Parties enter into this Stipulation with reference to the following facts:

A.    On or about March 23, 2020, the Debtor entered into a loan (the "Loan") with Nano Banc ("Nano") in the original principal amount of $23,000,000.00.  The Loan was documented by, among other things, the following documents (collectively, the "Loan Documents"):

a.    That certain Business Loan Agreement dated March 23, 2020 ("Business Loan Agreement"), a copy of which is attached as **Exhibit A**.

b.    That certain Promissory Note ("Note") dated March 23, 2020, in the original principal face amount of Twenty-Three Million Dollars ($23,000,000.00), a copy of which is attached as **Exhibit B**.

c.    That certain Deed of Trust dated March 23, 2020 ("Deed of Trust") and recorded and filed on March 27, 2020 in the Official Records of the Ventura County Clerk and Recorder as Document No. 20200327-00043822-0 in connection with the real property commonly known as 1020 Bismark Way, Oxnard, California 93033, Assessor's Parcel Number 221-0-063-185 (the "Property"), a copy of which is attached as **Exhibit C**.

d.    That certain Commercial Guaranty dated March 23, 2020 by Global Premier America, LLC ("GPA") as modified by the Nonrecourse/Limited Liability Addendum to Guaranty (collectively the "GPA Guaranty"), a copy of which is attached as **Exhibit D**.

e.    That certain Commercial Guaranty dated March 23, 2020 by Andrew Hanna ("Hanna") as modified by the Nonrecourse/Limited Liability Addendum to Guaranty (collectively the "Hanna Guaranty" and, with the "GPA Guaranty," the "Guaranties"), a copy of which is attached as **Exhibit E**.

f.    That certain Commercial Security Agreement dated March 23, 2020 by the Debtor with respect to various personal property collateral as defined in said agreement, a copy of which is attached as **Exhibit F**.

B.    On November 19, 2020, the Debtor and Nano entered into a Change in Terms Agreement which, among other things, increased the principal amount of the loan from $23,000,000.00 to $25,500,000.00. A copy of the agreement is attached as **Exhibit G**.  As part of

1

EXHIBIT 2 - PAGE 1

this modification, the Debtor also entered into a duly recorded Modification of Deed of Trust, a copy of which is attached as **Exhibit H**.

      C.     On or about April 15, 2022, Nano assigned its rights in the Loan Documents to JKO, pursuant to the following documents:

          a.     That certain Allonge to Promissory Note dated April 15, 2022, a copy of which is attached as **Exhibit I**.

          b.     That certain duly recorded Assignment of Deed of Trust, a copy of which is attached as **Exhibit J**.

          c.     That certain General Assignment and Bill of Sale dated April 15, 2022, a copy of which is attached as **Exhibit K**.

      D.     The Debtor has been in default on its payment obligations under the Loan since November 11, 2021 and breached various covenants under the Loan Documents. A trustee's sale was scheduled for May 17, 2022.

      E.     On May 6, 2022, JKO filed an action against the Debtor, GPA, and Hanna in the Superior Court of California for the County of Ventura (Case No. 56-2022-00565422-CU-CO-VTA) seeking, among other things, judicial foreclosure of the Property and collection on the Guaranties.  That same day, the Debtor filed an action in the Superior Court of California for the County of Orange (30-2022-01258382-CU-BC-CJC) against JKO and others seeking, among other things, an injunction to enjoin the trustee's sale (such actions, together, the "Litigation"). The Debtor's request for temporary restraining order was granted, but injunctive relief was ultimately denied.

      F.     On September 2, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") initiating Case No. 22-bk-10626-RC (the "Bankruptcy Case").

      G.     The balance owed on the Loan will be $30,489,629.27 as of June 30, 2023, as calculated in **Schedule 1** hereto, subject to adjustment based on JKO's actual legal fees accrued through that date.

      H.     The Debtor intends to obtain commercial PACE financing in an amount of $12,800,000 (the "PACE Loan") from White Oak Global Advisors, LLC, or such other lender as the Debtor may select (in either case, the "PACE Lender").

