1  GARRICK A. HOLLANDER – State Bar No. 166316
   ghollander@wghlawyers.com
2  PETER W. LIANIDES – State Bar No. 160517
   plianides@wghlawyers.com
3  JOHN D. GIAMPOLO – *Pro Hac Admission Pending*
   jgiampolo@wghlawyers.com
4  **WINTHROP GOLUBOW HOLLANDER, LLP**
   1301 Dove Street, Suite 500
5  Newport Beach, CA 92660
   Telephone: (949) 720-4100
6  Facsimile: (949) 720-4111

7  General Insolvency Counsel for
   Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

In re:

GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership,

  Debtor and
  Debtor-in-Possession.

Case No. 9:25-bk-10329-RC

Chapter 11 Proceeding

**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY) FILED BY JKO GROUP, LLC AND BLACKHAWK SOLAR, LLC; AND DECLARATION OF CHRISTINE HANNA IN SUPPORT THEREOF**

DATE:  June 3, 2025
TIME:  9:00 a.m.
PLACE: Courtroom 201
       1415 State Street
       Santa Barbara, CA 93101

278901.3

**TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; JKO GROUP, LLC AND BLACKHAWK SOLAR, LLC; CREDITORS; AND PARTIES-IN-INTEREST:**

Global Premier Regency Palms Oxnard, LP, a California limited partnership, the debtor and debtor-in-possession in the above-captioned Chapter 11 proceeding (the "Debtor"), submits this Opposition to the *Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property)* [ECF No. 42] (the "Motion") filed by JKO Group, LLC ("JKO") and Blackhawk Solar, LLC (together with JKO, each and collectively, "Movant"). In support of this Opposition, the Debtor submits the Declaration of Christine Hanna ("Hanna Declaration") appended hereto.

## I.

## INTRODUCTION

The Movant seeks relief from the automatic stay pursuant to Section 362(d)(1) for "cause," and most notably, not for any alleged lack of adequate protection. Recognizing that its interests are more than adequately protected, Movant astutely provides no evidence (because it does not exist) in support of, let alone even contend, that its interests are not adequately protected. Rather, Movant's alleged "cause' is merely based upon: (i) the Debtor's default on **one** $89,000 monthly payment; and (ii) Movant's argument that an agreement to grant relief from the automatic stay in the Debtor's prior bankruptcy somehow extends to any and all prospective automatic stays. While not clearly articulated as a basis for "cause," Movant also misleadingly argues that the Debtor is no closer to repaying Movant's debt than it was in 2023. The latter statement is simply untrue, and the two articulated bases for 'cause' do not give rise to cause for relief from stay.

If defaulting on a payment was the basis for 'cause,' then every secured creditor would have cause to support relief from stay in every bankruptcy. A pre-petition default or inability to pay debts is clearly not the test, and in fact, is the reason why most bankruptcies are filed. Moreover, the Debtor has been making timely payments to Movant since emerging from the Debtor's prior bankruptcy, and filed this bankruptcy because it could not make the March payment and sought to obtain a new automatic stay for the benefit of creditors. The Motion

conveniently fails to also mention that since August 2023, Debtor actually paid to Movant more than $9.4 million pursuant to, and in compliance with, the Stipulation.[1]

The Debtor does not dispute that it granted JKO relief from the automatic stay in the Debtor's *prior* bankruptcy (case no. 9-22-bk-10626-RC) for the purpose of effectuating the Stipulation in the Debtor's prior bankruptcy. However, that is not the same as granting Movant prospective or *in rem* relief from the automatic stay in this or any other future bankruptcy. Clearly, the granting of stay relief was not intended to be prospective for all future bankruptcies, as can be gleaned from the language in the prior bankruptcy. See also Hanna Declaration. In addition, even if it was the parties' intent, such a provision would be violative of public policy, and would deprive creditors of due process. Case in point, there are new creditors included in this bankruptcy case that were not a part of the Debtor's prior bankruptcy case. It would be axiomatic that these creditors not be allowed to obtain the benefit of an automatic stay.

Movant's backhanded misrepresentation that the Debtor is no closer to repaying Movant today than when it entered into the Stipulation in 2023 is simply wrong. The Debtor has not only paid Movant more than $9.4 million since entering into the Stipulation, but also has significantly improved its financial performance and ability to pay debts. At the time of entering into the Stipulation, Regency Palms was sustaining losses of approximately $85,000 per month. Now, Regency Palms is generating positive net income of $100,000 per month, a 150% monthly increase).