      I.     JKO is willing to consent to the PACE Loan on the terms set forth herein.

**S T I P U L A T I O N**

NOW, THEREFORE, the Parties agree and stipulate as follows:

2

EXHIBIT 2 - PAGE 2

1.  **JKO Consent to PACE Loan.** Subject to the terms hereof, JKO will consent to the Debtor's taking of a PACE Loan from the PACE Lender in the amount of $12,800,000. The Debtor shall not execute the PACE Loan documents until they have been reviewed and approved by JKO in writing in its sole discretion. The PACE Loan may include a contractual assessment on the Property that would be recorded with the local tax authority, with delinquent assessments subject to the same process and penalties as property taxes. JKO reserves its rights to cure any default under PACE Loan without any consent from the Debtor, with the resultant expenses added to the balance of the Loan. JKO may require intercreditor agreement with PACE Lender or a letter of instruction/authorization with following verbiage:

> This letter will confirm and advise that you are authorized and instructed to transmit any and all information requested by _____ or its loan servicing agent and/or their agents/assigns. This information includes but is not limited to: existing principal balance, payment amount, late charge amount, escrow amounts, suspense balances, delinquency amounts, et cetera. I authorize and instruct you to respond as you would be required to respond to the undersigned as trustor under the Deed of Trust. Please maintain this information in your database for future reference.

2.  **JKO Secured Claim.**

    a.  JKO shall be allowed a claim in the amounts and natures described in **Schedule 1** attached hereto (including default interest), subject to adjustment of accrued interest and default interest based on the date of the Approval Order (defined below), JKO's actual legal fees, and any other expenses accrued through that date, which shall be incorporated into the Approval Order.  As of June 30, 2023, excluding JKO's accrued attorneys' fees, JKO's claim amount is $30,312,879.27.

    b.  The Debtor waives and releases any defenses or objections to default interest, late charges, or the validity of any of the Loan Documents. The Approval Order shall provide that the Loan Documents constitute valid, binding, and enforceable obligations of the Debtor, as modified by this Stipulation and the Approval Order.

    c.  The Loan shall be secured by all assets of the Debtor, and the Company shall take all actions and execute all documents necessary for JKO to perfect its security interest.

3.  **Closing.** The closing (the "Closing") and funding of the transaction under this Stipulation shall be the later of: (a) two (2) business days after the date of funding and closing of the PACE Loan, or (b) two (2) business days after the date of entry of an order approving this Agreement and dismissal of the Bankruptcy Case; but in no event later than August 15, 2023.

4.  **Monthly Payments.** The Debtor shall re-commence making monthly payments under the Promissory Note at the rate of $89,000 per month (the "Monthly Payments"). Monthly principal and interest at the non-default rate will continue to accrue at $152,921.82 per month. In addition, default interest will continue to accrue at $3,541.67 per day. All accrued and unpaid amounts shall be added to the Loan balance on a monthly basis.

5.   **PACE Loan Proceeds.** At the closing of the PACE Loan, the PACE Lender shall pay all of the proceeds of the PACE Loan directly to JKO, subject to the following exceptions:

a.   PACE Loan Capitalized Interest: $2,170,000. To be held by the PACE Lender in an account inaccessible to the Debtor, Andrew Hanna, Christine Hanna, or any Debtor Related Party (defined below) without JKO's written consent. This amount assumes the PACE Loan closes no later than August 15, 2023.

b.   The PACE Lender's fees and costs associated with the PACE Loan, in the amount of $386,471.

c.   Professional fees allowed by the Bankruptcy Court, up to a maximum of $750,000, to be paid directly to the Debtor's retained professionals from the PACE Loan proceeds.

d.   $150,000 ("Working Capital") to the Debtor to be used for the working capital needs of the Company.

e.   $102,581.72 to the County of Los Angeles for overdue property tax purposes.

6.   **JKO's Application of Remaining Proceeds.**

a.   At Closing, JKO shall withhold from the PACE Loan proceeds $1,068,000 to be used as a reserve for Monthly Payments (the "Reserve"). So long as no Event of Default is continuing and there are sufficient funds in the Reserve, on the first of each month, JKO shall withdraw amounts from the Reserve sufficient to make the Monthly Payment then due and shall so apply such sums. Depletion of the Reserve shall not release the Debtor from any its obligations under this Stipulation or the Loan Documents, including without limitation, the obligation to make all payments when due.

b.   JKO will apply the remaining PACE Loan proceeds in accordance with the Loan Documents.