There are no grounds to grant relief from stay, and a conclusory request for adequate protection, without evidence of entitlement, should be summarily denied.[2]

/ / /

---

[1] Capitalized terms used but not otherwise defined herein have the same meaning ascribed in the Motion without conceding any legal conclusions or arguments.

[2] The Motion requests adequate protection without providing any evidence to support or even allege any right to adequate protection (i.e., a decline in the Property's fair market value).

## II.

## STATEMENT OF FACTS

**A.    The Debtor**

The Debtor owns the real property located at 1020 Bismark Way, Oxnard, California (the "Property"), as well as a 100% equity interest in Global Regency Oxnard Senior Care Services, LLC dba Regency Palms Senior Living ("Regency Palms"), which owns and operates an assisted living facility on the Property. Regency Palms provides housing and a full spectrum of care and services to fragile seniors in need of a moderate level of medical assistance, including specialized memory care for seniors who suffer from Alzheimer's Disease and other forms of dementia. Regency Palms employs approximately 60 employees. The Debtor remains in possession of its property and is operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    Notable Changes in Circumstances Since Entering into the Stipulation**

Since entering into the Stipulation, the Debtor has paid to Movant approximately $9.4 million. In addition, when entering into the Stipulation, the Debtor's subsidiary was sustaining losses of approximately $85,000 per month. Now, the Debtor's subsidiary is generating positive net income of approximately $100,000 per month. Moreover, interest rates today are lower than they were at the time of entering into the Stipulation.[3]

**C.    Events Precipitating Chapter 11 Filing**

Pursuant to the prepetition Stipulation entered into between the Debtor and JKO, the Debtor was obligated to pay JKO $7.9 million in August 2023, and thereafter, make monthly

---

[3] In June 2023, the Federal Reserve maintained the interest rate paid on reserve balances at 5.15%. Mortgage rates were at a 23-year high. See https://www.federalreserve.gov/newsevents/pressreleases/monetary20230614a1.htm#:~:text=Decisions%20Regarding%20Monetary%20Policy%20Implementation%20The%20Board,at%205.15%20percent%2C%20effective%20June%2015%2C%202023
In May 2025, the Federal Reserve held its key interest rate steady at a range of 4.25% to 4.5%. See (https://www.jpmorgan.com/insights/outlook/economic-outlook/fed-meeting-may-2025#:~:text=May%202025%20Fed%20Meeting:%20Rates%20hold%20firm,with%20inflation%20slightly%20above%20their%202%25%20target).

payments of $89,000.  The Debtor timely paid JKO $7.9 million, and thereafter, timely made seventeen monthly payments of $89,000 (or more than $1.5 million) to Movant.

Unfortunately, March 2025 had three payroll periods that came due in the same month, resulting in the Debtor's inability to fully pay Movant its monthly payment under the Stipulation. Pursuant to the Stipulation, the Debtor has no cure period for a payment default, and to secure performance, Movant was given a Deed in Lieu to record in the event of default.  The Debtor asked Movant for an extension of time, to which the Debtor believed Movant consented, but when asked Movant to sign an agreement confirming the extension, the Debtor did not hear back from Movant.  Concerned about losing the Property, on March 11, 2025, the Debtor filed this voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

## III.

## THE MOTION FAILS TO ESTABLISH GROUNDS

## FOR RELIEF FROM STAY UNDER SECTION 362(d)(1)

The Motion seeks stay relief based solely upon Bankruptcy Code section 362(d)(1) (see Motion, p. 3-4 ¶ 4), not based on any lack of adequate protection of an interest in property, but based on "other cause."  Consistent therewith, the Motion does not provide any evidence to support, let alone even allege, that Movant's interest in Debtor's Property is not adequately protected.  The only cause for stay relief asserted in the Motion is premised upon the allegation that: (i) the Debtor failed to make one monthly payment and thereby defaulted under the Stipulation, and (ii) the Debtor purportedly waived in the Stipulation the Debtor's protection of the automatic stay upon such default.

A. **Failure to Make a Payment Pursuant to a Prepetition Obligation is Not "Cause" for Relief from Stay**

It is axiomatic that virtually every debtor filing a bankruptcy petition has defaulted on some pre-petition obligation, and that such pre-petition default, standing alone, does not constitute

-5-

"cause" for relief from stay.[4] If the rule were otherwise, creditors in every bankruptcy case would have "cause" for immediate relief from stay.