7.   **Maturity Date.** The maturity date for this Stipulation and the Note, shall be the second anniversary of the Closing (the "Maturity Date"), on which date the Debtor shall pay all outstanding principal, interest, fees, and expenses then due and owing under the Note.

8.   **Court Approval.** This Stipulation and the terms set forth herein are expressly conditioned (and shall become effective) upon entry of Bankruptcy Court order (the "Approval Order") approving and authorizing the Debtor's entry into this Stipulation. The Debtor shall file a motion seeking the Approval Order within 10 days of the date first written above.

9.   **Expense Pre-Approval and Payments of Available Cash.**

a.   The Company's disbursements in any given calendar month shall not exceed the amounts specified in **Schedule 2**, based on the occupancy rate at the Property on the first day of the month; *provided that* the Company may apply up to $20,000 per month of the

EXHIBIT 2 - PAGE 4

Working Capital to spending in excess of the amounts in **Schedule 2** without JKO's prior approval until the Working Capital is exhausted. If the Company applies any Working Capital in that manner, it must be provide immediate notice of the amount of Working Capital was used and the disbursements for which it was used. By way of example, if the Property is 54% occupied on the first day of a month and the Company has sufficient Working Capital, the Company could spend up to $246,196 without JKO's approval (i.e., $226,196 (maximum monthly amount based on occupancy) plus $20,000 (maximum monthly excess working capital) = $246,196).

b.      The Company may exceed the disbursement limit described in Paragraph 9.a only if JKO approves such excess disbursement in advance, in writing, which prior approval shall not be unreasonably withheld. JKO's approval of an disbursement in a given month shall not be deemed approval of said disbursement in any other month, unless JKO expressly states as such.

c.      The Company shall provide JKO a report showing its income, disbursements, and occupancy rate for each month by the 20th day of the subsequent month.

d.      If the Company's gross income for a given month exceeds the disbursements authorized pursuant to Paragraph 9.a and 9.b, the Company may use any such "excess income" to refuel the working capital balance back to $150,000, to the extent it had dropped.  Thereafter, the Company shall pay JKO all of the excess income for such month by the 5th business day of the subsequent month. JKO will apply the amounts paid in accordance with the Loan Documents.

10.    **Events of Default.**

a.      It shall be an "Event of Default" under this Stipulation if (i) the Company fails to make any payment of the Loan when due, including on the Maturity Date ("Payment Default"); (ii) the Company fails to comply with or perform any term, obligation, or condition in this Stipulation; (iii) the Debtor defaults under the PACE Loan; (iv) there occurs any Event of Default under any Loan Document (a "Loan Default"); or (v) the Closing does not occur by August 15, 2023. Notwithstanding the foregoing, the following shall not be Events of Default under this Stipulation: (a) a Loan Default that occurred prior to, exists as of, and/or continues after the Closing; (b) the Debtor's insolvency; (c) the Debtor's non-compliance with the "Net Liquid Assets," "Debt Coverage Ratio" requirements on page 3 of the Business Loan Agreement; (d) the pendency of the Bankruptcy Case; (e) a default that falls within any of the following identified categories of Events of Default enumerated in the Loan Documents: (i) Default in Favor of Third Parties; (ii) Events Affecting Guarantor other than Christine Hanna; (iii) Event Affecting General Partner that were not caused by Christine Hanna; (v) Adverse Change; and/or (vi) Insecurity; (f) any Event of Default arising from or related to the acts, omissions, insolvency, death, or financial condition of Andrew Hanna and Global Premier, LLC; (g) any Event of Default arising from claims against the Company that existed as of the Petition Date; or (h) any Event of Default necessitated by the Company's compliance with the terms of this Stipulation. For sake of clarification, obtaining the PACE loan and any consequences arising from the Company not paying claims that existed as of the Petition Date, including any litigation, recording of liens, etc., shall not constitute an Event of Default.