For example, in In re Nichols, 440 F.3d 850 (6th Cir. 2006), the debtor defaulted on a post-confirmation plan payment. The Sixth Circuit held that a default under a prior confirmed plan, alone, was not "cause" for relief from stay, particularly where there was equity in the collateral.

> The **failure to make payments, standing alone, however, does not usually constitute "cause" to modify or lift the stay**, especially where failure to pay resulted from circumstances beyond the debtor's control, such as illness or job loss. **When there is still equity in the collateral, courts are not inclined to lift the stay**. *In re Mathews*, 208 B.R. 506, 511 n. 6 (Bankr.N.D.Ala.1997) (listing cases holding that where there was equity in the collateral, the stay was not lifted or modified, despite missed payments after confirmation); In re Raymond, 99 B.R. 819, 822 (Bankr.S.D.Ohio 1989). Generally, before modifying or lifting a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default. *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir.1997) (citations omitted).

In re Nichols, 440 F.3d 850, 856 (6th Cir. 2006).[5] See also In re Toomer, 2011 WL 8899488, at *3 (Bankr.D.S.C. 2011) (following Nichols, holding that post-confirmation default was not "cause" for relief from stay, and granting the debtor a "twelve-month cure period").

Accordingly, a movant does not have the right to relief from stay. Rather the Court must "weigh the equities" including the "the circumstances surrounding the default" and whether

---

[4] In a similar vein, courts have recognized that even a purported absolute "right to terminate" a contract is not sufficient to establish "cause" for relief from stay to effectuate such termination. Numerous courts have held that a party's contractual right to terminate a contract with the debtor (e.g., an "at will" contract) is not "cause" for relief from stay. In In re Elder-Beerman Stores Corp., 195 B.R. 1012 (Bankr. S.D. Ohio 1996), the court refused to grant relief from stay based upon the movant's contractual right to terminate. Rather, the movant must establish the necessary elements required under Section 362(d) of the Bankruptcy Code:

> [T]he court acknowledges [Movant's] argument that the existence of an "at will" termination clause is sufficient cause to grant relief from the automatic stay, but finds this argument to be unfounded. The conditions under § 362(d) govern relief from the stay, and when those conditions are not met, courts have not hesitated to leave the stay intact, even in the presence of "at will" termination clauses. *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reins. Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir.1986) (staying the right to cancel insurance policy under § 362); *Pester Refining Co. v. Insurance Co. of North Am. (In re Pester Refining Co.)*, 58 B.R. 189, 192 (Bankr.S.D.Iowa 1985); *In re B. Siegel Co.*, 51 B.R. 159, 163–64 (Bankr.E.D.Mich.1985); *In re Garnas (Garnas v. American Family Mut. Ins. Co.)*, 38 B.R. 221, 223–24 (Bankr.D.N.D.1984).

In re Elder-Beerman Stores Corp., 195 B.R. 1012, 1018-19 (Bankr. S.D. Ohio 1996).

[5] In contrast, courts have observed that a "persistent" failure to failure to make payments, standing alone, may constitute adequate cause for relief from the stay. In re Aguilar, 2014 WL 6981285, at *4 (9th Cir.BAP 2014). However, Aguilar involved vastly different facts, where the debtor "had not made any payments on the loan in over four years, which amounted to fifty-three missed payments…" Aguilar, at *4.

movant's interest is adequately protected.

Here, the circumstances surrounding the default reflect the Debtor's good faith. After entering into the compromise, the Debtor timely paid JKO $7.9 million, and thereafter, timely made seventeen monthly payments of $89,000 (or more than $1.5 million). The Debtor only defaulted once in March 2025, due to the fact that three payroll periods that came due in the same month. The Debtor asked Movant for an extension of time, to which the Movant informally consented, but when asked Movant to sign an agreement confirming the extension, the Debtor did not timely hear back from Movant. Accordingly, the present bankruptcy filing was largely necessitated by Movant's failure to promptly execute the written extension. Moreover, as set forth in more detail below, Movant's interest is and remains adequately protected.