2359204.3 - 32572.0001

EXHIBIT 2 - PAGE 5

b.      In the event that the Company should default in the performance of any of its obligations hereunder, except for a Payment Default, the remedies for which are specifically provided herein, JKO shall provide to the Company and the Company's counsel, (collectively, the "Noticed Parties") via e-mail and first-class mail, written notice of any such default ("Default Notice"). The Default Notice shall be deemed received one Court day after JKO's service of such notice. The Company shall have a grace period of three (3) Court days after the Company's receipt of the Default Notice ("Grace Period") within which to cure such default. If the Company does not cure the Event of Default within the Grace Period (an "Uncured Default"), JKO and Deed Holder (defined below) may immediately pursue all remedies, including recording the Deed in Lieu (defined below) conditionally provided as part of this Stipulation.

c.      The Company may oppose any such Uncured Default asserted by JKO by filing in the Bankruptcy Court a motion contesting the asserted Uncured Default ("Contesting Motion"), which must be filed within three (3) Court days after receipt of the Default Notice. The Company's Contesting Motion shall be limited to: (a) whether the asserted default occurred; (b) whether the asserted default is excused; or (c) whether the Company timely cured the asserted default. If the Court finds that the Company did not commit an Event of Default, was excused from committing an Event of Default, or timely cured an Event of Default, the Company shall be authorized to continue operating in ownership and possession of its Property pursuant to the terms of the Stipulation. If Deed Holder has recorded the Deed in Lieu, Deed Holder must promptly execute a grant deed or other mutually acceptable conveyance to transfer the Property back to the Debtor. This provision may be enforced by specific performance.

11.    **Holding of Deed in Lieu of Foreclosure.**

a.      Not later than 3 business days after the execution of this Stipulation, the Debtor shall deliver to G&B Law, LLP, the original completed and notarized grant deed in lieu of foreclosure in the form attached hereto as Exhibit __ (the "Deed in Lieu"). The Deed in Lieu shall be in favor of an entity to be identified by Newco prior to the entry of the Approval Order ("Deed Holder"). JKO, on behalf of itself and Deed Holder, acknowledges and agrees that the Deed in Lieu provided under this paragraph is not intended to, and does not, transfer title at the time of execution. Deed Holder shall hold and retain the Deed in Lieu provided that the Company complies in all respect with the terms of this Stipulation and there is no Payment Default or Uncured Default, as defined in Paragraph 11. Upon the occurrence or continuance of a Payment Default or Uncured Default under this Stipulation or the Loan Documents, Deed Holder may immediately record the Deed in Lieu and shall immediately notify the Debtor of said recording. JKO and Deed Holder shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions. This paragraph, with the exception of this sentence, shall be included in the Approval Order.

b.      Upon a Payment Default or Uncured Default, the Debtor agrees to cooperate in the execution, in a timely manner, of any and all documents that are, or may be, necessary to cause the immediate conveyance of the Property to Deed Holder, including execution of a deed other than the Deed in Lieu. This provision may be enforced by specific performance.

6

EXHIBIT 2 - PAGE 6

c.    The liens and security interests that JKO has on the Property will not merge with the legal estate and title in the Property that may be transferred pursuant to this Paragraph 11.c. The liens and Loan Documents will not be released or relinquished, and the priority of the liens of the Loan Documents will not be altered or subordinated to any other liens or interests. JKO may merge the liens and security interests with the fee or leasehold title to the property, but only by a separate document recorded later or through foreclosure. The statutes of limitation applicable to the exercise of the JKO's rights and remedies under the Loan Documents are extended and tolled until four years after the Maturity Date.

12.    **Additional Remedies Upon Default.** Upon a Payment Default or an Uncured Default, JKO may exercise all rights and remedies available under the Loan Documents as if fully described and incorporated herein. All of JKO's remedies under this Stipulation and the Loan Documents are cumulative with one another and with remedies under applicable law.

13.    **Terms of the Loan Documents.** Except as modified to give effect to the terms herein, all terms and covenants under the Loan Documents shall remain in effect, including the GPA Guaranty and Hanna Guaranty. In the event of a conflict between this Stipulation and any Loan Document, the terms of this Stipulation shall govern.

14.    **Contingent Mutual Releases.**

a.    Effective only upon timely payment of the Loan in full by the Maturity Date, the Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting in concert with them (collectively, with respect to each Party, its "Related Parties"), and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, expenses (including attorneys' fees and costs actually incurred) (collectively, "Claims"), which either Party or its Related Parties has, or may have had, against the other Party or Related Parties, whether or not apparent or yet to be discovered, related to the Litigation, the Loan Documents, or the Bankruptcy Case.

b.    Notwithstanding Paragraph 14.a, the releases shall not include any Claim of or against (i) Andrew Hanna, or (ii) his affiliates other than the Company, GPA, or Christine Hanna. Nothing in Paragraph 14.a is intended to limit JKO's ability to execute or collect on any judgment against Andrew Hanna.