In <u>Nichols</u>, the Court of Appeal affirmed the bankruptcy court's conditional denial of relief from stay, as long as the debtor either (i) cured the arrears, or (ii) promptly filed an amended plan. <u>Id</u>. Here, to the extent necessary, the Debtor is willing to cure the March 2025 default, as well as making $50,000 per month adequate protection payments. Alternatively, the Debtor is also willing to promptly file a Chapter 11 plan to restructure the obligation, consistent with <u>Nichols</u>. Nichols expressly observed that "[m]odification of the plan is one way a debtor may cure a post-confirmation default." <u>Nichols</u>, 440 F.3d at 857. Similarly, here, the Debtor should be given an opportunity to propose a chapter 11 plan, to restructure the obligation.

**B.     The Debtor Did Not Waive the Right to an Automatic Stay, and Even if it Did, such Waiver Would be Unenforceable**

The Ninth Circuit has long recognized that pre-petition waivers of bankruptcy protections are against public policy, and are unenforceable. In <u>In re Thorpe Insulation Co.</u>, 671 F.3d 1011, 1026 (9th Cir. 2012), the Ninth Circuit observed that without a broad protection against pre-petition bankruptcy waivers, "astute creditors" would otherwise require the waiver of bankruptcy rights in the underlying loan documents.

> We have held that **"[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code."** <u>Bank of China v. Huang (In re Huang)</u>, 275 F.3d 1173, 1177 (9th Cir.2002). **"This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive."** <u>Id</u>. … [O]ther courts have said that prepetition waivers of

bankruptcy benefits generally are unenforceable. See, e.g., Hayhoe v. Cole (In re Cole), 226 B.R. 647, 651–52 & n. 7 (B.A.P. 9th Cir.1998) (collecting cases); In re Pease, 195 B.R. 431, 434–35 (Bankr.D.Neb.1996) ("[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code preempts the private right to contract around its essential provisions.").

In re Thorpe Insulation Co., 671 F.3d 1011, 1026 (9th Cir. 2012) (emphasis added).

Contrary to arguments in the Motion, the language in the Stipulation regarding granting Movant stay relief upon default is not an express irrevocable waiver of the automatic stay in contemplation of this subsequent bankruptcy filing and should not be deemed enforceable in this subsequent Chapter 11 case. The Stipulation is comprised of the Stipulation and Dismissal Order entered in the Prior Chapter 11 Case. Paragraph 9 of the Dismissal Order provides that "[u]pon the occurrence or continuance of a Payment Default or Uncured Default under this Stipulation or the Loan Documents, Deed Holder may immediately record the Deed in Lieu [and] shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions." See Dismissal Order ¶ 9. Clearly the granting of stay relief related to the prior bankruptcy to effectuate the transfer. There is no language to even suggest any effort to try to obtain relief from the automatic stay for any and all future bankruptcies. Notwithstanding there being no such waiver, the Motion, argues that the purported prepetition automatic stay waiver is enforceable in this subsequent Chapter 11 Case based on a disingenuous interpretation of what was agreed to, and then relying entirely on Movant's misinterpretation of the decision in In re BGM Pasadena, LLC, Case No. 2:16-cv-03178-CAS, 2016 U.S. Dist. LEXIS 72825, at *10-11 (C.D. Cal. June 2, 2016). In that case, the court explained that "it is generally 'against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code.' " Id. (internal citations omitted). While " 'waivers that are approved after notice and an opportunity for hearing in the context of an earlier bankruptcy case' are not per se (or even generally) unenforceable[,] *absent changed circumstances*, [and] [t]he Debtor in this case has not identified any facts or circumstances that should make this Court unwilling to enforce the parties' earlier court approved settlement [where] [t]hat agreement contemplated that the Secured Creditor would be entitled to relief from the automatic stay if the Debtor filed another bankruptcy case." Id. (internal citations omitted) (emphasis added).

1    However, as above, here there are *significantly changed and improved circumstances* (including the Movant being paid more than $9.4 million and a change from Regency Palms sustaining monthly losses of $94,000 to Regency Palms now generating positive monthly net income of $100,000 ) and the Debtor has identified many facts and circumstances that should make this Court unwilling to enforce any purported prepetition stay waiver under the Stipulation entered in the prior Chapter 11 Case two years ago, which was not noticed to or approved by all creditors that exist today in this subsequent Chapter 11 case.  Furthermore, unlike the BGM Pasadena case, in the above language in the Stipulation, the Debtor did not "*irrevocably consent[] and waive[]* any right to object … to an order granting relief from any and all stays, including the automatic stay" expressly contemplated "*in the event of the filing of any [subsequent] bankruptcy case [that may be filed by Debtor].*"  Id. at *8-9 (internal citations omitted) (emphasis added).  The language at issue in paragraph 9 of the Dismissal Order does not expressly contemplate use in any subsequent bankruptcy filing by Debtor.  Rather the Dismissal Order sets forth requirements for "Closing" and funding of the transaction therein with the dismissal of the prior Chapter 11 Case after Closing and protections for Movant if Debtor failed to close.  See Dismissal Order ¶¶ 1-4, 9.