7

EXHIBIT 2 - PAGE 7

15.    **Effect on Litigation.** The Debtor and JKO shall forbear from any further prosecution of the Litigation so long as there is no Payment Default or Uncured Default hereunder. The Litigation shall remain pending during the period of forbearance. Upon timely payment of the Loan in full by the Maturity Date, the Parties shall promptly dismiss the Litigation with prejudice, except as against Andrew Hanna.

16.    **Venue and Jurisdiction.** The Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to this Stipulation, including under Paragraph 9. For the avoidance of doubt, this provision shall not affect jurisdiction or propriety of venue of the courts of California with respect to the Litigation.

17.    **Disposition of Bankruptcy Case.** The Bankruptcy Case shall be dismissed upon Closing or as soon as practicable thereafter, with the Bankruptcy Court retaining jurisdiction as provided in Paragraph 16.

18.    **Notice.** Any notices required under this Stipulation shall be given to the following addressees in accordance with notice requirements of the Business Loan Agreement.

**To the Debtor:**

Global Premier Regency Palms Oxnard, LP
Attn: Christine Hanna
1900 Main Street, Suite 315
Irvine, CA 92614
christine@geb5.com; sarang@clarityh.com

with a copy to

Garrick Hollander
Winthrop Golubow Hollander
1301 Dove Street, 5th Floor
Newport Beach, CA  92660
ghollander@wghlawyers.com;

**To the Subsidiary:**

Global Regency Oxnard Senior Care Services, LLC
Attn: Christine Hanna
1900 Main Street, Suite 315
Irvine, CA 92614
christine@geb5.com; sarang@clarityh.com

with a copy to Garrick Hollander at the address above.

8

**To JKO:**

JKO Group, LLC
c/o Jeremy Rothstein
G&B Law, LLP
16000 Ventura Boulevard, Suite 1000
Encino, California 91436-2730
jrothstein@gblawllp.com

The foregoing addresses shall also be deemed the current addresses for the respective Parties for notice purposes under the Loan Documents.

19.    **Additional Terms.**

a.    **Authority.** Each Party represents and warrants he, she, or it has the full corporate power and authority to execute and deliver this Agreement.

b.    **Attorney's Fees.** Each Party to this Agreement will bear its own attorneys' fees and costs that it/he/she incurred, or will incur, in connection with this Agreement.

c.    **Choice of Law.** The laws of the State of California will govern the interpretation of the Agreement.

d.    **Advice of Counsel.** Each Party acknowledges and agrees that it had the opportunity to review this Agreement independently with legal counsel of its choice, and/or had the requisite experience and sophistication to understand, interpret, and agree to the particular language of the provisions in this Agreement.

e.    **Title and Captions.** The Parties have inserted the paragraph titles in this Agreement only as a matter of convenience and for reference, and the paragraph titles in no way define, limit, extend, or describe the scope of this Agreement or the intent of the Parties in including any particular provision in this Agreement.

f.    **Execution.** Although the Parties may execute this Agreement in more than one counterpart, each such originally signed counterpart constitutes an original, and all of them constitute one and the same Agreement. The Parties agree that this Agreement may be executed and delivered by email and that any such signature shall be effective and binding on the party so signing.

g.    **Additional Documents.** The Parties agree to cooperate in the execution, in a timely manner, of any and all documents that are, or may be, necessary to give full effect to this Agreement.

*[Signatures on the following page]*

IN WITNESS WHEREOF, the Parties hereto have executed this Stipulation to be effective as of the date(s) set forth in the Preamble.