Among other things, a waiver of the automatic stay must be *explicit*, that is, the "the debtor has knowingly and intelligently consented to an explicit waiver of the right to contest a motion for relief from the stay."  In re Psychotherapy and Counseling Center, Inc., 195 B.R. 522, 535 (Bankr.D.Dist.Col. 1996).  In contrast, ambiguous or implied waivers are unenforceable.

> In contrast, the waiver in the present case suffers from two inadequacies—a lack of specificity and a lack of knowing consent by the debtor. To repeat, the waiver relied on by HHS provides that "[t]he ... Parties agree not to contest such exclusion either administratively or in any State or Federal court." HHS urges the court to interpret this as a waiver of the debtor's right to contest any and all efforts by HHS to exclude the debtor, including this lift stay motion. The court declines to do so.

In re Psychotherapy and Counseling Center, Inc., 195 B.R. 522, 535 (Bankr.D.D.C. 1996).

"When considering whether a party has waived by court-approved stipulation a right otherwise provided for under the Bankruptcy Code, *courts often look to the specificity of the language used in the stipulation.*"  In re Martinez, 2015 WL 3814935, at *7 (Bankr.D.N.M. 2015).

As a result, any ambiguity will render the purported waiver unenforceable. Id. ("Whatever the parties' intentions, the Court cannot find from the language of the Stipulated Order itself that Debtors have knowingly and intentionally waived their right … The language 'for all purposes in this bankruptcy case' contained in the Stipulated Order is ambiguous.")

Here, at a minimum, paragraph 9 of the Dismissal Order fails to explicitly state it applies to a future bankruptcy. Clearly, the Debtor did not know or intend the provision to apply to a future bankruptcy. See Hanna Declaration. As a result, there was no knowing or intentional consent to a waiver of the stay in a future bankruptcy. "[S]uch a broad reading of the settlement exceeds the intent of the parties, which brings the court to the second failure of the waiver, a lack of knowing consent by the debtor." Psychotherapy, 195 B.R. at 536.

Movant attempts to interpret the language in paragraph 9 as granting *in rem* relief from stay. However, nothing in the Dismissal Order suggests that *in rem* relief was granted or even intended. "An *in rem* order, which imposes an equitable servitude on the real property at issue, is an extraordinary remedy that should be granted only in extraordinary circumstances." In re Snow, 201 B.R. 968, 976 (Bankr.C.D.Cal. 1996). In particular, *in rem* relief is only granted in "extraordinary circumstances" where "there has been an abuse of the bankruptcy laws." In re Amey, 314 B.R. 864, 869 (Bankr.N.D.Ga. 2004). See also In re Price, 304 B.R. 769, 773 (Bankr.N.D.Ohio 2004) ("However, *in rem* relief is viewed to be an extraordinary form of relief and has only been granted where 'an ordinary relief from stay order will not be effective as demonstrated by the prior history of the parties and the property.'"). "In order to appropriately grant *in rem* relief, the record must clearly demonstrate an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral." Price, 304 B.R. at 773. For example, extraordinary circumstances exists when there has been transfers of fractionalized interests in the property to third parties in order to facilitate further bankruptcy filings. See Snow, 201 B.R. at 976 ("the joint ownership of the property among four individuals (and a corporation) indicates to the Court that the owners have planned further mischief to prevent Great Western from foreclosing"). Here, there is no allegation, let alone evidence of any fractionalized transfers or other abuse of the bankruptcy law.

Accordingly, there is no basis to contend that *in rem* relief was intended or granted via the Dismissal Order. Accordingly, any purported waiver fails for the same reasons as expressed in Psychotherapy, supra, "such a broad reading of the settlement exceeds the intent of the parties, which brings the court to the second failure of the waiver, a lack of knowing consent by the debtor." Psychotherapy, 195 B.R. at 536.