**JKO GROUP, LLC,**
**a Delaware limited liability company**

By: _____
Michael Kluchin, Authorized Representative


**GLOBAL PREMIER REGENCY PALMS OXNARD, L.P.,**
**a California limited partnership**

By:    GLOBAL PREMIER AMERICA #3, LLC
       a California limited liability company
       its general partner

       By: _____
       Christine Hanna, Manager


**GLOBAL REGENCY OXNARD SENIOR CARE SERVICES, LLC,**
**a California limited liability company, dba Regency Palms Senior Living**

By:    Global Premier Regency Palms Oxnard, LP
       a California limited liability company
       its Managing Member

       By: _____
       Christine Hanna, Manager


10

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 962C5B36BAAC47DAAA4F81BF98DAD93C | | Status: Completed |
| Subject: Complete with DocuSign: JKO-Global Stipulation (Executed by Debtor) with attached exhibits.pdf | | |
| Source Envelope: | | |
| Document Pages: 10 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | G&B Law LLP |
| AutoNav: Enabled | | 16000 Ventura Blvd., #1000 |
| EnvelopeId Stamping: Enabled | | Encino, CA  91436 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Fax_Electronic-Sig@gblawllp.com |
| | | IP Address: 34.211.249.79 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: G&B Law LLP | Location: DocuSign |
| 6/28/2023 5:38:36 PM | Fax_Electronic-Sig@gblawllp.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Michael Kluchin | *Michael Kluchin* | Sent: 6/28/2023 5:41:52 PM |
| michael@continuumanalytics.com | DocuSigned by: | Viewed: 6/28/2023 5:49:00 PM |
| Authorized Agent. | 3445C69B6D7E429... | Signed: 6/28/2023 6:06:53 PM |
| Continuum Analytics | | |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 184.188.124.50 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 6/28/2023 5:49:00 PM | | |
| ID: 0b9bd89d-7656-4d8e-8c32-f5d5a5fdf9ba | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Jeremy Rothstein | COPIED | Sent: 6/28/2023 5:41:52 PM |
| jrothstein@gblawllp.com | | Viewed: 6/28/2023 6:07:26 PM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Not Offered via DocuSign | | |
| Marleigh Singleman | COPIED | Sent: 6/28/2023 5:41:53 PM |
| msingleman@gblawllp.com | | |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 6/14/2023 10:55:40 AM | | |
| ID: 88b92172-7fa7-4e19-b81c-c42a98513788 | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

EXHIBIT 2 - PAGE 11

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/28/2023 5:41:53 PM |
| Certified Delivered | Security Checked | 6/28/2023 5:49:00 PM |
| Signing Complete | Security Checked | 6/28/2023 6:06:53 PM |
| Completed | Security Checked | 6/28/2023 6:06:53 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

EXHIBIT 2 - PAGE 12

JKO Group, LLC

2549 Eastbluff Dr #720

Newport Beach, CA 92660

Borrower: Global Premier Regency Palms Oxnard, LP

Attention: Andrew & Christine Hanna

2010 Main St., Suite 250

Irvine, CA 92614

**Payoff Demand**

| **Loan Payoff for:** | | | **Loan Number:** | |
|---|---|---|---|---|
| Global Premier Regency Palms Oxnard, LP | | | **Date Interest Quoted to**: | 6/30/2023 |
| 1020 Bismark Way, Oxnard, CA 93033 | | | **Payoff Good To:** | 6/30/2023 |
| | | | | |
| Principal Balance: | | | | $25,500,000.00 |
| Prepayment Penalty: | | | | $0.00 |
| Regular Interest: | | | | $2,515,433.33 |
| Default Interest Margin: | | | | $2,110,833.33 |
| Late Charges: | | | | $140,563.61 |
| Legal Fees*: | | | | $176,750.00 |
| Title Fees: | | | | $31,178.00 |
| Trustee & Publication Fee: | | | | $14,871.00 |
| **Net Amount Due:** | | | | **$30,489,629.27** |

EXHIBIT 2 - PAGE 13

### SCHEDULE 2

| Occupancy | Pre-approved Expense Limit |
|-----------|----------------------------|
| 45% | $220,000 |
| 50% | $226,196 |
| 55% | $239,267 |
| 60% | $249,267 |
| 65% | $259,267 |
| 70% | $269,267 |
| 75% | $289,267 |
| 80% | $307,462 |
| 85% | $319,038 |
| 90% | $330,623 |

2345876.2 - 32572.0001

EXHIBIT 2 - PAGE 14

EXHIBIT 3

EXHIBIT 4

EXHIBIT 5

RECORDING REQUESTED BY:
Blackhawk Solar LLC
2549 Eastbluff Drive, #720
Newport Beach, CA 92660