## IV.

### MOVANT IS NOT ENTITLED TO ADEQUATE PROTECTION PAYMENTS

Secured creditors are entitled to adequate protection payments only when the secured creditor's interest is declining. United States v. Timbers of Inwood Forest, 484 U.S. 365, 372 (1988). See e.g., In re Johnson, 90 B.R. 973, 978 (Bankr. D.Minn. 1988) (adequate protection analysis concerns whether the collateral has "declined in value *during the pendency of these proceedings*."); In re Century Inv. Fund VII, Ltd. Partnership, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value appears to be stable, creditor is not entitled to adequate protection payments); In re Kessler, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under Timbers, the sellers are not entitled to adequate protection payments, since there was no showing the 80-acre tract was depreciating in value); In re Anderson, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988); In re Elmore, 94 B.R. 670 (Bankr. C.D. Cal. 1988).

Thus, even an under-secured creditor will be adequately protected solely by a non-depreciating collateral pool. "Where there is no depreciation, there is no entitlement to adequate protection payments." In re Weinstein, 227 B.R. 284, 296 (9th Cir. BAP 1998). "PCA's secured claim may be deemed to be adequately protected where its security is not depreciating." In re Orlando Trout Creek Ranch, 80 B.R. 190, 191 (Bankr. N.D. Cal. 1987). "Where, as here, a creditor is undersecured and the property is not depreciating in value, the creditor is not entitled to adequate protection payments." Confederation Life Ins. Co. v. Beau Rivage Ltd., 126 B.R. 632, 640 (N.D. Ga. 1991). See also, In re Reddington/Sunarrow Ltd. Partnership, 119 B.R. 809, 813

(Bankr. D.N.M. 1990) ("the Supreme Court in *Timbers* made it clear that an undersecured creditor whose collateral is not depreciating is not entitled to such payments.").

The <u>Timbers</u> adequate protection analysis was further explained in the BAP decision, <u>In re The Preserve, LLC</u>, 2010 WL 6259971 (9th Cir. BAP 2010), a case where the debtor's primary asset was 1,331 acres of undeveloped land near Beaumont, California. In <u>The Preserve</u>, the secured creditor moved for relief from stay *inter alia* based upon a lack of adequate protection under Section 362(d)(1). The Bankruptcy Court (Judge Bluebond) denied the motion for relief from stay. The BAP affirmed concluding there was no competent evidence of *post-petition* depreciation. Specifically, while there was some evidence of a decline in value, there was no conclusive evidence that the decline in value occurred post-petition or alternatively, prior to, or contemporaneous, with the filing of the petition. As a result, there was no evidence of post-petition depreciation, and thus the court properly denied relief from stay. The BAP held as follows:

> "Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral ***during the reorganization process***. If the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant." *First Fed. OWB Cal. v. Weinstein (In re Weinstein),* 227 B.R. 284, 296 (9th Cir.BAP1998) (citations omitted)(emphasis added).
>
> We previously have held that adequate protection payments are intended to compensate a secured creditor only for losses occasioned by the imposition of the automatic stay. *See Paccom Leasing Corp. v. Deico Elects., Inc. (In re Deico Elects., Inc.),* 139 B.R. 945, 947 (9th Cir.BAP 1992). Because the bankruptcy court did not find when the value of the Property declined, but concluded that **any decline in the value of the Property could have occurred before or at about the time of the petition date, the Property value did not necessarily decline in value during or as a result of the bankruptcy process**.
>
> *** In finding that the decline in value of the Property, albeit substantial, was attributable to general economic conditions, and that **the decline possibly predated or was contemporaneous with the filing of the bankruptcy petition**, the bankruptcy court evinced a clear understanding of the applicable legal rule as set forth in *In re Deico Elects., Inc.*
>
> *** In these circumstances, the bankruptcy court did not err when it determined that PCF's interest in the Property was adequately protected. Accordingly, the bankruptcy court did not abuse its discretion when it denied the § 362(d)(1) claim for relief in the Motion.

<u>In re The Preserve, LLC</u>, 2010 WL 6259971, *8-9 (9th Cir. BAP 2010) (emphasis added).

The moving creditor has the initial burden to submit evidence of a post-petition decline in the value of its collateral. "[U]nder Section 362(d)(1), the moving party has the burden of going forward with an initial showing of cause." In re Webber, 314 B.R. 1, 5 (Bankr.N.D.Okla. 2004). "In order to show its prima facie case of cause for relief for lack of adequate protection, the moving party may establish that the value of the collateral is declining as a result of the stay." In re George, 315 B.R. 624, 628 (Bankr.S.D.Ga. 2004). See also, In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871 (Bankr. D.Colo. 2001) (creditor failed to satisfy its burden of going forward with evidence of lack of adequate protection were appraisal testimony failed to demonstrate a post-petition decline in value. "If the [decline in collateral value is] due to weather conditions in the year before the bankruptcy filing, but the post-petition [collateral] is not jeopardized and [the postpetition value] remain stable, then the erosion of the creditor's position is not attributable to the stay.").