When recorded mail to:
Blackhawk Solar LLC
2549 Eastbluff Drive, #720
Newport Beach, CA 92660

Loan # 7000273600

APN # 221-0-063-185

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED IN LIEU OF FORECLOSURE

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

JKO Group, LLC, an affiliate of the Grantee herein was the Beneficiary
The amount of the unpaid debt, together with cost, as of June 30, 2023 was **$30,489,629.27**
The amount paid by the grantee over and above the unpaid debt was **$0.00**
The documentary transfer tax is **$0.00**
Said property is in ( ) Unincorporated area  (X) City of **Oxnard, County of Ventura, State of California**
Tax Parcel Number: **221-0-063-185**

For valuable consideration, receipt of which is hereby acknowledged, **GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership ("Global")**, hereby grants to **BLACKHAWK SOLAR LLC, a Delaware limited liability company**, the following described real property in the city of **OXNARD**, County of **Ventura**, State of **California**, and described as the following:

LOTS 20 TO 27 INCLUSIVE, OF TRACT NO. 1570-1, IN THE CITY OF OXNARD, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 43 PAGES 57, 58 AND 59 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OF THE OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS IN AND UNDER SAID LAND, WITHOUT HOWEVER, ANY RIGHT OF ENTRY ON THE SURFACE OF SAID PROPERTY OR THE SUBSURFACE THEREOF TO A DEPTH OF 500 FEET MEASURED VERTICALLY FROM SAID SURFACE..

Commonly known as: 1020 Bismark Way, Oxnard, CA 93033.

**This deed is delivered in trust pursuant to the terms and conditions of the Stipulation entered into between Global and JKO Group, LLC and approved by the Bankruptcy Court and attached to the Bankruptcy Court Order entered on _____[Docket no. ___] (the "Order"), in case number 9:22-bk-10626-RC (ECF #___).  This deed may be recorded only after the occurrence of a Payment Default or Uncured Default (as defined in the Stipulation incorporated into the Order) that occurs before payment in full of all debt from the Borrower to JKO.**

Subject to the foregoing paragraph,  this deed is an absolute conveyance, the grantor having sold land to the grantee for a fair and adequate consideration, such consideration, in addition to that above recited, being full satisfaction of all of grantor's obligations secured by the Deed of Trust dated March 23, 2020, executed by GLOBAL PREMIER AMERICA #3, LLC, General Partner of GLOBAL PREMIER REGENCY PALMS OXNARD, LP, as trustor to Fidelity National Title, a California Corporation as trustee, recorded in Official Records in the County Recorder's office of Ventura County, California, as Instrument #20200327-00043822-0, and that certain Modification of Deed of Trust, dated as of November 19, 2020, and recorded in Official Records in the Recorder's Office as Instrument #20201204-00208378-0, and an assignment of deed of trust executed by NANO BANC, a California state-chartered bank, as assignor to JKO GROUP,

LLC, a Delaware limited liability company as assignee recorded April 22, 2022 as Document number 2022000049962, Official Records of Ventura County, State of California.

Grantor declares that this conveyance is freely and fairly made, and that there are no agreements, oral or written, or other than this deed between grantor and grantee with respect to said land. The property conveyed shall include all fixtures, improvements and systems thereon and no fixtures, improvements or systems may be removed or modified without the express written consent of Grantee.

GLOBAL PREMIER REGENCY PALMS OXNARD, LP,
a California limited partnership

Dated: _____
By: _____
Christine Hanna, Manager of Global Premier America #3, LLC,
General Partner of Global Premier Regency Palms Oxnard, LP

*[NOTARIAL ACKNOWLEDGEMENTS FOLLOW ON NEXT PAGE]*

**\*THIS CONVEYANCE CHANGES THE MANNER IN WHICH TITLE IS HELD, GRANTOR(S) AND GRANTEE(S) REMAIN THE SAME AND CONTINUE TO HOLD THE SAME PROPORTIONATE INTEREST, R & T 11911.**

EXHIBIT 5 - PAGE 2

# CERTIFICATE OF ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____

On _____ before me, _____ (insert name and title of the officer), personally appeared Andrew Hanna and Christine Hanna who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity(ies), and that by their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____.                    (Seal)

EXHIBIT 6