In this case, there is no evidence (nor even an allegation) before the Court establishing that the Property is declining in value *post-petition* or that Movant's interest is not adequately protected. Accordingly, Movant has failed to meet its initial burden of proof under Section 362(d)(1), and thus the burden of proof never shifts to the Debtor to establish adequate protection. As set forth in The Preserve, the Movant must establish a *post-petition* decline in value. Here, the Motion does not allege, let alone submit evidence, of a post-petition decline in value or that Movant's interest is not adequately protected. As a result, the Movant has failed to satisfy its burden of going forward with evidence of lack of adequate protection.

### V.

### EVEN IF THE COURT BELIEVES THAT "CAUSE" HAS BEEN ESTABLISHED, THE COURT HAS SUBSTANTIAL DISCRETION TO MERELY CONDITION OR MODIFY THE STAY

Even assuming arguendo that Movant has established "cause" under Section 362(d), courts have long recognized that termination of the stay is not mandatory. Rather, the court has discretion to condition or modify the stay.

> By the plain language of § 362(d), the Court must grant relief from stay to a party in interest if that party demonstrates that one of the § 362(d) subsections are met. Section 362(d), however, does not mandate complete relief from stay. In particular, § 362(d) specifically gives the Court the discretion to modify or condition the stay rather than to terminate or annul the stay. *In re Planet 10, L.C.*, 213 B.R. 478, 481 (Bankr.E.D.Va.1997) (conditioning stay relief to allow trustee a reasonable time to proceed with 363 sale); *In re Archway Apartments, Ltd.*, 206 B.R. 463, 465 (Bankr.M.D.Tenn.1997) (relief from stay under 362(d) does not mandate terminating stay). *** Thus, although the statute leaves the bankruptcy court no discretion whether to grant relief from stay, it does leave the scope and extent of that relief to the bankruptcy court's discretion. Archway, 206 B.R. at 465 (Congress left to the bankruptcy court the discretion to fashion appropriate relief for a debtor's failure to comply with § 362(d)(3)).
>
> Here, a strong reason to provide tailored rather than complete relief from stay arises from the likelihood of a successful reorganization.

In re View West Condominium Ass'n, Inc., 2008 WL 6742576, at *2 (Bankr.S.D.Fla. 2008).

Similarly, here, even if "cause" has been established, the Court should exercise its discretion to grant something less that complete relief from stay. For example, in Nichols, where the debtor had defaulted on a confirmed plan, the Court of Appeal affirmed the bankruptcy court's conditional granting of relief from stay, to the extent that the debtor failed to (i) cure the arrears, or (ii) promptly file an amended plan. Id. Here, to the extent necessary, the Debtor is willing to cure the March 2025 default, as well as making $50,000 per month adequate protection payments. Alternatively, the Debtor is also willing to promptly file a Chapter 11 plan to restructure the obligation, consistent with Nichols. Nichols expressly observed that "[m]odification of the plan is one way a debtor may cure a post-confirmation default." Nichols, 440 F.3d at 857. Similarly, here, the Debtor should be given an opportunity to propose a chapter 11 plan, to restructure the obligation.

///

## VI.

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court deny the RFS Motion in its entirety.

DATED: May 20, 2025

WINTHROP GOLUBOW HOLLANDER, LLP

By: */s/ Garrick A. Hollander*
Garrick A. Hollander
Peter W. Lianides
John D. Giampolo
General Insolvency Counsel for
Global Premier Regency Palms Oxnard, LP,
Debtor and Debtor-in-Possession

# DECLARATION OF CHRISTINE HANNA

I, Christine Hanna, declare and state as follows:

1. I am the manager of Global Premier America #3, LLC, the general partner of Global Premier Regency Palms Oxnard, LP, the debtor and debtor-in-possession in the above Chapter 11 proceedings (the "Debtor"). The matters set forth herein are within my own personal knowledge, and, if called upon to testify, I could and would do so competently and truthfully.

2. I make this declaration in support of the Debtor's opposition (the "Opposition") to the *Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Real Property)* [ECF No. 42] (the "Motion").[6]

3. The Debtor owns the real property located at 1020 Bismark Way, Oxnard, California (the "Property"), as well as a 100% equity interest in Global Regency Oxnard Senior Care Services, LLC dba Regency Palms Senior Living ("Regency Palms"), which owns and operates an assisted living facility on the Property. Regency Palms provides housing and a full spectrum of care and services to fragile seniors in need of a moderate level of medical assistance, including specialized memory care for seniors who suffer from Alzheimer's Disease and other forms of dementia. Regency Palms employs approximately 60 employees. The Debtor remains in possession of its property and is operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Since entering into the Stipulation, the Debtor has paid to Movant approximately $9.4 million. In addition, when entering into the Stipulation, the Debtor's subsidiary was sustaining losses of approximately $85,000 per month. Now, the Debtor's subsidiary is generating positive net income of approximately $100,000 per month. In addition, interest rates today are lower than they were at the time of entering into the Stipulation.[7]

---

[6] Capitalized terms used but not otherwise defined herein have the same meaning ascribed in the Opposition or in the Motion without conceding any legal conclusions.

[7] In June 2023, the Federal Reserve maintained the interest rate paid on reserve balances at 5.15%. Mortgage rates were at a 23-year high. See https://www.federalreserve.gov/newsevents/pressreleases/monetary20230614a1.htm#:~:text=Decisions%20Regarding%20Monetary%20Policy%20Implementation%20The%20Board,at%205.15%20percent%2C%20effective%20June%2015%2C%202023 In May 2025, the Federal Reserve held its key interest rate steady at a range of 4.25% to 4.5%. See (https://www.jpmorgan.com/insights/outlook/economic-outlook-fed-meeting-may-2025#:~:text=May%202025%20Fed%20Meeting:%20Rates%20hold%20firm,with%20inflation%20slightly%20above%20their%202%02%%20target).

5. Pursuant to the prepetition Stipulation entered into between the Debtor and JKO, the Debtor was obligated to pay JKO $7.9 million in August 2023, and thereafter, make monthly payments of $89,000. The Debtor timely paid JKO $7.9 million, and thereafter, timely made seventeen monthly payments of $89,000 (or more than $1.5 million) to Movant.

6. Unfortunately, March 2025 had three payroll periods that came due in the same month, resulting in the Debtor's inability to fully pay Movant its monthly payment under the Stipulation. Pursuant to the Stipulation, the Debtor has no cure period for a payment default, and to secure performance, Movant was given a Deed in Lieu to record in the event of default. The Debtor asked Movant for an extension of time, to which the Debtor believed Movant consented, but when asked Movant to sign an agreement confirming the extension, the Debtor did not hear back from Movant. Concerned about losing the Property, on March 11, 2025, the Debtor filed this voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

7. I believe there has been no post-petition decline in the value of the Property, which has remained stable during the pendency of the current bankruptcy case.

8. The Dismissal Order entered in the Debtor's prior bankruptcy case, in paragraph 9 provides that "[u]pon the occurrence or continuance of a Payment Default or Uncured Default under this Stipulation or the Loan Documents, Deed Holder may immediately record the Deed in Lieu [and] shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions." See Dismissal Order ¶ 9. I am informed that the Movant contends that this language constitutes a waiver of the automatic stay in any future bankruptcy filing. Neither I, nor the Debtor, believed or intended that paragraph 9 would constitute a waiver of the automatic stay in this or any future bankruptcy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of May 2025, at Irvine, California.

_____
Christine Hanna

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street Suite 500, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY) FILED BY JKO GROUP, LLC AND BLACKHAWK SOLAR, LLC; AND DECLARATION OF CHRISTINE HANNA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 20, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
   - **Brian David Fittipaldi**   brian.fittipaldi@usdoj.gov
   - **Garrick A Hollander**   ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
   - **Matthew D Pham**   mpham@allenmatkins.com, mdiaz@allenmatkins.com
   - **Debra Riley**   driley@allenmatkins.com, plewis@allenmatkins.com
   - **Jeremy H Rothstein**   jrothstein@gblawllp.com, msingleman@gblawllp.com;mbowes@gblawllp.com
   - **United States Trustee (ND)**   ustpregion16.nd.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

3. **SERVED BY OVERNIGHT MAIL,** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 20, 2025 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| Date | Printed Name | Signature |