GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership,<br><br>        Debtor and<br>        Debtor-in-Possession | Case No. 9:25-bk-10329-RC<br><br>Chapter 11 Proceeding<br><br>**NOTICE OF RED-LINED: (A) DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION; AND (B) DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>DATE:     September 10, 2025<br>TIME:     1:00 p.m.<br>PLACE:   Courtroom 201<br>            1415 State Street<br>            Santa Barbara, CA 93101 |

     **PLEASE TAKE NOTICE** that, based on the Court's order entered on August 12, 2025 granting relief from the automatic stay in favor of JKO Group, LLC, a Delaware limited liability company and successor to Debtor's secured creditor, Nano Banc, and Blackhawk Solar, LLC, the assignee from JKO of JKO's rights and claims against the Debtor, with respect to the real property

1  owned by Global Premier Regency Palms Oxnard, LP, the debtor and debtor in possession (the

2  "Debtor"), and the legal impact of such order, the Debtor has revised the Debtor's Disclosure

3  Statement in Support of Debtor's Second Amended Chapter 11 Plan of Reorganization (the

4  "Disclosure Statement") and Debtor's Second Amended Chapter 11 Plan of Reorganization (the

5  "Plan").  Attached hereto as Exhibits 1 and 2, respectively, are true and correct copies of the red-

6  lined Disclosure Statement and Plan.

7  DATED:  August 22, 2025                    **WINTHROP GOLUBOW HOLLANDER, LLP**

8

9                                             By:*/s/ Garrick A. Hollander*
10                                                 Garrick A. Hollander, Esq.
                                              General Insolvency Counsel for Global Premier
11                                            Regency Palms Oxnard, L.P., Debtor and Debtor-
                                              in-Possession
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

280575

# EXHIBIT 1

GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership,<br><br>        Debtor and<br>        Debtor-in-Possession | Case No. 9:25-bk-10329-RC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S ~~FIRST~~ SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>DATE:    September 10, 2025<br>TIME:    1:00 p.m.<br>PLACE:  Courtroom 201<br>            1415 State Street<br>            Santa Barbara, CA 93101 |

# **TABLE OF CONTENTS**

| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 2 |
| | A. Purpose of Disclosure Statement | 2 |
| | B. The Plan | 2 |
| | C. Voting, Objections to Plan and Confirmation | 2 |
| | D. Disclaimers | 3 |
| II. | DEFINITIONS AND RULES OF INTERPRETATION | 6 |
| III. | BACKGROUND OF THE DEBTOR | 6 |
| | A. Description of the Debtor | 6 |
| | B. Debtor's Assets | 7 |
| | C. Debtor's Liabilities | 7 |
| | D. Events Participating Chapter 11 Filing | 8 |
| IV. | THE DEBTORS' CHAPTER 11 PROCEEDINGS | 10 |
| | A. Commencement of Case | 10 |
| | B. Employment of Professionals | 10 |
| | C. Analysis of Preferential, Fraudulent and Unauthorized Transfers | 10 |
| | D. Projected Objections to Claims Filed Against the Estate | 10 |
| V. | FINANCIAL INFORMATION | 11 |
| | A. Historical Financial Information for the Debtor and its Subsidiary | 11 |
| | B. Income and Payment of Expenses and Debts During Bankruptcy | 11 |
| | C. Financial Projections for the Debtor's Plan of Reorganization | 12 |
| VI. | DESCRIPTION OF PLAN OF REORGANIZATION | 13 |
| | A. Summary of the Plan | 13 |
| | B. Proposed Treatment of Claims | 13 |
| | C. Executory and Assumed Contracts and Leases | 18 |
| VII. | IMPLEMENTATION OF THE PLAN | 18 |
| VIII. | TAX CONSEQUENCES OF THE PLAN | 18 |
| | A. Introduction | 18 |
| | B. Federal Income Tax Consequences to the Debtors | 19 |
| | C. Tax Consequences to Creditors | 20 |

## TABLE OF CONTENTS

### (Continued)

|  |  |  | PAGE |
|---|---|---|---|
| IX. | LIQUIDATION ANALYSIS | | 21 |
| | A. | Class 1 | 23 |
| | B. | Class 2 | 23 |
| | C. | Class 3 | 24 |
| | D. | Class 4 | 24 |
| | E. | Class 5 | 24 |
| | F. | Class 6 | 24 |
| | G. | Class 7 | 34 |
| X. | VOTING | | 24 |
| | A. | Who May Vote | 24 |
| | B. | How to Vote | 25 |
| | C. | Effect of Vote | 25 |
| XI. | CONCLUSION | | 25 |
| | A. | Rules of Construction | 26 |
| | B. | Schedules | 26 |

# TABLE OF AUTHORITIES

## CASES

In re Buick, Inc.,
  126 B.R. 840, 851 (Bankr.E.D.Pa.1991) ................................................. 19

In re U.S. Physicians, Inc.,
  236 B.R. 593, 605 (Bankr.E.D.Pa. 1999) ............................................... 19

## STATUTES

11 U.S.C. § 102 ................................................................................ 32

11 U.S.C. § 510(c) ........................................................................... 18

11 U.S.C. § 544(b) ........................................................................... 15

11 U.S.C. § 547 ............................................................................... 15

11 U.S.C. § 548 ............................................................................... 15

11 U.S.C. § 549 ............................................................................... 15

11 U.S.C. § 1107 ............................................................................. 13

11 U.S.C. § 1108 ............................................................................. 13

11 U.S.C. § 1129 ............................................................................... 3

11 U.S.C. § 1129(a)(7) ..................................................................... 26

11 U.S.C. § 1129(a)(11) ................................................................... 16

11 U.S.C. § 1129(b) ......................................................................... 31

11 U.S.C. § 1141 .......................................................................... 3, 26

# I.

## INTRODUCTION

### A.    Purpose of Disclosure Statement.

The purpose of a disclosure statement is to provide information to enable a creditor to make an informed judgment about a plan of reorganization and to enable such creditor to determine whether it is in its best interest to vote for (accept) or against (reject) such plan.  The Bankruptcy Court has already approved the Debtor's Disclosure Statement [Docket no. _] in this case.  The Debtor now seeks approval of its Plan.  This Disclosure Statement is in support of the Debtor's Plan.

### B.    The Plan.

Included on the thumb drive containing this Disclosure Statement is a copy of the Debtor's Plan [FOR PURPOSES OF APPROVAL OF THIS DISCLOSURE STATEMENT, ATTACHED AS **EXHIBIT 5** IS A COPY OF THE PLAN – THIS PARENTHETICAL WILL NOT BE INCLUDED IN THE ACTUAL DISCLOSURE STATEMENT SERVED ON PARTIES AS THEY WILL BE RECEIVING A COPY OF THE PLAN AS PART OF THE MAILING].  The Plan provides for payments to Creditors through a reorganization, which may provide for refinancing and/or debt and equity recapitalization. Under the Plan, General Unsecured Creditors are expected to receive their Pro Rata share of the Plan Fund based on each of their member's respective Allowed Claims.  The reorganization of the Debtor will generate a greater distribution than what would be realized in a Chapter 7 liquidation.

The Debtor attests that the information stated in this Disclosure Statement and the Plan is accurate to the best of its knowledge.  All Creditors should refer to Articles III-V of the Plan for the precise treatment of their claims. This Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected.  You should read the Plan and Disclosure Statement carefully and discuss them with your attorney, if you have one.**

### C.    Voting, Objections to Plan and Confirmation.

To vote to accept or reject the Debtor's Plan, a Creditor must indicate its acceptance or rejection thereof on the ballot which accompanies this Disclosure Statement and return it to

1    Winthrop Golubow Hollander, LLP ("WGH"), such that the ballot is actually received by WGH

2    on or before _____ at 5:00 p.m. (the "Ballot Deadline").  Each Class of Creditors allowed

3    to vote on the Plan will be deemed to have accepted the Plan if the Plan is accepted by valid

4    ballots cast by Creditors in that Class holding at least two-thirds (2/3) in dollar amount and more

5    than one half (1/2) in number of the Allowed Claims of Creditors in that Class actually voting on

6    the Plan.  **ONLY PROPERLY EXECUTED BALLOTS TIMELY RECEIVED BY**

7    **COUNSEL FOR THE DEBTOR WILL BE COUNTED AS HAVING VOTED ON THE**

8    **PLAN.**

9    Since mail delays may occur, and because time is of the essence, it is important that ballots

10    be mailed well in advance of the Ballot Deadline.  Any ballots received after the Ballot Deadline

11    will <u>not</u> be included in any calculation to determine whether the Debtor's Creditors have accepted

12    or rejected the Plan.

13    Any party-in-interest may object to confirmation of the Plan.  The Bankruptcy Court has

14    fixed _____ as the deadline for filing an objection to the Plan and for serving a copy

15    of the objection on the Debtor's attorneys, WGH, at the address set forth above (Attn: Garrick A.

16    Hollander, Esq.); and upon the United States Trustee, located at 1415 State Street, Santa Barbara,

17    CA 93101 (Attn:  Brian Fittipaldi, Esq.).

18    At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to § 1129 of

19    the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims

20    created under the Plan, and, if not, whether the Bankruptcy Court should, nevertheless, confirm

21    the Plan.  If at such hearing the Bankruptcy Court should determine that the Plan meets all the

22    requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will

23    enter a Confirmation Order.  Pursuant to § 1141 of the Bankruptcy Code, the effect of the

24    Confirmation Order will be to make the provisions of the Plan binding upon the Debtor and each

25    of its Creditors, regardless whether the Creditor voted to accept the Plan.

26    **D.    <u>Disclaimers</u>.**

27    **THIS IS A SOLICITATION BY THE DEBTOR.  ALL REPRESENTATIONS**

28    **MADE ARE THOSE OF THE DEBTOR AND NOT OF ITS ATTORNEYS OR OTHER**

1    PROFESSIONALS.  NO REPRESENTATIONS CONCERNING THE DEBTOR,

2    INCLUDING, BUT NOT LIMITED TO, REPRESENTATIONS AS TO THE DEBTOR'S

3    FUTURE BUSINESS OPERATIONS, CASH FLOW PROJECTIONS, THE VALUE OF

4    ITS ~~PROPERTY~~ASSETS, THE AMOUNT OF CLAIMS AGAINST THE ESTATE, OR

5    ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED UNDER THE PLAN, ARE

6    AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS

7    DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE

8    TO SECURE ACCEPTANCE OF THE PLAN THAT ARE IN ADDITION TO OR

9    DIFFERENT FROM THE STATEMENTS CONTAINED IN THIS DISCLOSURE

10    STATEMENT SHOULD NOT BE RELIED UPON BY ANY PARTY-IN-INTEREST.  ANY

11    SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE

12    REPORTED TO THE DEBTOR'S ATTORNEYS WHO, IN TURN, WILL DELIVER THE

13    INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE

14    BANKRUPTCY COURT MAY DEEM TO BE APPROPRIATE.

15    THE DISCUSSION IN THIS DISCLOSURE STATEMENT REGARDING THE

16    DEBTOR MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE

17    MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.

18    SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A

19    RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF

20    FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT,"

21    "ANTICIPATE," "ESTIMATE," OR "CONTINUE," OR THE NEGATIVE THEREOF OR

22    OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE

23    READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE

24    NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND

25    UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO

26    DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD

27    LOOKING STATEMENTS.  THE LIQUIDATION ANALYSES, DISTRIBUTION

28    PROJECTIONS, PROJECTIONS OF FINANCIAL PERFORMANCE AND OTHER

1    INFORMATION CONTAINED HEREIN ARE ESTIMATES ONLY, AND THE TIMING,

2    AMOUNT AND VALUE OF ACTUAL DISTRIBUTIONS TO CREDITORS MAY BE

3    AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED.  THEREFORE,

4    ANY ANALYSES, ESTIMATES, OR PROJECTIONS MAY OR MAY NOT PROVE TO

5    BE ACCURATE.

6         UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE

7    INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE

8    STATEMENT HAS NOT BEEN SUBJECT TO AN AUDIT.  RECORDS KEPT BY THE

9    DEBTOR RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED

10   INTERNALLY BY THE DEBTOR.  THE DEBTOR BELIEVES THAT EVERY

11   REASONABLE EFFORT HAS BEEN MADE TO PRESENT FINANCIAL INFORMATION

12   AS ACCURATE AS IS REASONABLY PRACTICABLE GIVEN THE NATURE AND

13   HISTORY OF THE DEBTOR'S BUSINESS AND THE CONDITION OF THE DEBTOR'S

14   BOOKS AND RECORDS.  HOWEVER, THE RECORDS KEPT BY THE DEBTOR ARE

15   NEITHER WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY.

16   NEITHER THE DEBTOR NOR THE DEBTOR'S COUNSEL VERIFIED

17   INDEPENDENTLY THE INFORMATION CONTAINED HEREIN, OR MAKE ANY

18   REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY

19   THEREOF.

20        THE DEBTOR AND ITS PROFESSIONALS HAVE MADE A DILIGENT EFFORT

21   TO IDENTIFY IN THIS DISCLOSURE STATEMENT ALL LITIGATION CLAIMS,

22   INCLUDING CLAIMS FOR RELIEF, COUNTERCLAIMS, AND OBJECTIONS TO

23   CLAIMS.  HOWEVER, NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A

24   PARTICULAR LITIGATION CLAIM IS OR IS NOT IDENTIFIED IN THIS

25   DISCLOSURE STATEMENT.  THE DEBTOR OR OTHER PARTIES-IN-INTEREST MAY

26   SEEK TO INVESTIGATE, FILE AND PROSECUTE CAUSES OF ACTION WHETHER

27   OR NOT SUCH CLAIMS ARE IDENTIFIED IN THIS DISCLOSURE STATEMENT.

28

**ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO CAREFULLY REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING ON THE PLAN.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR AND OTHER PARTY-IN-INTEREST SHOULD CONSULT WITH ITS OWN LEGAL COUNSEL, BUSINESS ADVISOR, CONSULTANT OR ACCOUNTANT PRIOR TO VOTING ON THE PLAN IN ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN.  THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE CREDITORS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION REGARDING THE PLAN.**

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION BY THE DEBTOR OF ACCEPTANCES TO THE PLAN, ASSUMING THE ACCURACY OF THE CONTENTS OF THIS DISCLOSURE STATEMENT.  THE BANKRUPTCY COURT HAS NOT YET DETERMINED SUCH ACCURACY, BUT MAY DO SO AT THE HEARING REGARDING CONFIRMATION OF THE PLAN.**

**II.**

**DEFINITIONS AND RULES OF INTERPRETATION**

See Appendix appended hereto.

**III.**

**BACKGROUND OF THE DEBTOR**

**A.      Description of the Debtor**

The Debtor was formed in 2014 to purchase land and develop and operate an assisted living/memory care facility in Oxnard, California.  GPA #3 is the general partner of, and has complete decision making control over, the Debtor. Pursuant to the Court's Dismissal Order,

1   Christine Hanna has full authority to manage and operate GPA #3, and thus, manage and operate

2   the Debtor.

3          The Debtor was initially funded with $12 million of investment from foreign investors,

4   who invested in the Debtor pursuant to a program of the United States government to allow

5   foreign investors to make investments in the United States in order to obtain residency status.

6   This program is designed to stimulate the U.S. economy through job creation and capital

7   investment.  The Debtor's successful completion and operation of this project preserves jobs,

8   protects the investment of these foreign investors, and ensures their continued residency in the

9   United States.

10         **B.    Debtor's Assets**

11         The Debtor owns ~~the Property, as well as~~ a 100% equity interest in Regency Palms, which

12  owns and operates an assisted living facility on the Property.  Regency Palms provides housing

13  and a full spectrum of care and services to fragile seniors in need of a moderate level of medical

14  assistance, including specialized memory care for seniors who suffer from Alzheimer's Disease

15  and other forms of dementia.  Regency Palms employs approximately 60 employees.

16         ~~According to the County Assessor's office, the Property has a value of eight million, three~~

17  ~~hundred seventeen thousand, seven hundred and nineteen dollars.  Based on the Debtor's recent~~

18  ~~experience in trying to secure capital for the Debtor's facility and similar facilities owned by~~

19  ~~affiliates of the Debtor, the Debtor does not believe that the Property could be sold for an amount~~

20  ~~that would exceed the amount owing on the PACE Loan~~.

21         **C.    Debtor's Liabilities**

22         The following is a summary description of the claims asserted against the estate.

23              1.    Secured Claims

24         ~~Pursuant to the Assessment Contract, the Debtor owes PACE approximately $12,800,000.~~

25  ~~PACE holds a senior secured claim against the Property for any and all amounts due under the~~

26  ~~PACE Loan, including applicable statutory interest, penalties, and other costs and fees.  JKO~~

27  ~~asserts against the Debtor's Property a secured claim in the amount of $24,748,889.  The Debtor~~

28  ~~contends that JKO's claim is in the amount of $22,911,924.~~  Based on the JKO Conveyance, there

are no ~~The Debtor is not aware of any other~~ parties that have Liens or ~~who~~ assert secured claims against any of the Debtor's Assets.

2.    Administrative, Priority and General Unsecured Claims

The following is a summary of estimated administrative claims asserted against the ~~d~~Est~~ate~~ as of the date of the filing of this Disclosure Statement, which will be paid from distributions made by Regency Palms to the Debtor~~the Exit Financing~~.

| Firm | Nature of Service | Claim[1] |
|---|---|---|
| WGH | General Insolvency Counsel | $~~175~~200,000[2] |
| Wilshire Pacific Capital Advisors | Financial Advisor | $50,000 |

The Debtor is not aware of any priority unsecured claims asserted against the estate.  The Debtor estimates that there is approximately $5.5 million of General Unsecured Claims in the Debtor's Case, approximately $5.3 million of which are held by insiders or Related Parties, and $220,000 of which are held by non-insiders and non-Related Parties.

**D.    Events Precipitating Chapter 11 Filing**

Pursuant to its loan obligations, the Debtor was required to make monthly interest payments in the amount of $129,202 to Nano Banc.  The interest payments were set up in the loan through an account called an "interest reserve."  When the loan was originally funded, $1,196,000 of the loan amount was placed in this interest reserve account.  Every month, monthly interest payments would be paid from that interest reserve account.

In October of 2021, the Debtor entered into discussions with Nano for a COVID-19 forbearance agreement, which would have prevented the loan from going into default at that time.  The discussions were unsuccessful.

On or about April 22, 2022, the Debtor was informed that Nano sold the Debtor's loan to JKO.  On April 25, 2022, the Debtor received a Notice of Default and Election to Sell Under Deed

---

[1] Claim represents the estimated services rendered by each of the respective firms through as of the date of the filing of this Disclosure Statement.  This does not include all fees to be incurred in the case.  All fees and expenses incurred by the firms are subject to Bankruptcy Court approval.

[2] WGH may be willing, if necessary, to defer a portion of its claim to ensure prompt confirmation of the Plan.

1    of Trust recorded in the Official Records, County of Ventura, Doc No. 2022000005980.  Pursuant

2    to this notice, the Trustee Sale was scheduled for May 17, 2022.

3         On May 6, 2022, the Debtor commenced a lawsuit against JKO seeking, among other

4    things, a temporary restraining order, preliminary injunction, and permanent injunction, to enjoin

5    the JKO from proceeding with the Trustee Sale.  On May 10, 2022, the state court granted the

6    Debtor's *ex parte* application for a temporary restraining order.  The state court, however,

7    ultimately denied the Debtor's request for injunctive relief.  The temporary restraining order

8    issued on May 10, 2022 was dissolved.  The Trustee Sale was rescheduled and continued from

9    time to time until August 18, 2022, at which point the Debtor filed its First Chapter 11.

10        During the Debtor's First Chapter 11, the Debtor secured a PACE loan to help negotiate

11   and resolve its disputes with JKO.  On June 20, 2023, the Debtor entered into a Stipulation with

12   JKO, which provided for a significant payment by the Debtor from proceeds of the PACE loan.

13   On August 15, 2023, the Court entered orders (i)  authorizing the Debtor to obtain PACE

14   financing in an amount of up to $12.8 million; and (ii) approving the Stipulation with JKO and

15   dismissing the bankruptcy case.

16        Pursuant to the Stipulation, the Debtor was required to make a payment of approximately

17   $7.9 million in August 2023, and thereafter make monthly payments of $89,000.  Since

18   consensually emerging from its First Chapter 11 in 2023, the Debtor has been able to turn a profit

19   and generative approximately $80,000-$100,000 of EBITDA per month.  As a result, the Debtor

20   timely paid JKO $7.9 million, and thereafter, timely made seventeen monthly payments of

21   $89,000 (or more than $1.5 million).

22        Pursuant to the Stipulation, the Debtor had no cure period for a payment default, and to

23   secure performance, JKO was given a deed in lieu to record in the event of default.  Unfortunately,

24   March 2025 had three payroll periods that came due in the same month, resulting in the Debtor's

25   inability to fully pay Movant its monthly payment under the Stipulation.  Pursuant to the

26   Stipulation, the Debtor has no cure period for a payment default, and to secure performance,

27   Movant was given a Deed in Lieu to record in the event of default.  The Debtor asked JKO for an

28   extension of time, to which the Debtor believed JKO consented, but when asked JKO to sign an

1    agreement confirming the extension, the Debtor did not hear back from JKO.  Concerned about

2    losing the Property, on March 11, 2025, the Debtor filed this voluntary petition for relief under

3    Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District

4    of California.

5                                                    **IV.**

6                            **THE DEBTOR'S CHAPTER 11 PROCEEDING**

7          **A.      Commencement of Case**

8          On March 11, 2025, the Debtor filed a voluntary petition for relief under chapter 11 of the

9    Bankruptcy Code.  The Debtor has managed its financial affairs as a debtor-in-possession

10   pursuant to 11 U.S.C. §§ 1107 and 1008.

11         **B.      Employment of Professionals**

12         The Court has entered orders authorizing the employment of the following professionals in

13   the Case:

14
| Professional | Type of Professional | Date Order Entered |
15 | --- | --- | --- |
     | WGH | Debtor's General Insolvency Counsel | May 13, 2025 |
16   | Wilshire Pacific Capital | Debtor's Financial Advisor | May 13, 2025 |

17         **C.      Relief from Stay**

18         On August 12, 2025, after multiple continued hearings on a motion for relief from

19   stay brought by JKO relative to the Property, the Bankruptcy Court entered the RFS Order.

20   Pursuant to the RFS Order, JKO is permitted to effectuate the JKO Conveyance, resulting in

21   divesting the Debtor of its ownership of the Property. As a result, the Debtor's most significant

22   remaining asset is its subsidiary, Regency Palms, which owns and operates the assisted living

23   facility on the Property, and which, as a result of the JKO Conveyance, is the tenant of JKO.

24         **C.D.    Analysis of Preferential, Fraudulent and Unauthorized Transfers**

25         The Debtor has completed its analysis of the Debtor's books and records to determine

26   whether any payments made prior to the Petition Date constitute preferential transfers avoidable

27   pursuant to § 547 of the Bankruptcy Code, or whether any transfers made by the Debtor are

28   avoidable as fraudulent transfers under §§ 544(b) or 548 of the Bankruptcy Code, or avoidable

1  pursuant to § 549 of the Bankruptcy Code.  Based on the Debtor's preliminary review and

2  analysis, the Debtor is not aware of any potential causes of action against third parties.  The

3  Debtor does not believe that any Creditor should rely on any recovery on the prosecution of any

4  Avoidance Actions.  That being said, any recovery received, net of attorney's fees and costs,

5  would increase the recovery to General Unsecured Creditors.

6        **~~D.~~E.    Projected Objections to Claims Filed Against the Estate**

7        The Debtor has not completed its analysis of Claims because a deadline to file claims has

8  not yet passed, and thus additional claims may be filed with the Court.  At this point in time, the

9  Debtor does not anticipate having to file any objections to claims, other than what may be asserted

10 by JKO.  Based on the Debtor's books and records, attached as **Exhibit 3** is a schedule of

11 projected Claims in the Debtor's Case.

12                              **V.**

13                      **FINANCIAL INFORMATION**

14       **A.    Historical Financial Information for the Debtor and its Subsidiary**

15       Prior to July, 2023, the Debtor's subsidiary, Regency Palms, was generating negative

16 operating cash from operations, exclusive of intercompany rent.  In July 2023, the Debtor's

17 subsidiary began to consistently generate positive cash flow from operations, exclusive of

18 intercompany rent.  Attached as **Exhibit 2** is a two-year income statement for the Debtor and

19 monthly cash flows for Regency Palms for the years ending 2023 through the first six months of

20 2025. As reflected therein, Regency Palms has grown its cash flow from operations from $124,000

21 in the second half of 2023 to $500,000 for the first half of 2025.

22       **B.    Income and Payment of Expenses and Debts During Bankruptcy**

23       Since the commencement of the Case, the Debtor has not generated/received any income

24 because its tenant (Regency Palms) has not paid rent based on the terms of its lease with the

25 Debtor.  In particular, pursuant to the terms of the lease, the tenant is required to pay rent in an

26 amount equal to the Debtor's *debt service obligation*.  However, based on the filing of this Case,

27 the amount of the Debtor's debt service obligation owing to JKO ~~is~~was uncertain, if not zero~~and~~

28 ~~arguably is $0 based on the value of the Property securing JKO's claim~~.  Since the entry of the

1    RFS Order and the JKO Conveyance, however, the Debtor has no debt service obligation to JKO

2    because JKO's Claim has been satisfied in full.  ~~The Debtor has filed a motion for authority to~~

3    ~~enter into a lease amendment to quantify this payment obligation commensurate with the rental fair~~

4    ~~market value, but JKO ironically has filed an objection to this motion.~~

5          In addition, the Debtor has filed Schedules in the Case.  The Schedules provide financial

6    information regarding the assets and liabilities of the Estate as of the Petition Date.  The Schedules

7    are available for inspection, during normal business hours, at the Clerk's Office of the Bankruptcy

8    Court, located at 1415 State Street, Santa Barbara, CA 93101.

9          Notwithstanding, the Debtor has paid any necessary expenses and costs of administration.

10    Copies of the Debtor's Monthly Operating Reports reflecting the Debtor's financial performance

11    during this bankruptcy can be obtained from the Clerk's Office, United States Bankruptcy Court,

12    1415 State Street, Santa Barbara, CA  93101.

13        **C.**      <u>**Financial Projections for the Debtor's Plan of Reorganization**</u>

14          The Debtor has prepared Projections, which includes cash flow projections for the

15    Property, along with assumptions on which such projections are based.  A critical component to

16    the Projections is the profitable operations of the Tenant.  The Projections are intended to assess

17    the future cash flow available to the Debtor for making the Distributions required by the Plan, and

18    thus provide support for the feasibility of the Plan, pursuant to § 1129(a)(11) of the Bankruptcy

19    Code.  The Projections are attached hereto as **Exhibit 1**.  The Projections present the entire

20    financial template for the Debtor's reorganization effort.  The Projections assume that the Debtor's

21    subsidiary, Regency Palms, continues to operate its assisted living facility profitably, and that

22    JKO consummates the JKO Conveyance, in which case the Debtor will have no debt service

23    obligation owing to JKO, and thus, Regency Palms will have no rental payment obligation owing

24    to JKO as the new landlord to Regency Palms~~obtains Court approval of its proposed lease~~

25    ~~amendment, and its subsidiary, Regency Palms, continues to operate its assisted living facility~~

26    ~~profitably~~.  The Debtor projects that the net cash flow from the operations generated from the

27    Property, financing proceeds and, if necessary, net sales proceeds, will be sufficient to pay all

28    Allowed Claims in accordance with the treatment of such Allowed Claims as described herein.

1    The Projections set forth the Debtor's estimate of the anticipated cash flow of the

2    Reorganized Debtor for the term of the Plan, which is based on the anticipated cash flow from the

3    operations of the planned assisted living facility.  Projections of the anticipated cash flow of the

4    Reorganized Debtor are based on estimated revenue and expenses for the operation of the

5    assisted living facility.  The Projections also contain a description of material assumptions

6    underlying the Projections.  The Projections are based, in large part, upon the historical earnings

7    and expenses of similar assisted living facilities owned and operated by affiliates of the Debtor.

8    Although the Debtor has devoted considerable effort to the development of the

9    Projections and believes that the Projections represent fairly the projected future cash flow of the

10    Debtor, care should be taken in analyzing the Projections as no guarantee exists that the

11    Projections can be met by the Debtor.

12    THE FINANCIAL PROJECTIONS SET FORTH IN THIS DISCLOSURE STATEMENT

13    REPRESENT AN ESTIMATE OF FUTURE PERFORMANCE BASED UPON CERTAIN

14    ASSUMPTIONS SET FORTH IN THE FINANCIAL PROJECTIONS.  THESE FUTURE

15    EVENTS MAY OR MAY NOT OCCUR, AND THE FINANCIAL PROJECTIONS MAY NOT

16    BE RELIED UPON AS A GUARANTEE OR OTHER ASSURANCE OF THE ACTUAL

17    RESULTS THAT WILL OCCUR.  BECAUSE OF THE UNCERTAINTIES INHERENT IN

18    PREDICTIONS OF FUTURE EVENTS AND EVENTS OUTSIDE OF THE DEBTOR'S

19    CONTROL, THE DEBTOR'S ACTUAL CASH FLOW MAY BE DIFFERENT FROM THAT

20    PREDICTED, AND SUCH DIFFERENCE MAY BE MATERIAL AND ADVERSE TO THE

21    INTERESTS OF CREDITORS.

22    **VI.**

23    **DESCRIPTION OF PLAN OF REORGANIZATION**

24    A.    **Summary of the Plan**.

25    The following is a brief summary of the Plan and is qualified in its entirety by the full text

26    of the Plan.  The terms of the Plan are comprehensive and will be controlling on the Creditors and

27    the Debtors in the event that the Plan is confirmed.  **Therefore, all Creditors are urged to read**

28    **the Plan carefully in its entirety rather than relying on this summary.**

The Plan provides that General Unsecured Creditors will receive one hundred percent (100%) on account of their Allowed General Unsecured Claim from income generated from the business operations over five years and/or the refinancing or sale of the Assets.  For details about Plan treatment, see Article V of the Plan; for details about implementation of the Plan, see Article VI of the Plan.

**B.      Proposed Treatment of Claims.**

1.      Creditors Asserting Secured Claims.  For full treatment, see Section 5.1-5.3 of the Plan.  The following is a summary of the proposed treatment of Claims of Secured creditors:

a.      Class 1: The members of Class 1 consists of a~~ll~~~~ny Allowed~~ ~~Secured~~ Claim~~s~~ held by PACE.  PACE does not have any Allowed Claim against the Debtor, its Estate or any Assets of the Estate.  Consequently, Class 1's rights are not impaired under the Plan, and thus the member of this Class is not entitled to vote on the Plan.

(1)      Disa~~A~~llowance of ~~Secured~~ Claim.  The member of Class 1 has no Allowed Claim nor valid Lien against the Debtor, the Debtor's Estate, or any of its Assets.  ~~shall be allowed a Secured Claim, as of the Petition Date, in the amount of $12,800,000.~~

(2)      Treatment of Disa~~A~~llowed ~~Secured~~ Claim~~s~~.  The member of this Class shall receiving nothing from the Debtor.~~legal, equitable and contractual rights to which PACE is entitled on account of any Allowed Secured Claim of PACE shall not be altered or modified in any manner.~~

b.      Class 2: JKO is the sole member of this Class.  JKO does not have any Allowed Claim against the Debtor, its Estate, or any Assets of the Estate.  Consequently, ~~, and~~ its rights are not impaired under the Plan, and thus, is not entitled to vote on the Plan.

(1)      Disa~~A~~llowance of ~~Secured~~ Claim.  JKO does not have any Allowed Claim or Lien against the Debtor, its Estate, or any Assets of the

Estate because all Claims previously held by the member of this Cass against the Debtor were satisfied in full upon the JKO Conveyance of the Property securing JKO's Claim.  ~~shall be allowed a Secured Claim in the amount equal to the value of JKO's Claim and interest in the Estate's interest in the Property, which shall be based on the Fair Market Value of the Property, as of the Effective Date, of such Creditor's interest in the Estate's interest in such property securing such creditor's claim (or such other value as agreed to between the Debtor and JKO), securing JKO's Claim.  If JKO objects to the Debtor's asserted value of the property securing the Creditor's Claim or otherwise asserts a value of the property lower than that which is asserted by the Debtor, then, the Debtor may elect, in its sole discretion, to fix the amount of such objecting Creditor's Allowed Secured Claim based on the lower of the objection value(s).~~

(2)     Treatment of ~~Allowed Secured~~ Claims.  JKO will receive nothing from the Debtor as JKO has no Allowed Claim against the Debtor, its Estate, nor a Lien against any Assets of the Estate.  ~~Except to the extent that JKO agrees to a less favorable treatment, shall receive cash payments totaling the allowed amount of such Allowed Secured Claim as of the Petition Date, equal to the Fair Market Value, as of the Effective Date, of JKO's interest in the Estate's interest in the Property, as may be modified pursuant to Section 5.2.1.  Notwithstanding the foregoing, and only in the event JKO does not object to the Plan, treatment provided therein, or any other relief prayed for by the Debtor in this case, JKO will receive the following payments:  (a) one lump sum payment of five million dollars ($5,000,000) on the First Payment Date; and (b) monthly payments of $50,000, commencing on the first Business Day of the first full month following the First Payment Date, and continuing thereafter for a period of 7 years.~~

c.    <u>Class 3:  Allowed Secured Claim of Mechanics Lien Creditor.</u>

Class 3 consists of any Allowed Secured Claim held by a Mechanics Lien

Creditor.  Class 3 is <u>un</u>impaired by the Plan, and thus entitled to vote on the Plan.

(1)    <u>Allowance of Secured Claim</u>.  The member(s) of Class 3

<u>does not have any Allowed Claim or Lien against the Debtor, its Estate, or</u>

<u>any Assets of the Estate because any Claims previously held by the</u>

<u>member of this Class against the Debtor were wiped out upon the JKO</u>

<u>Conveyance.</u>~~shall be allowed a Secured Claim for the amount of its non-~~

~~contingent liquidated Claim to the extent of the value of such Creditor's~~

~~Claim against the Estate's interest in such property, which shall be based~~

~~on the Fair Market Value, as of the Effective Date, of such Creditor's~~

~~interest in the Property (or such other value as agreed to between the~~

~~Debtor and any member of Class 3), as of the securing such Creditor's~~

~~Claim in this Class.  If the member of this Class objects to the Debtor's~~

~~asserted value of the property securing the Creditor's Claim or otherwise~~

~~asserts a value of the property lower than that which is asserted by the~~

~~Debtor, then, the Debtor may elect, in its sole discretion, to fix the amount~~

~~of such objecting Creditor's Allowed Secured Claim based on the lower of~~

~~the objection value(s).~~

(2)    <u>Treatment of Claim</u>.  E<u>ach</u> ~~xcept to the extent that a~~

member of this Class <u>will receive nothing from the Debtor as no member</u>

<u>of this Class has an Allowed Claim against the Debtor, its Estate nor a</u>

<u>Lien against any Assets of the Estate.</u>  ~~agrees to a less favorable treatment,~~

~~each member of this Class shall receive a cash payment totaling the~~

~~amount of its Allowed Secured Claim, equal to the value, as of the~~

~~Effective Date, of such Creditor's interest in the Estate's interest in such~~

~~property, as may be modified pursuant to Section 5.3.2 of the Plan.  In~~

~~particular, except to the extent that any member of this Class agrees to a~~

1    ~~less favorable treatment, the Debtor shall pay the member of this Class the~~

2    ~~full amount of the Allowed Secured Claim on the later of: (i) the Effective~~

3    ~~Date, or (ii) the tenth (10th) Business Day after such Secured Claim~~

4    ~~becomes an Allowed Secured Claim.~~

5         d.    <u>Class 4 - Allowed Secured Claim of Governmental Units</u>.

6    Creditor's rights are not impaired by the Plan, and thus members of this Class are

7    not entitled to vote on the Plan.

8         Any Allowed Secured Claim of Governmental Units against the Estate will

9    receive 100% of its Allowed Secured Claim against the Estate.

10    2.    <u>Unsecured Creditors</u>:  For full treatment, see Sections 5.5-5.6 of the Plan.

11    The following is a summary of the proposed treatment of Claims of Unsecured creditors:

12         a.    <u>Class 5 – Unsecured Non-Tax Priority Claims</u>.  Class 5 consists of

13    any Allowed Non-Tax Priority Claim.  Class 5 is not impaired by the Plan, and

14    thus members of this Class are not entitled to vote on the Plan.

15         Members of this Class shall receive Cash in the full amount of the

16    Allowed Unsecured Non-Tax Priority Claim on the <u>later</u> of (i) the Effective Date,

17    and (ii) the tenth (10th) Business Day after such Non-Tax Priority Claim becomes

18    an Allowed Unsecured Non-Tax Priority Claim.

19         b.    <u>Class 6.1 - Allowed General Unsecured Claims</u>.  Class 6.1 consists

20    of any Allowed General Unsecured Claim other than those held by a Related

21    Party.  Class 6.1 is impaired by this Plan, and thus entitled to vote on the Plan.

22         Except to the extent that a member of this Class agrees to a less favorable

23    treatment, each member of this Class shall receive its Pro Rata share of the ~~Class~~

24    ~~6.1~~ Plan Fund based on each member's Allowed Class 6.1 General Unsecured

25    Claim relative to all Allowed Class 6.1 General Unsecured Claims and the

26    Allowed Claim of the member of Class 6.1.  Payment shall be made <u>in five</u>

27    <u>installments, commencing</u> within later of (i) the first Business Day of the first full

28

month following the Effective Date, or (ii) the tenth (10th) Business Day after such

Claim becomes an Allowed Claim, and continuing every other month thereafter.

        c.      Class 6.2 – Allowed General Unsecured Claims (Related Parties).

Class 6.2 consists of any Allowed General Unsecured Claim held by a Related

Party.  Class 6.2 is impaired by this Plan and entitled to vote on the Plan.

        Except to the extent that a member of this Class agrees to a less favorable

treatment, each member of this Class shall receive its Pro Rata share of twenty

percent (20%) of the limited partnership equity interests in the Reorganized

Debtor the Class 6.2 Plan Fund based on each member's Allowed Class 6.2

General Unsecured Claim relative to all Allowed Class 6.2 General Unsecured

Claims and the Allowed Claim of the member of Class 6.2.  Payment shall be

made within later of (i) the first Business Day of the first full month following the

Effective Date, or (ii) the tenth (10th) Business Day after such Claim becomes an

Allowed Claim.

        3.      Class 7 - Allowed Interests. The Interest holders' rights are impaired by the

Plan, and thus entitled to vote on the Plan.

        The holders of Allowed Interests that are limited partners of the Debtor shall retain

their Interests in the Debtor, subject to a modification of the rights and powers of the

limited and general partners, as reflected in the revised red-lined Limited Partnership

Agreement attached as **Exhibit 1** to the Plan, and which modifications are incorporated

herein by this reference, as well as a dilution in equity resulting from the twenty percent

(20%) equity interest granted to Class 6.2 described herein.  The interests of GPA #3 shall

have authority, in its sole discretion, to shall be transferred its equity interests to a new

entity that may to be formed, which will be owned and controlled by Christine Hanna,

which new entity will would hold all Interests currently held by GPA #3. Notwithstanding

the foregoing and any term contained in the Partnership Agreement, all Interests are subject

to dilution in the event additional non-EB-5 equity financing is raised prior to and/or after

confirmation of the Plan, as Christine Hanna may determine, in her sole discretion, is

1    necessary to effectuate the terms of this Plan and a successful reorganization.  The extent of

2    such dilution shall be based on the amount of equity financing raised and equity demanded

3    by the sources of such additional equity financing, which shall be determined and agreed to

4    by Christine Hanna, in her sole discretion.

5    **C.    Executory and Assumed Contracts and Leases.**

6         The Debtor seeks to assume and/or assign a variety of executory contracts, as reflected in

7    Schedule 9.1 to the Plan.  The Debtor rejects all existing executory contracts and unexpired leases

8    identified on Schedule 9.3 and otherwise not identified on Schedule 9.1. See Article IX of the Plan.

9    **VII.**

10   **IMPLEMENTATION OF THE PLAN**

11        The Reorganized Debtor shall make all payments due under the Plan to holders of Allowed

12   Claims and Allowed Interests from one or more of the following:  (a) distributions from Regency

13   Palms;Exit Financing of not less than eight million dollars ($8,000,000), which shall consist of

14   new equity financing and (b) such additional debt and/or equity financing that may be necessary to

15   effectuate the Plan; (c) any proceeds from the prosecution and/or settlement of Causes of Action,

16   including Avoidance Actions; and/or (d) proceeds from the sale or financing of the Reorganized

17   Debtor's business or real property.

18   **VIII.**

19   **TAX CONSEQUENCES OF THE PLAN**

20   **A.    Introduction**

21        The implementation of the Plan may have federal, state and local tax consequences to the

22   Debtor and the Debtor's Creditors and Interest Holders.  No tax opinion has been sought or will be

23   obtained with respect to any tax consequences of the Plan.  This Disclosure Statement does not

24   constitute, and is not intended to constitute, either a tax opinion or tax advice to any person, and

25   the summary contained herein is provided for informational purposes only.

26        The discussion below summarizes only certain of the federal income tax consequences

27   associated with the Plan's implementation.  This discussion does not attempt to comment on all

28   aspects of the federal income tax consequences associated with the Plan, nor does it attempt to

consider various facts or limitations applicable to any particular Creditor or Interest Holder which may modify or alter the consequences described herein.  A Creditor or Interest Holder may find that the tax consequences of the Plan to such Creditor or Interest Holder differ materially from the tax consequences discussed below because of such Creditor's or Interest Holder's facts and circumstances.  This discussion does not address state, local or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

The following discussion is based upon the provisions of the Internal Revenue Code, the regulations promulgated thereunder, and existing judicial decisions and administrative rulings.  In light of the rapidly-changing nature of tax law, no assurance can be given that legislative, judicial or administrative changes will not be forthcoming that would affect the accuracy of the discussion below.  Any such changes could be material and could be retroactive with respect to the transactions entered into or completed prior to the enactment or promulgation thereof.  The tax consequences of certain aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to judicial or administrative interpretations that differ from the discussion below.

CREDITORS AND INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

### B.     Federal Income Tax Consequences to the Debtor

Consummation of the Plan may reduce substantially the amount of the Debtor's aggregate outstanding indebtedness.  In general, the Internal Revenue Code provides that a taxpayer who realizes a discharge of indebtedness must include the Debt Discharge Amount in its gross income in the taxable year of discharge to the extent that the Debt Discharge Amount exceeds any consideration given for such discharge.[3]  However, if a taxpayer is in a title 11 case and the discharge of indebtedness occurs pursuant to a plan approved by the bankruptcy court, as in this

---

[3] No income from the discharge of indebtedness is realized to the extent that payment of the liability being discharged would have given rise to a deduction.

1    Case, then such discharge of indebtedness is specifically excluded from gross income.

2    Accordingly, the Debtor will not be required to include in income any Debt Discharge Amount as

3    a result of the Plan transactions.

4    Although the Debtor will not have to include the Debt Discharge Amount resulting from

5    the Plan transactions in his gross income, there will be a tax effect. The Internal Revenue Code

6    requires certain tax attributes of a debtor to be reduced by the Debt Discharge Amount excluded

7    from income. Tax attributes are reduced in the following order of priority: net operating losses

8    and net operating loss carryovers; general business credits; minimum tax credits; capital loss

9    carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers; and foreign

10   tax credit carryovers. Tax attributes are generally reduced by one dollar for each dollar excluded

11   from gross income, except that general tax credits, minimum tax credits and foreign tax credits are

12   reduced by 33.3 cents for each dollar excluded from gross income.

13   An election can be made to alter the order of priority of attribute reduction by first applying

14   the reduction against depreciable property held by the taxpayer in an amount not to exceed the

15   aggregate adjusted basis of such property. The Debtor has not yet decided whether to make such

16   election. The deadline for making such election is the due date (including extensions) of the

17   Debtor's federal income tax return for the taxable year in which such debt is discharged pursuant

18   to the Plan.

19   Any Claim against the Debtor (except a Claim that would give rise to a deduction if paid)

20   that is discharged by payment to a Creditor of Cash and/or property will result in the creation of a

21   Debt Discharge Amount reducing tax attributes to the extent that the adjusted issue price of the

22   debt discharged (plus accrued interest) exceeds the fair market value of the payment made in

23   cancellation thereof.

24   The Debtor's Debt Discharge Amount may be increased to the extent that General

25   Unsecured Creditors holding unscheduled Claims fail to timely file a Proof of Claim and have

26   their Claims discharged on the Confirmation Date pursuant to Bankruptcy Code § 1141.

27

28

C.    **Tax Consequences to Creditors**

A Creditor who receives a Distribution on his or her Claim that is less than the Creditor's adjusted basis in such Claim may be entitled to claim a bad debt deduction for this difference. A bad debt deduction is allowed in the taxable year of the Creditor in which a debt becomes wholly worthless. The discharge of a Claim pursuant to the Plan establishes that such Claim is wholly worthless as of the date of discharge (assuming the holder of the Claim receives no consideration under the Plan with respect to such Claim). It is possible, however, that such Claim may have become wholly worthless on an earlier date, depending upon all the facts and circumstances. The Debtor expresses no opinion regarding the date or dates on which Claims discharged under the Plan became worthless.

**IX.**

**LIQUIDATION ANALYSIS**

Pursuant to § 1129(a)(7) of the Bankruptcy Code, a plan cannot be confirmed unless the bankruptcy court determines that distributions under the plan to all holders of claims and interests who have not accepted the plan, and whose claims and interests are classified in classes that are impaired under the plan, are no less than those which they would receive in a liquidation proceeding under Chapter 7. This test must be satisfied even if a plan is accepted by each impaired class of claims and interests. This test, which is often referred to as the "best interests" test, requires the bankruptcy court to find either that (i) all holders of claims and interests in an impaired class of claims or interests have accepted the plan, or (ii) the plan will provide each holder of claims and interests in an impaired class who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To satisfy the "best interest" test, the bankruptcy court must reach a conclusion regarding the probable distribution to the holders in each impaired class of claims and interests if the debtor was liquidated in a Chapter 7. The first step in this process is to determine the "liquidation value" that would be generated from a forced sale of the debtor's assets by a Chapter 7 trustee. The second step requires the application of the projected liquidation proceeds in accordance with the

1    various rights of creditors holding liens on the property.  For example, if a claimant holds a lien on

2    corporate equipment but not inventory, the proceeds of the liquidation derived from this asset

3    would have to be applied against this claimant's debt.  If the proceeds were sufficient to retire the

4    claimant's secured claim, then the claimant's claim would be paid in full.  However, if the

5    liquidation proceeds are not sufficient, then that portion of the claim which is not satisfied from

6    the sale proceeds is treated as an unsecured claim and shares pro rata at that distribution level.

7    This process must then be repeated as to each collateral category to ensure that the claims secured

8    by collateral are paid from their collateral and only from their collateral.

9        Once all of the claims secured by liens on assets of a debtor's estate are deducted from the

10    projected liquidation proceeds of the sale of the claimant's collateral, then the costs and expenses

11    associated with the liquidation of the estate incurred by the Chapter 7 trustee must be paid.  These

12    costs would include the compensation of the trustee, as well as compensation of counsel and other

13    professionals retained by the trustee, and asset disposition expenses.

14        After payment of the costs and expenses associated with the Chapter 7 liquidation are paid,

15    all unpaid administrative expenses incurred by the debtor in its Chapter 11 case (such as

16    compensation of attorneys, financial advisors, and restructuring consultants) that are allowed in

17    the Chapter 7 case, and all unpaid claims arising from the operations of the debtor during the

18    pendency of the Chapter 11 case, must be paid.

19        After the payment of Chapter 11 administrative expenses, the remaining liquidation

20    proceeds would be used to pay priority claims, such as tax and wage claims that are entitled to

21    priority under the Bankruptcy Code. Thereafter the remaining liquidation proceeds would be made

22    available to pay general unsecured claims.  Finally, to the extent that any proceeds remain after

23    paying all allowed claims, they would be distributed to interest holders in accordance with their

24    liquidation priorities.

25        Attached hereto as **Exhibit 4** is a liquidation analysis prepared by the Debtor that estimate

26    the probable liquidation value of the Debtor's assets, and applies the foregoing liquidation

27    methodology to the estimated Claims against the Estate in a Chapter 7 liquidation in an effort to

28    quantify what each Class of Creditors and Interest Holders would receive in a Chapter 7

liquidation.  Any liquidation analysis of this nature entails a significant degree of estimation and projection regarding both probable asset value and probable Allowed Claim totals.  For example, in preparing **Exhibit 4**, the Debtor has necessarily quantified what the Debtor believes will be the Allowed Claims after claim objections within each Class, including projected Allowed Administrative Claims, which are included in **Exhibit 4**.  The administrative claims included in **Exhibit 5** are based on fees for professional services, which have not been completed in this Case and are subject to final Court approval.  These and other factors may significantly increase or reduce the Distributions to holders of Allowed Claims.

On the valuation side, the Debtor, with the use of the appraisal of the Property, has estimated the liquidation value of its assets.

Although there are inherent difficulties in quantifying with exactitude the potential recoveries that Creditors would receive in a Chapter 7 liquidation scenario, the Debtor believes that the liquidation analysis attached hereto as **Exhibit 4** provides a fair estimated result that would occur in a Chapter 7 liquidation.  As this analysis indicates, a the Debtor's assets are currently encumbered by Liens in favor of secured creditors.  Based upon the foregoing valuation assumptions, and given the amount of the existing secured and unsecured claims against the assets owned by the Debtor, the Debtor believes that, in a Chapter 7 liquidation, Creditors holding General Unsecured Claims would receive 0% on account of their Claims in the Debtor's Case.

In contrast, the Debtor believes that more value will be available for Creditors under the terms of the Plan.  More specifically, instead of being paid nothing, the Debtor firmly believes General Unsecured Claims will be paid in full.  Consider the following class by class comparative analysis:

**A.**    **Class 1**

The holder of Claims in this Class is not impaired by the Plan. Accordingly, the best interest of creditors test does not apply to this Class and this Class is not entitled to vote on the Plan.

**B.**    **Class 2**

The holder of Claims in this Class is not impaired by the Plan. Accordingly, the best interest of creditors test does not apply to this Class and this Class is not entitled to vote on the Plan Pursuant to the terms of the Plan, the member of this Class will receive eight million dollars ($8,000,000), which is at least as much and in fact more than it would receive in a Chapter 7.

**C.**    **Class 3**

The holder of Claims in this Class is not impaired by the Plan. Accordingly, the best interest of creditors test does not apply to this Class and this Class is not entitled to vote on the Plan Under a Chapter 7 liquidation, the member of this Class is projected to receive no distribution. Accordingly, the member of this Class will receive as much as it would in a Chapter 7.

**D.**    **Class 4**

The holders of Claims in this Class are not impaired by the Plan. Accordingly, the best interest of creditors test does not apply to this Class and this Class is not entitled to vote on the Plan.

**E.**    **Class 5**

The holders of Claims in this Class are not impaired by the Plan. Accordingly, the best interest of creditors test does not apply to this Class and this Class is not entitled to vote on the Plan.

**F.**      **Classes 6.1 – 6.2**

The holders of Claims in these Classes are impaired by the Plan. Under a Chapter 7 liquidation, the members of these Classes are projected to receive no distribution.  Accordingly, the member of this Class will receive as much as, and in fact more than, it would in a Chapter 7.

**G.**      **Class 7**

The holders of Interests in this Class are impaired by the Plan. Under a Chapter 7 liquidation, Interest Holders in this Class are projected to receive no Distributions.  In contrast, under the Plan, these Interest Holders will retain their interest in the Debtor, and thus, will receive as much as, and in fact more than, they would receive in a liquidation.

**X.**

**VOTING**

**A.**      **Who May Vote.**

Creditors are entitled to vote on confirmation of the Plan unless (i) their class is unimpaired (presumed to accept) or is to receive no distribution (presumed to reject); (ii) an objection has been filed to that creditor's claim, (iii) that creditor's claim is scheduled by the Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim; or (iv) the claim is unclassified (and thus required by law to be paid in full).  A creditor whose claim has either been objected to or been scheduled by the Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim, and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard at or before the Confirmation Hearing.

**B.**      **How to Vote.**

Fill out and return the attached ballot so that it is received by the Debtor's counsel no later than 14 days before the Confirmation Hearing.

**C.**      **Effect of Vote.**

The Plan will be confirmed only if (i) it is accepted by each impaired class, or (ii) it is accepted by at least one impaired class (exclusive of insiders) and the Court determines that it is "fair and equitable" (as defined by §  1129(b) of the Bankruptcy Code) to all dissenting

1  classes of creditors.  A class of creditors accepts the Plan if it is accepted by a majority in number

2  and two-thirds in dollar amount of creditors who cast timely ballots voting on the Plan.

3                                                            **XI.**

4                                                      **CONCLUSION**

5              The materials provided in this Disclosure Statement are intended to assist Creditors in

6  voting on the Plan.  If the Plan is confirmed, Creditors will be bound by the terms of

7  the Plan.  Therefore, all Creditors are urged to review this material and to make such further

8  inquiries as they deem appropriate, and then cast an informed vote on the Plan.

9  Date:  August 19~~July 30~~, 2025                **GLOBAL PREMIER REGENCY PALMS
10                                                           OXNARD, LP, a California limited partnership**

11                                                           **GLOBAL PREMIER AMERICA #3, LLC,
12                                                           a California limited liability company, its
                                                             General Partner**

13

14                                                           By:_____
15                                                           Name: Christine Hanna
                                                             Its:      Manager

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **A.    <u>Rules of Construction</u>.**

2        For the purpose of the Plan, unless otherwise provided in the Plan, (i) whenever from the

3    context it is appropriate, each term, whether stated in the singular or the plural, shall include both

4    the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall

5    include the masculine, feminine and neuter; (iii) any reference in the Plan to an existing document,

6    exhibit or schedule filed or to be filed means such document or schedule as it may have been or

7    may be amended, modified or supplemented pursuant to the Plan; (iv) any reference to an entity as

8    a holder of a Claim includes that entity's successors and assigns; (v) except as otherwise stated

9    herein, all references in the Plan to § s, articles and exhibits are references to § s, Articles and

10   Exhibits of or to the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its

11   entirety rather than to a particular portion of the Plan; (vii) unless otherwise provided in the Plan,

12   any reference in the Plan to a contract, instrument, release, indenture, agreement, or other

13   document being in a particular form or on particular terms and conditions means that such

14   document shall be substantially and materially in such form or substantially and materially on such

15   terms and conditions; and (viii) the rules of construction set forth in § 102 of the Bankruptcy Code

16   shall apply to the extent such rules are not inconsistent with the express terms of the Plan or any

17   other provision in this Appendix.

18    **B.    <u>Schedules</u>.**

19        All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full

20   herein.

21

22

23

24

25

26

27

28

EXHIBIT 1

**Regency Palms Oxnard**
**Plan of Reorganization Projections**
8/18/2025

*BK Petition Date 3/11/2025*
*Target Effective Date 11/30/2025*

| | At Closing | Month 1<br>Dec-25 | Month 2<br>Jan-26 | Month 3<br>Feb-26 | Month 4<br>Mar-26 | Month 5<br>Apr-26 | Month 6<br>May-26 | Month 7<br>Jun-26 | Month 8<br>Jul-26 | Month 9<br>Aug-26 | Month 10<br>Sep-26 | Month 11<br>Oct-26 | Month 12<br>Nov-26 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SOURCES OF CASH** | | | | | | | | | | | | | | |
| Distribution from Subsidiary at Closing | 350,000 | - | - | - | - | - | - | - | - | - | - | - | - | 350,000 |
| Monthly Income from Subsidiary | - | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 780,000 |
| | 350,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 1,130,000 |
| **USES OF CASH** | | | | | | | | | | | | | | |
| **Professional and UST Fees** | | | | | | | | | | | | | | |
| Debtor's Legal Counsel | 250,000 | - | - | - | - | - | - | - | - | - | - | - | - | 250,000 |
| Debtor's Financial Advisor | 50,000 | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 |
| US Trustee | - | 3,999 | - | - | 766 | - | - | 726 | - | - | 726 | - | - | 6,217 |
| | 300,000 | 3,999 | - | - | 766 | - | - | 726 | - | - | 726 | - | - | 306,217 |
| **Claimants by Class** | | | | | | | | | | | | | | |
| Class 1 - All PACE Claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 - All JKO Claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 3 - Mechanic's Liens | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 - Secured Claims of Government Units | 1,945 | - | - | - | - | - | - | - | - | - | - | - | - | 1,945 |
| Class 5 - Unsecured Priority Claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 6.1 - General Unsecured Claims | 20,000 | - | - | 20,000 | - | - | 20,000 | - | - | 20,000 | - | - | 20,000 | 100,000 |
| Class 6.2 - General Unsecured Claims - Related / Non-Insider Parties | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 - Allowed Interests | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | 21,945 | - | - | 20,000 | - | - | 20,000 | - | - | 20,000 | - | - | 20,000 | 101,945 |
| **Operating Costs** | | | | | | | | | | | | | | |
| *(a) EB-5 Compliance* | | | | | | | | | | | | | | |
| JTC Funds Administration | - | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 15,840 |
| EB-5 Annual Integrity Fund Fee (regional center) | - | - | 5,000 | - | - | - | - | - | - | - | - | - | - | 5,000 |
| Form I-956G Annual Reporting (prep and filing) | - | - | 5,000 | - | - | - | - | - | - | - | - | - | - | 5,000 |
| | - | 1,320 | 11,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 1,320 | 25,840 |
| *(b) Facility Costs* | | | | | | | | | | | | | | |
| Rent | - | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 43,375 | 520,500 |
| Repairs and Maintenance | - | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 32,000 |
| Property and Liability Insurance | - | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 5,842 | 70,109 |
| Other | - | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 5,000 |
| | - | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 52,301 | 627,609 |
| *(c) Tax* | | | | | | | | | | | | | | |
| Property Taxes (Paid by Subsidiary) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL USES OF CASH** | 321,945 | 57,620 | 63,621 | 73,621 | 54,387 | 53,621 | 73,621 | 54,347 | 53,621 | 73,621 | 54,347 | 53,621 | 73,621 | 1,061,611 |
| **TOTAL SOURCES OF CASH** | 350,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 1,130,000 |
| **Cash - End of Month** | 28,055 | 35,435 | 36,814 | 28,193 | 38,806 | 50,186 | 41,565 | 52,218 | 63,598 | 54,977 | 65,630 | 77,010 | 68,389 | 68,389 |

<u>Assumptions</u>

- One-time distribution from Global Regency Oxnard Senior Care Services, LLC (the "Sub")
- Monthly income distributions from the Sub of $65k
- Estimated professional fees of $250k in legal fees and $50k in financial advisory fees
- Senior creditor (JKO) paid in full via Deed in Lieu on real property
- Senior creditor (PACE) paid in full via assumption by JKO
- Reorganized Debtor will pay secured claims of government units in full ($1,945)
- Reorganized Debtor will pay unsecured claim holders $20k at closing plus $20k/quarter for a total of $100k on $219k in claims
- Related party unsecured claim holders convert $5.3m to 20% equity
- Reorganized Debtor will reserve sufficient funds to maintain the physical plant, pay property taxes and maintain EB-5 compliance

Pursuant to the terms of the lease agreement between the Debtor and its subsidiary, which JKO is inheriting by virtue of the anticipated deed in lieu to be recorded by JKO, Regency Palms has no rental obligation owing to JKO.  Notwithstanding, and making no admission or concession, for conservative disclosure purposes only, the Debtor is reflecting the market rental rate.

EXHIBIT 3

**Global Premier Regency Palms Oxnard LP**
**Schedule of Allowed Claims**

| Creditor | | Amount | |
|---|---|---|---|
| **Allowed Secured Claim of CSCDA (Class 1)** | | | |
| CSCDA | | 0 | [1] |
| | | | |
| **Allowed Claim (Class 2)** | | | |
| JKO Group LLC/Blackhawk Solar | | 0 | [2] |
| | | | |
| Allowed Secured Mechanics Claims (Class 3) | | 0 | |
| | | | |
| **Secured Claims of Government Units (Class 4)** | | | |
| CA Franchise Tax Board | $ | 1,945 | |
| | | | |
| **Non-Related Parties (Class 6.1)** | | | |
| Global Realty and Investment Corp. | $ | 22,747 | |
| Global Bancorp (Nina Hanna) | | 55,770 | |
| Studio Six5, Inc. | | 120,000 | |
| Gary White | | 7,500 | |
| JTC USA Holdings | | 13,200 | |
| **Total Non-Related Parties (Class 6.1)** | $ | 219,217 | |
| | | | |
| **Related Parties (Class 6.2)** | | | |
| Global Premier America, LLC | $ | 628,658 | |
| Global Premier America, LLC | | 1,589,600 | |
| National Affordable Communities, Inc | | 101,715 | |
| Christine Hanna | | 49,992 | |
| Christine Hanna | | 53,793 | |
| Magdy Hanna | | 17,209 | |
| Global Premier Development, Inc | | 229,308 | |
| Global Premier Development, Inc | | 2,661,639 | |
| **Total Related Parties (Class 6.2)** | $ | 5,331,914 | |

[1] CSCDA (aka PACE) will no longer hold a claim against the Debtor after the JKO
Conveyance because the Debtor will no longer own the real property and CSCDA's claim
runs with the real property only

[2] JKO's claim will be satisfied in full upon the consummation of the JKO Conveyance.

EXHIBIT 4

| Regency Palms Oxnard | |
| --- | --- |
| **Liquidation Analysis** | |
| | |
| ***Net Proceeds from Sale of Assets - See Exhibit 4.1*** | $106,022 |
| | |
| **Less Payments** | |
| Lienholder payments - *See Exhibit 4.2* | |
| California Statewide Communities Development Authority (PACE Bond) | 0 |
| JKO | 0 |
| | |
| Chapter 7 | |
| Trustee Fees - *See Exhibit 4.3* | (8,551) |
| Trustee's counsel fees | (100,000) |
| Chapter 11 Admin Claims | |
| *Administrative Expenses* [1] | (450,000) |
| Priority claims | |
| *Taxes* | (1,945) |
| | - |
| **Total Available for General Unsecured Creditors - *See Exhibit 4.4*** | **($454,474)** |
| | |
| General Unsecured Claims (Class 6.1) | (219,217) |
| General Unsecured Claims - Related / Non-Insider Parties (Class 6.2) | (5,331,914) |
| Defiency Claims | - |
| **Subtotal Unsecured Claims** | **($5,551,131)** |
| | |
| ***% Recovery to General Unsecured Claims*** | **0.00%** |

[1] This represents an estimate of fees for general insolvency counsel (for representating the debtor in Ch 11

**Exhibit 4**

| EXHIBIT 4.1 - PROCEEDS FROM SALE OF ASSETS | | | |
|---|---|---|---|
| *Cash* | | $ | 72 |
| *Sale of Assets* | | | |
| Deposits | [1] | | 5,950 |
| Real Property | [2] | | 0 |
| Equity Interest in Regency Palms | [3] | | 100,000 |
| | | | |
| **Proceeds from Sale of Assets** | | $ | 106,022 |

| | | | |
|---|---|---|---|
| [1] | Deposits | | 59,500 |
| | Est. Recovery Rate | x | 10.0% |
| | Net Realized Value | | 5,950 |

[2]  Real property transferred to JKO via deed in lieu

[3]  Assumes that the debtor causes its subsidiary,
Regency Palms, to liquidate its assets, which
consists mostly of beds, desks, tables, and other
furniture.  This is an estimtaed value

**Exhibit 4**

| | EXHIBIT 4.2 - SCHEDULE OF SECURED CLAIMS | | | | |
|---|---|---|---|---|---|
| Creditor | Class | Claim | Value of Collateral | Allowed Secured Claim | Allowed Unsecured Claim |
| California Statewide Communities Development Authority (PACE Bond) | 1 | 0 | 0 [1] | 0 | 0 |
| JKO | 2 | 0 | 0 [2] | 0 | 0 |
| Total | | $    - | $    - | $    - | $    - |

[1] PACE will no longer hold a claim against the Debtor after JKO Conveyance because the Debtor will no longer own the real property and PACE's claim runs with the real property only

[2] JKO's claim will be satisfied in full upon the consummation of the JKO Conveyance.

**Exhibit 4**

| EXHIBIT 4.3 - Calculation of Ch. 7 Trustee Fees | | | | | |
|---|---|---|---|---|---|
| Net Proceeds in Ch 7 | | | | $ | 106,022 |
| Cost of Disposition | | | | | - |
| Gross Proceeds | | | | | 106,022 |
| | | | | | |
| $ - | - | $ | 5,000 | 25% | 1,250 |
| $ 5,001 | - | $ | 50,000 | 10% | 4,500 |
| $ 50,001 | - | $ | 1,000,000 | 5% | 2,801 |
| $ 1,000,001 | - | | Unlimited | 3% | - |
| | | | | $ | 8,551 |

**Exhibit 4**

**EXHIBIT 4.4 - SCHEDULE OF ALLOWED UNSECURED CLAIMS**

| Creditor | | Amount |
|---|---|---|
| Accounts Payable - Third Party Claims | Class 6.1 | 219,217 |
| Accounts Payable - Related Party Claims | Class 6.2 | 5,331,914 |
| Deficiency Claims | | 0 |
| Subtotal | | 5,551,131 |
| TOTAL | | 5,551,131 |

**Exhibit 4**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 30, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian David Fittipaldi -** brian.fittipaldi@usdoj.gov
- **Garrick A Hollander -** ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
  **Matthew D Pham -** mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Debra Riley -** driley@allenmatkins.com, plewis@allenmatkins.com
- **Jeremy H Rothstein -** jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com
- **United States Trustee (ND)-** ustpregion16.nd.ecf@usdoj.gov

☐  Service information continued on attached page

**2.**  **SERVED BY UNITED STATES MAIL**:  On **July 30, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.**  **SERVED BY EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2025 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 30, 2025 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

| | | |
|---|---|---|
| Label Matrix For local noticing | Global Premier Regency Palms Oxnard LP | United States Trustee (LA) |
| 0973-9 | Christine Hanna | 915 Wilshire Blvd., #1850 |
| Case 9:25-bk-10329-RC | 2020 Main St. Suite 300 | Los AngelesCA90017 |
| Central District of California | Irvine, CA 92614 | |
| Santa Barbara | | |
| Tue Apr 15 10:15:47 PDT 2025 | | |

Northern Division
1415 State Street
Santa Barbara, CA 93101-2511

Andrew Hanna
Global Premier Development, Inc.
2010 Main Street, Suite 300
Irvine, CA 92614

California Dept of Tax and Fee Adm
Collection Support Bureau Bk Team
Mic: 74PO Box 942879
Sacramento, CA 94279-0001

California Dept. of Tax
and Fee Adm
Account Info Grp, MIC: 29
PO Box 942879
Sacramento, CA 94279

Christine Hanna
326 Quail Ridge
Irvine CA 92603

**20 LARGEST**
Door Systems
Attn: Mario Martinez
1150 La Brisas Place
Placentia, CA 92870-6643

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812-2952

**20 LARGEST**
Franchise Tax Board
PO Box 942857
Sacramento CA 94257-0531

Global Premier Regency Palms Oxnard,
LP
Attn: Christine Hanna
2020 Main Street Suite 300
Irvine CA 92614

**20 LARGEST**
Gary White
4206 Great Plains Dr NE
Salem OR 97305

**20 LARGEST**
Global Bancorp
Attn: Nina Hanna
8 Hilltop
Irvine CA 92603

Global Premier America LLC
c/o Christine Hanna (Reg Agent)
2020 Main Street Suite 300
Irvine, CA 92614

Global Premier America LLC
Attn: Christine Hanna
2020 Main Street Suite 300
Irvine, CA 92614

**20 LARGEST**
Global Realty and Investment Corp.
Attn: Nina Hanna
8 Hilltop
Irvine, CA 92603

Global Regency Oxnard
Senior Care Services, LLC
2020 Main St. Suite 300
Irvine, CA 92614

**SECURED**
JKO Group LLC
Attn: Jeremy Rothstein
G&B Law16000 Ventura Blvd
Suite 1000
Encino, CA 91436-2730

**20 LARGEST**
JTC USA Holdings
Attn: Dawn Shuster
75 State Street Suite 2801
Boston MA 02109

**SECURED**
Jones Hall, A Professional Law Corp
Attn: Corp Officer
475 Sansome Street, Suite 1700
San Francisco, CA 94111

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

**20 LARGEST**
Magdy Hanna
2200 Park Newport, #401
Newport Beach, CA 92660

National Affordable
Communities, Inc
Attn: Christine Hanna
2020 Main Street, Suite 300
Irvine, CA 92614

State of California
Employment Development Dpt
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

**20 LARGEST**
Studio Six5, Inc.
Attn: Corporate Officer
811 Barton Springs Rd Ste 800
Austin, TX 78704

U.S. Securities and Exchange Commis
Attn:  Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

**20 LARGEST**
County of Ventura
Treasurer Tax Collector
800 S. Victoria Ave
Ventura, CA 93009

**20 LARGEST**
Vortex Industries, Inc.
Attn: Corporate Officer
320 Irving Dr.
Oxnard, CA 93030

**SECURED**
WO PACE Funding, LLC  Series 2023
c/o White Oak Global Advisors, LLC
Attn: Corporate Officer
3 Embarcadero Center, Floor 5
San Francisco, CA 94111

**SECURED**
WO Pace Funding, LLC
Attn: California Statewide Comm.
Development Authority
~~1700 North Broadway, Suite 405~~
~~Walnut Creek, CA 94596~~
Rtd Mail 7/21/2025 – See Below New Address

**SECURED**
White Oak Global Advisors, LLC
Attn: Corporate Officer
3 Embarcadero Center, Suite 550
San Francisco, CA 94111

Internal Revenue Service
PO Box 7346
Philadelphia, PA9101-7346

**SECURED**
WO Pace Funding, LLC
Attn: California Statewide Comm.
Development Authority
3201 Danville Blvd, Ste 267
Alamo, CA 94507-1917

**NEF [36]**
Allen Matkins Leck Gamble
Mallory & Natsis LLP
Attn: Matthew D. Pham
865 S. Figueroa Street, Suite 2800
Los Angeles, California 90017-2543

**NEF RSN [35]**
Allen Matkins Leck Gamble
Mallory & Natsis LLP
Attn: Debra A. Riley
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903

**NEF RSN [35]**
CSCDA
c/o White Oak Global Advisors
Attn: Jeff Habicht
3 Embarcadero Center, Suite 550
San Francisco, CA 94111

# EXHIBIT 2

GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership,<br><br>　　　　Debtor and<br>　　　　Debtor-in-Possession. | Case No. 9:25-bk-10329-RC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S ~~FIRST~~ SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>DATE:　　TBD<br>TIME:　　TBD<br>PLACE:　Courtroom 201<br>　　　　　1415 State Street<br>　　　　　Santa Barbara, CA 93101 |

# **TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ............................................................................. 2

II.     DEFINITIONS AND RULES OF INTERPRETATION ............................. 2

III.    TREATMENT OF UNCLASSIFIED CLAIMS..................................... 2
        3.1     Administrative Claims ................................................... 2
                3.1.1   Payment............................................................ 3
                3.1.2   Administrative Claims Bar Date................................ 3
        3.2     Priority Tax Claims...................................................... 4

IV.     CLASSIFICATION OF CLAIMS ....................................................... 4
        4.1     General Overview ........................................................ 4
        4.2     Designation of Classes.................................................. 4

V.      TREATMENT OF CLAIMS AND INTERESTS ................................... 6
        5.1     Class 1: Allowed Secured Claim PACE ........................... 6
        5.2     Class 2: Allowed Claim of JKO..................................... 7
        5.3     Class 3: Allowed Secured Claim of Mechanics Lien Creditor ..................... 9
        5.4     Class 4: Any Allowed Secured Claim of Governmental Units.................... 11
        5.5     Class 5: Unsecured Non-Tax Priority Claim ...................... 12
        5.6     Class 6: Allowed General Unsecured Claims ..................... 12
        5.7     Class 7: Debtor's Interests ........................................... 13

VI.     MEANS FOR IMPLEMENTING THIS PLAN ...................................... 14
        6.1     Introduction................................................................ 14
        6.2     Funding of the Plan...................................................... 14
        6.3     Exit Financing............................................................. 14
        6.4     Powers of the Reorganized Debtor .................................. 14
        6.5     Authority to Act .......................................................... 15
        6.6     Representative of the Estate........................................... 15
        6.7     Causes of Action ......................................................... 15
        6.8     Post-Effective Date Professional Fees .............................. 16
        6.9     Bankruptcy Court Approval Relative to Post-Confirmation Matters ............ 16
        6.10    Reporting by Reorganized Debtors................................... 17
        6.11    Transfer of Estate Property to Reorganized Debtors ............... 17
        6.12    Disposition of Assets .................................................... 17
        6.13    Compromise of Controversies ........................................ 17
        6.14    Bankruptcy Court Approval Relative to Post-Confirmation Matters ............ 17
        6.15    Debtor's Right of Setoff................................................ 18
        6.16    Cash Payments ........................................................... 18

280495279291

# TABLE OF CONTENTS

## (Continued)

PAGE

VII.    DISTRIBUTIONS ................................................................................................    18
    7.1    Distribution Agent .............................................................................    18
        Distributions.......................................................................................    19
    7.2    Instruments and Securities .................................................................    19
        7.2.1    Rights of Persons Holding Instruments and Securities.....................    19
        7.2.2    Cancellation of Liens ......................................................    19
    7.3    De Minimis Distributions ...................................................................    19
    7.4    Delivery of Distributions ...................................................................    20
    7.5    Undeliverable Distributions ...............................................................    20
    7.6    Disposition of Unclaimed Property ...................................................    20

VIII.    OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS ................................    21
    8.1    Resolution Of Objections to Claims ..................................................    21
    8.2    Treatment of Disputed Claims............................................................    21
        8.2.1    No Distribution Pending Allowance ...................................    21
        8.2.2    Distribution After Allowance ..............................................    21
        8.2.3    Reserves for Disputed Claims.............................................    21

IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................    22
    9.1    Executory Contracts Being Assumed .................................................    22
    9.2    Cure Claims ........................................................................................    23
    9.3    Executory Contracts Being Rejected ..................................................    23
    9.4    Retention of Property Rights by Reorganized Debtor ........................    24
    9.5    Bar Date for Rejection Damages ........................................................    24
    9.6    Cure Claims Schedule.........................................................................    24

X.    DISCHARGE AND OTHER EFFECTS OF CONFIRMATION .............................    25
    10.1    Discharge ............................................................................................    25
    10.2    Injunction ...........................................................................................    26

XI.    LIMITATION OF LIABILITY AND RELEASES.................................................    27
    11.1    No Liability for Solicitation or Participation .....................................    27
    11.2    Limitation of Liability.........................................................................    27

280495279291

# TABLE OF CONTENTS

## (Continued)

| | PAGE |
|---|---|
| XII. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS | 27 |
| 12.1 Conditions Precedent to Plan Confirmation | 27 |
| 12.2 Condition Precedent to Plan Effectiveness | 27 |
| 12.3 Waiver of Conditions | 28 |
| XIII. RETENTION OF JURISDICTION | 28 |
| XIV. MODIFICATION OF THIS PLAN | 30 |
| 14.1 Nonconsensual Confirmation | 31 |
| XV. MISCELLANEOUS | 31 |
| 15.1 Payment of Statutory Fees | 31 |
| 15.2 Payment Dates | 31 |
| 15.3 Other Documents and Actions | 31 |
| 15.4 Notices | 31 |
| 15.5 Governing Law | 32 |
| 15.6 Binding Effect | 32 |
| 15.7 Successors and Assigns | 32 |
| 15.8 Severability of Plan Provisions | 32 |
| 15.9 No Waiver | 33 |
| 15.10 Inconsistencies | 33 |
| 15.11 Exemption from Certain Transfer Taxes and Recording Fees | 33 |
| 15.12 Post-Confirmation Status Report | 33 |
| 15.13 Post-Confirmation Conversion/Dismissal | 33 |
| 15.14 Changes in Rates Subject to Regulatory Commission Approval | 34 |

**APPENDIX**

| | PAGE |
|---|---|
| A. Definitions | 35 |
| B. Rules of Construction | 47 |
| C. Schedules | 48 |
| Schedule 9.1 | 49 |
| Schedule 9.3 | 50 |

280495279291

# TABLE OF AUTHORITIES

## STATUTES

11 U.S.C. § 101(27) ........................................................................................................ 45

11 U.S.C. § 102 .............................................................................................................. 50

11 U.S.C. § 327 .............................................................................................................. 47

11 U.S.C. § 365(b) ............................................................................................................ 3

11 U.S.C. § 503(b) .......................................................................................................... 36

11 U.S.C. § 506(a) .................................................................................................... 38, 49

11 U.S.C. § 506(b) .......................................................................................................... 48

11 U.S.C. § 506(d) .......................................................................................................... 43

11 U.S.C. § 507(a)(1) ...................................................................................................... 36

11 U.S.C. § 507(a)(2) ........................................................................................................ 2

11 U.S.C. § 507(a)(8) ........................................................................................................ 4

11 U.S.C. § 507(a) .......................................................................................................... 38

11 U.S.C. § 507(a)(8) ................................................................................................. 38, 47

11 U.S.C. § 510(c)(2) ...................................................................................................... 43

11 U.S.C. § 521(1) .......................................................................................................... 48

11 U.S.C. § 553 .............................................................................................................. 38

11 U.S.C. § 510 .............................................................................................................. 39

11 U.S.C. § 542 .............................................................................................................. 39

11 U.S.C. § 543 .............................................................................................................. 39

11 U.S.C. § 544 .............................................................................................................. 39

11 U.S.C. § 545 .............................................................................................................. 39

11 U.S.C. § 547 .............................................................................................................. 39

11 U.S.C. § 548 .............................................................................................................. 39

11 U.S.C. § 549 .............................................................................................................. 39

11 U.S.C. § 550 .............................................................................................................. 39

11 U.S.C. § 1123(a)(1) ...................................................................................................... 2

11 U.S.C. § 1123(b)(3)(B) ............................................................................................... 15

11 U.S.C. § 1129(a)(8) .................................................................................................... 31

11 U.S.C. § 1129(a)(12) .................................................................................................. 32

11 U.S.C. § 1129(b) ........................................................................................................ 31

28 U.S.C. § 1930 ............................................................................................................ 36

28 U.S.C. § 1930(a)(6) .............................................................................................. 31, 32

Internal Revenue Code of 1986 ...................................................................................... 46

## RULES

Rules 1007(a)(3) ............................................................................................................. 46

Rule 3001 ....................................................................................................................... 45

280495279291

# I.

## INTRODUCTION

The document that you are reading is the Debtor's Plan, which provides for payments to Creditors through a reorganization, to be funded with a new equity contribution and such additional financing as may be necessary, and a debt and equity recapitalization, resulting in the preservation of the Debtor's ~~Property and~~ business.  General Unsecured Creditor~~s~~ will receive their Pro Rata share of the Plan Fund~~s~~ based on each of their respective Allowed Claims.  The Projections attached as **Exhibit 1** to the Disclosure Statement accompanying this Plan represent the Debtor's best estimate of distributions under the proposed reorganization at this time.  Sent to you in the same envelope as this Plan is the Debtor's Disclosure Statement, which you should read in conjunction with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if any.**

# II.

## DEFINITIONS AND RULES OF INTERPRETATION

See Appendix appended hereto.

# III.

## TREATMENT OF UNCLASSIFIED CLAIMS

As required by the Bankruptcy Code, this Plan places Claims into various Classes according to their right to priority.  However, in accordance with the provisions of 11 U.S.C. § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are deemed "unclassified."  These Claims are not considered impaired, and they do not vote on this Plan, because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed these Claims in a Class.  The treatment of these unclassified Claims is as provided below.

**3.1**    **Administrative Claims**.  Administrative Claims are Claims for the expenses of administering the Debtor's Case that are allowed under Bankruptcy Code 11 U.S.C. §  507(a)(2), as well as Cure Claims arising from the assumption of executory contracts pursuant to 11 U.S.C. § 365(b), and Claims for goods or services received by the Debtor in the ordinary course of

-2-

business within 20 days of the Petition Date.  The Bankruptcy Code requires that all Administrative Claims be paid on the effective date of a Chapter 11 plan, unless a particular creditor agrees to a different treatment of its claim.  The treatment of Administrative Claims is as described below.

       3.1.1   <u>Payment</u>.  Except to the extent that the holder of an Allowed Administrative Claim agrees to a different treatment of its Administrative Claim, and subject to the General  Administrative Claims Bar Date, each Allowed Administrative Claim shall be paid in full, in Cash, on the latest of (i) the Effective Date, (ii) the tenth (10th) Business Day after the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim becomes due according to its terms.  If the Allowed Administrative Claims are not paid in full on the Effective Date and the Administrative Creditors agree to defer the payment of any balance that is owing, the Debtor shall grant in favor of the Administrative Creditors a security interest against all Assets of the Reorganized Debtor, including the Causes of Action.  All Liens granted to the Administrative Creditors shall remain in full force and effect until the Allowed Administrative Claims are paid in full, plus 5% interest per annum.

       3.1.2   <u>Administrative Claims Bar Date</u>.  Any holder of an Administrative Claim, except for a Professional employed at the expense of an Estate, that does not file and properly serve a request for payment of its Administrative Claim by the General Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, their Estates, or any of their property. Notwithstanding anything to the contrary contained in the foregoing, (i) any Governmental Unit may assert an Administrative Tax Claim or other post-petition Tax Claim pursuant to the statutory requirements applicable thereto without regard to the General Administrative Claims Bar Date; and (ii) holders of accrued post-petition *ad valorem* Tax Claims against property owned by the Reorganized Debtor shall retain any Liens that they may have pursuant to applicable law on account of such Tax Claims, and holders of such Tax Claims

1    shall be paid the amount of their Tax Claims in the ordinary course of the Reorganized

2    Debtor's business without the requirement that a Proof of Claim or request for payment of

3    such Tax Claim be filed with the Bankruptcy Court.

4    **3.2    Priority Tax Claims**.  Tax Claims are certain unsecured income, employment and

5    other taxes described by Code 11 U.S.C. §  507(a)(8).  The Code requires that each holder of such

6    a 11 U.S.C. §  507(a)(8) priority tax claim receive the present value of such Claim in deferred cash

7    payments, over a period not exceeding five (5) years from the Petition Date and that such

8    treatment not be less favorable than the treatment accorded to nonpriority unsecured creditors.

9    At the election of the Debtor, the Holder of each Allowed Tax Claim shall be entitled to

10    receive, on account of such Claim, (i) equal cash payments on the last Business Day of each three-

11    month period following the Effective Date, during a period not to exceed five (5) years after

12    March 11, 2025, totaling the principal amount of such Claim plus simple interest on any unpaid

13    balance from the Effective Date, calculated at the interest rate available on ninety (90) day United

14    States Treasuries on the Effective Date, (ii) such other treatment agreed to by the Holder of the

15    Allowed Tax Claim and the Debtor, provided such treatment is on more favorable terms to the

16    Debtor than the treatment set forth in clause (i) hereof, or (iii) payment of the full Allowed Tax

17    Claim in Cash on the Effective Date.

18    **IV.**

19    **CLASSIFICATION OF CLAIMS**

20    **4.1    General Overview**.  As required by the Bankruptcy Code, this Plan places Claims

21    into various Classes according to their right to priority and other relative rights.  The table in 11

22    U.S.C. §  5.2 hereof lists each Class of Claims established under this Plan and states whether each

23    Class is impaired or is unimpaired by this Plan.  A Class is "unimpaired" if this Plan leaves

24    unaltered the legal, equitable and contractual rights to which the holders of Claims in the Class are

25    entitled, with certain exceptions specified in the Bankruptcy Code.  Article VI of this Plan sets

26    forth the treatment that each Class will receive under this Plan.

27    **4.2    Designation of Classes**.  This Plan provides for the establishment of the following

28    Classes of Claims:

-4-

| Class | Claimant | Collateral | Impaired |
|-------|----------|------------|----------|
| Class 1 | A~~llny~~ ~~Allowed Secured~~ Claim~~s~~ of PACE | N/A~~Real Property~~ | No~~Yes~~ |
| Class 2 | A~~llny~~ ~~Allowed Secured~~ Claim~~s~~ of JKO | N/A~~Real Property~~ | No~~Yes~~ |
| Class 3 | Any Allowed Secured Claim of a Mechanics' Lien Claimant | N/A~~Real Property~~ | No |
| Class 4 | Allowed Secured Claims of Governmental Units | N/A | No |
| Class 5 | Allowed Unsecured Priority Claims | N/A | No |
| Class 6.1 | Allowed General Unsecured Claims | N/A | Yes |
| Class 6.2 | Allowed General Unsecured Claims (Related Parties) | N/A | Yes |
| Class 7 | Allowed Interests | N/A | Yes |

**V.**

**TREATMENT OF CLAIMS AND INTERESTS**

All Claims and rights of the members of Classes and Interests shall be governed by the terms of this Plan only, and all prior agreements shall be null and void, unless otherwise preserved herein.  The Plan's treatment of Allowed Claims and Interests, as described herein, shall be in full satisfaction of all Allowed Claims and Interests:

**5.1** **Class 1:  Al**~~lowed Secured~~ **Claim**~~s~~ **of PACE**. Class 1 does not have any Allowed Claim against the Debtor, its Estate, of any Assets of the Estate based on the Debtor being divested of its Property as a result of the JKO Conveyance, as the PACE claim and Lien only runs only with the Property, and does not extend to the Debtor or any of its Assets.  ~~consists of any Allowed Secured Claim of PACE.~~  Consequently, Class 1 is un~~impaired~~ by this Plan.  The following treatment shall be in full satisfaction of the Allowed Claim of the member of this Class:

5.1.1   Disa~~All~~owance of ~~Secured~~ Claim.  The member of Class 1 has no Allowed Claim nor valid Lien against the Debtor, the Debtor's Estate, or any of its Assets.  ~~shall be allowed a Secured Claim, as of the Petition Date, in the amount of $12,800,000.~~

5.1.2   Treatment of Disa~~All~~owed ~~Secured~~ Claim.  The member of this Class shall receive nothing from the Debtor.  ~~The legal, equitable and contractual rights to which PACE is entitled on account of any Allowed Secured Claim of PACE shall not be altered~~

or modified in any manner.  Without limiting the generality of the foregoing, PACE shall retain, without alteration or modification hereunder, its senior Lien on the Property, and shall have the right to exercise any and all rights and remedies that it may have under applicable law with respect to any such collateral of the Debtor as PACE deems appropriate in the exercise of its sole and absolute discretion.

5.1.3    Prepayment.  Any Allowed Secured Claim in Class 1 may be prepaid at any time without penalty or other charge.  Notwithstanding the foregoing, in the event any collateralized Property is sold by the Reorganized Debtor, the proceeds generated from the disposition of such sale, net of all expenses, shall be paid to the holder of the Allowed Secured Claim whose collateral was sold, up to the amount of the Allowed Secured Claim, reflecting all payments made to such Creditor under the terms of this Plan.

5.1.4    Release of Lien.  Upon full satisfaction of the Creditor's Allowed Claim in Class 1 as provided herein, the Creditor's Lien, if any, on its collateral shall be released and the Reorganized Debtor shall retain title to such collateral free and clear of the Creditor's Lien.  If the Creditor is paid in full pursuant to the terms of this Plan and does not release its lien within five (5) days of the Reorganized Debtor's request to do so, then this Plan hereby grants to the Reorganized Debtor a power of attorney in fact to execute on behalf of such Creditor any and all documents necessary to effectuate the release of any and all liens held or otherwise asserted by Creditor.

5.1.5    Event of Default.  Failure to make a payment due to this Creditor under this Plan shall constitute an Event of Default as against such Creditor.

5.1.6    Orderly Liquidation of Property.  If the Debtor is unable to timely cure an Event of Default, the Debtor shall commence and supervise an Orderly Liquidation of its Property.  The Debtor shall identify and interview prospective real estate brokerage and/or investment banking firms, from which it will select and retain one or more for the marketing and sale of the Debtor's Property. Thereafter, the Debtor will assist the retained real estate firm in its efforts to market and sell the property, including, e.g., providing property tours and evaluating purchase offers.  The Orderly Liquidation shall be concluded

1   ~~within twelve months from the later of: (i) the date that the Debtor fails to timely cure the~~

2   ~~Event of Default; or (ii) the date of the Uncured Default Determination.~~

3   ~~5.1.7   Notwithstanding the foregoing, Debtor may, at any time, seek to obtain~~

4   ~~financing that will pay the member of this Class its Allowed Secured Claim in full. If~~

5   ~~sufficient financing is raised and paid to the member of this Class in full satisfaction of its~~

6   ~~Allowed Secured Claim, then the Debtor may continue operating its business and~~

7   ~~managing its Assets pursuant to the terms of this Plan.~~

8   ~~5.1.8   Insurance.  The Debtor shall maintain insurance coverage for the property~~

9   ~~securing the Claim for the Creditor.~~

10  ~~5.1.9   Inspection of Property.  In the event of an Event of Default, the Creditor~~

11  ~~shall be entitled to inspect the collateral securing its Allowed Secured Claim upon~~

12  ~~reasonable notice made in writing not less than five Business Days in advance.~~

13  **5.2     Class 2:  All~~owed~~ Claims of JKO**. Class 2 consists of ~~any Allowed~~ all Claim~~s~~ of

14  JKO.  Class 2 is unimpaired by this Plan because JKO's Claims have been satisfied in full by

15  virtue of the JKO Conveyance.  For clarification, T~~t~~he following treatment shall be in full

16  satisfaction of the ~~Allowed~~ all Claim~~s~~ of the member of this Class:

17  5.2.1   Dis~~A~~allowance of ~~Secured~~ Claim.  The member of Class 2 does not have

18  any Allowed Claim or Lien against the Debtor, its Estate, or any Assets of the Estate

19  because all Claims previously held by the member of this Class against the Debtor were

20  satisfied in full upon the JKO Conveyance of the Property securing JKO's Claim.~~shall be~~

21  ~~allowed a Secured Claim in an amount equal to the value of such Creditor's Claim and~~

22  ~~interest in the Estate's interest in such property, which shall be based on Fair Market Value~~

23  ~~of the Property (or such other value as agreed to between the Debtor and the member of~~

24  ~~Class 2), securing such Creditor's Claim in Class 2.  If the member of this Class objects to~~

25  ~~the Debtor's asserted value of the property securing the Creditor's Claim or otherwise~~

26  ~~asserts in a contested matter a lower value of the property securing its Claim (either, an~~

27  ~~"Objection Value"), then, the Debtor may elect, in its sole discretion, to fix the amount of~~

28

280495279291.3

1    such objecting Creditor's Allowed Secured Claim based on the lower of the Objection

2    Value(s).

3        5.2.2    Treatment of ~~Allowed~~ Claim.  JKO will receive nothing from the Debtor as

4    JKO has no Allowed Claim against the Debtor, its Estate nor a Lien against any Assets of

5    the Estate.  ~~on account of its Allowed Claim cash payments totaling the allowed amount of~~

6    ~~its Allowed Claim, equal to the Fair Market Value of such Creditor's interest in the~~

7    ~~Estate's interest in the Property, as may be modified pursuant to 11 U.S.C. § 5.2.1.~~

8    ~~Notwithstanding the foregoing, and only in the event JKO does not reject or object to the~~

9    ~~Plan, treatment provided herein, or any other relief prayed for by the Debtor in this case,~~

10    ~~JKO will receive the following payments:  (a) one lump sum payment of five million~~

11    ~~dollars ($5,000,000) on the First Payment Date; and (b) monthly payments of $50,000,~~

12    ~~commencing on the first Business Day of the first full month following the First Payment~~

13    ~~Date, and continuing thereafter for a period of five years.~~

14    ~~5.2.3    Prepayment.  Any Allowed Secured Claim in Class 2 may be prepaid at any~~

15    ~~time without penalty or other charge.~~

16    ~~5.2.4    Retained Lien.  The Creditor's Allowed Secured Claims of Class 2 shall~~

17    ~~continue to be secured by the Creditor's existing Lien on its collateral.~~

18    ~~5.2.5    Release of Lien.  Upon full satisfaction of the Creditor's Allowed Claim in~~

19    ~~Class 2 as provided herein, the Creditor's Lien, if any, on its collateral shall be released~~

20    ~~and the Reorganized Debtor shall retain title to such collateral free and clear of the~~

21    ~~Creditor's Lien.  If the Creditor is paid in full pursuant to the terms of this Plan and does~~

22    ~~not release its lien within five (5) days of the Reorganized Debtor's request to do so, then~~

23    ~~this Plan hereby grants to the Reorganized Debtor a power of attorney in fact to execute on~~

24    ~~behalf of such Creditor any and all documents necessary to effectuate the release of any~~

25    ~~and all liens held or otherwise asserted by Creditor.~~

26    ~~5.2.6    Event of Default.  Failure to make a payment due to this Creditor under this~~

27    ~~Plan shall constitute an Event of Default as against such Creditor.  In the event JKO~~

28    ~~contends an Event of Default has occurred, JKO must provide Default Notice to the Notice~~

1   Parties.  If the Debtor cures such alleged default within the Grace Period, JKO shall

2   provide to the Notice Parties written acknowledgement of the Debtor's cure.  If, however,

3   the Debtor fails to cure the alleged default within the Grace Period, then JKO must seek

4   from the Bankruptcy Court for a determination of an uncured Event of Default.  The

5   Debtor and any other Notice Party shall be entitled to oppose such relief.  If opposition to

6   relief is filed, and the Court finds that the Debtor did not commit an Event of Default, was

7   excused from committing an Event of Default, or timely cured an Event of Default, the

8   Debtor shall pay JKO pursuant to the terms of this Plan.  If, however, neither the Debtor

9   nor any Notice Parties timely oppose such relief sought by JKO, then the Debtor must

10  proceed with an Orderly Liquidation as described below.

11          5.2.7    Orderly Liquidation of Property.  If the Debtor is unable to timely cure an

12  Event of Default, the Debtor shall commence and supervise an Orderly Liquidation of the

13  Property.  The Debtor shall identify and interview prospective real estate brokerage and/or

14  investment banking firms, from which it will select and retain one or more for the

15  marketing and sale of the Debtor's Property. Thereafter, the Debtor will assist the retained

16  real estate firm in its efforts to market and sell the property, including, e.g., providing

17  property tours and evaluating purchase offers.  The Orderly Liquidation shall be concluded

18  within twelve months from the later of: (i) the date that the Debtor fails to timely cure the

19  Event of Default; or (ii) the date of the Uncured Default Determination.

20          5.2.8    Notwithstanding the foregoing, Debtor may, at any time, seek to obtain

21  financing that will pay the member of this Class its Allowed Secured Claim in full. If

22  sufficient financing is raised and paid to the member of this Class in full satisfaction of its

23  Allowed Secured Claim, then the Debtor may continue operating its business and

24  managing its Assets pursuant to the terms of this Plan.

25          5.2.9    Insurance.  The Debtor shall maintain insurance coverage for the property

26  securing the Claim for the Creditor.

27

28

5.2.10  Inspection of Property.  In the event of an Event of Default, the Creditor shall be entitled to inspect the collateral securing its Allowed Secured Claim upon reasonable notice made in writing not less than five Business Days in advance.

**5.3**  **Class 3:  Allowed Secured Claim of Mechanics Lien Creditor**.  Class 3 consists of allny Allowed Secured Claim held by a Mechanics Lien Creditor.  Class 3 is unimpaired by this Plan.  The following treatment shall be in full satisfaction of the Allowed Claim of the member of this Class:

5.3.1  Allowance of Secured Claim.  The member of Class 3 does not have any Allowed Claim or Lien against the Debtor, its Estate, or any Assets of the Estate because any Claims previously held by the member this Class against the Debtor were wiped out upon the JKO Conveyance of the Property securing JKO's Claim to JKO, which transfer occurred by virtue of JKO's recording of the deed in lieu on the Property.shall be allowed a Secured Claim for the amount of its non-contingent liquidated Claim to the extent of the value of such Creditor's Claim against the Estate's interest in such property, which shall be based on the Fair Market Value of such Creditor's interest in the Property (or such other value as agreed to between the Debtor and any member of Class 3), securing such Creditor's Claim in this Class.  If the member of this Class object to the Debtor's asserted value of the property securing the Creditor's Claim or otherwise asserts a value of the property lower than that which is asserted by the Debtor, then, the Debtor may elect, in its sole discretion, to fix the amount of such objecting Creditor's Allowed Secured Claim based on the lower of the objection value(s).

5.3.2  Treatment of Allowed Secured Claim(s).  Except to the extent that a member of this Class agrees to a less favorable treatment, eEach member of this Class shall will receive nothing from the Debtor as no member of this Class has an Allowed Claim against the Debtor, its Estate nor a Lien against any Assets of the Estate.  receive a cash payment totaling the amount of its Allowed Secured Claim, equal to the value, as of the Effective Date, of such Creditor's interest in the Estate's interest in such property, as may be modified pursuant to 11 U.S.C. § 5.3.2.  In particular, except to the extent that any

280495279291.3

member of this Class agrees to a less favorable treatment, the Debtor shall pay the member

of this Class the full amount of the Allowed Secured Claim on the later of: (i) the Effective

Date, or (ii) the tenth (10th) Business Day after such Secured Claim becomes an Allowed

Secured Claim.

5.3.3    Retained Lien and Prepayment.    Any Allowed Secured Claim in Class 3

may be prepaid at any time without penalty or other charge.  The Creditor's Allowed

Secured Claims of Class 3 shall continue to be secured by the respective Creditor's

existing Lien on its collateral.  Upon full satisfaction of each respective Creditor's Allowed

Secured Claim in Class 3, the Creditor's Lien on its collateral shall be released and

expunged and the Reorganized Debtor shall retain title to such collateral free and clear of

the Creditor's Lien.  If the Creditor is paid in full pursuant to the terms of this Plan and

does not release its lien within five (5) days of the Reorganized Debtor's request to do so,

then this Plan hereby grants to the Reorganized Debtor a power of attorney in fact to

execute on behalf of such Creditor any and all documents necessary to effectuate the

release of any and all liens held or otherwise asserted by Creditor.  Any Allowed

Deficiency Claim of the Creditor shall be treated as an Allowed General Unsecured Claim

in the amount equal to the difference between Creditor's Allowed Claim and the value of

the assets securing Creditor's Allowed Claim.

5.3.4    Event of Default.  Failure to make a payment due under this Plan shall

constitute an Event of Default.  In the event any member of this Class contends an Event of

Default has occurred, such Creditor must provide Default Notice to the Notice Parties.  The

Debtor shall have a period of thirty (30) days after receipt of written notice of an asserted

Event of Default relating to an alleged failure by the Debtor to pay a payment required

under this Plan within which to cure such Event of Default.  If the Debtor cures such

alleged default within the Grace Period, such Creditor shall provide to the Notice Parties

written acknowledgement of the Debtor's cure.  If, however, the Debtor fails to cure the

alleged default within the Grace Period, then the Creditor must seek from the Bankruptcy

Court for a determination of an uncured Event of Default.  The Debtor and any other

280495279291.3

1    ~~Notice Party shall be entitled to oppose such relief.  If opposition to relief is filed, and the~~

2    ~~Court finds that the Debtor did not commit an Event of Default, was excused from~~

3    ~~committing an Event of Default, or timely cured an Event of Default, the Debtor shall~~

4    ~~continue paying such Creditor pursuant to the terms of this Plan.  If, however, neither the~~

5    ~~Debtor nor any Notice Parties timely oppose such relief sought by the Creditor and the~~

6    ~~Court finds that the Debtor committed an Event of Default that was not excused or timely~~

7    ~~cured, then then the Creditor may seek to enforce its rights against the Reorganized Debtor~~

8    ~~in accordance with applicable state law remedies.~~

9        **5.4    Class 4:  Any Allowed Secured Claim of Governmental Units**.  Class 4 consists

10   of any Allowed Secured Claim of governmental units.  Class 4 is not impaired by this Plan.  The

11   following treatment shall be in full satisfaction of the Allowed Claims of members of this Class:

12       5.4.1    Allowance of Secured Claim(s).  The members of Class 4 shall be allowed a

13   Secured Claim to the extent of the value of such Creditor's Claim and interest in the

14   Estate's an interest in such property, which shall be based on ~~Ff~~air ~~mM~~arket ~~vV~~alue of the

15   property (or such other value as agreed to between the Debtor and the member of Class 4),

16   securing such Creditor's Claim in Class 4.  Based on the value of the Collateral, the

17   Creditor in Class 4 shall have an Allowed Secured Claim in the full amount of their

18   Allowed Secured Claim, plus all applicable costs, fees, charges, and interest, if any.

19       5.4.2    Treatment of Allowed Secured Claim(s).  Except to the extent that a

20   member of this Class agrees to a less favorable treatment, each member of this Class shall

21   receive 100% of their Allowed Claim.  Members of this Class shall retain their Lien until

22   their Allowed Secured Claim against the respective Estate is Paid in Full.  A failure by the

23   Reorganized Debtor to make a payment when due to a holder of an Allowed Secured Tax

24   Claim of a Governmental Unit pursuant to the terms of the Plan shall constitute an Event

25   of Default.  If the Reorganized Debtor fails to cure such Event of Default within thirty (30)

26   days after receipt of written notice of default, then such taxing authority may seek to assert

27   an uncured Event of Default to seek to enforce the balance due on its claim, plus interest

28

accrued, if any, under state law, against the Reorganized Debtor in accordance with applicable state law remedies.

**5.5**    **Class 5:  Unsecured Non-Tax Priority Claim**. Class 5 consists of any Allowed Non-Tax Priority Claim.  Class 5 is not impaired by this Plan.

Except to the extent that a holder of an Allowed Unsecured Non-Tax Priority Claim agrees to a less favorable treatment of its Allowed Unsecured Non-Tax Priority Claim, each holder of an Allowed Unsecured Non-Tax Priority Claim shall receive, in full satisfaction, exchange and release of its Allowed Unsecured Non-Tax Priority Claim, Cash in the full amount of the Allowed Unsecured Non-Tax Priority Claim on the later of (i) the Effective Date, and (ii) the tenth (10th) Business Day after such Non-Tax Priority Claim becomes an Allowed Unsecured Priority Non-Tax Claim.

**5.6**    **Classes 6.1-6.2:  Allowed General Unsecured Claims.**  Class 6.1 consists of any Allowed General Unsecured Claim other than those held by a Related Party, and Class 6.2 consists of any Allowed General Unsecured Claim held by a Related Party.  Classes 6.1 and 6.2 are impaired by this Plan.  The following treatment shall be in full satisfaction of the Allowed Claims of members of these Classes.

5.6.1    Treatment of Allowed Class 6.1 General Unsecured Claim.   Except to the extent that a member of this Class agrees to a less favorable treatment, each member of this Class shall receive its Pro Rata share of the Class 6.1 Plan Fund based on each member's Allowed Class 6.1 General Unsecured Claim relative to all Allowed Class 6.1 General Unsecured Claims and the Allowed Claim of the member of Class 6.1.  Payment shall be made in five installments, commencing within the later of (i) the first Business Day of the first full month following the Effective Date, or (ii) the tenth (10th) Business Day after such Claim becomes an Allowed Claim, and continuing every other month thereafter.

5.6.2    Treatment of Allowed Class 6.2 General Unsecured Claim.   Except to the extent that a member of this Class agrees to a less favorable treatment, each member of this Class shall receive its Pro Rata share of twenty percent (20%) of the limited partnership equity interests in the Reorganized Debtor the Class 6.2 Plan Fund based on each

280495279291.3

member's Allowed Class 6.2 General Unsecured Claim relative to all Allowed Class 6.2

General Unsecured Claims and the Allowed Claim of the member of Class 6.2.  ~~Payment~~

~~shall be made within later of (i) the first Business Day of the first full month following the~~

~~Effective Date, or (ii) the tenth (10th) Business Day after such Claim becomes an Allowed~~

~~Claim.~~

~~5.6.3    Event of Default.  Failure to timely make a payment due under this Plan~~

~~shall constitute an Event of Default.  The Reorganized Debtor shall have a period of thirty~~

~~(30) days after receiving written notice of an alleged Event of Default to make a payment~~

~~required under this Plan within which to cure such Event of Default.  If the Reorganized~~

~~Debtor is unable to cure such Event of Default, the Creditor may seek to enforce its rights~~

~~against the Reorganized Debtor in accordance with applicable state law remedies.~~

**5.7**        **Class 7:  Debtor's Interests**.

5.7.1    <u>Allowance of Interests</u>.  Class 7 is comprised of the Interests in the Debtor.

5.7.2    <u>Treatment of Allowed Interests</u>.  The holders of Allowed Interests that are

limited partners of the Debtor shall retain their Interests in the Debtor, subject to a

modification of the rights and powers of the limited and general partners, as reflected in the

revised red-lined Limited Partnership Agreement attached hereto as **Exhibit 1** and which

modifications are incorporated herein by this reference, as well as a dilution in equity

resulting from the twenty percent (20%) equity interest granted to Class 6.2 described

herein. ~~The interests of~~ GPA #3 shall have authority, in its sole discretion, to ~~be~~ transfer~~red~~

its equity interests to a new entity that may ~~to~~ be formed, ~~which will be owned and~~

~~controlled by Christine Hanna,~~ which new entity ~~will~~ would hold all Interests currently

held by GPA #3.  Notwithstanding the foregoing and any term contained in the Partnership

Agreement, all Interests are subject to dilution in the event additional non-EB-5 equity

financing is raised prior to and/or after confirmation of the Plan, as Christine Hanna may

determine, in her sole discretion, is necessary to effectuate the terms of this Plan and a

successful reorganization.  The extent of such dilution shall be based on the amount of

equity financing raised and equity demanded by the sources of such additional equity

-14-

financing, which shall be determined and agreed to by Christine Hanna, in her sole discretion.

## VI.

## MEANS FOR IMPLEMENTING THIS PLAN

**6.1      Introduction**.  This article is intended to explain the means by which the Debtor intends to effectuate the reorganization provided for under this Plan, and how the Debtor intends to fund the obligations to Creditors undertaken in this Plan.  This article provides information regarding prospective corporate governance of the Debtor, funding sources for Plan obligations, and other material issues bearing upon the performance of this Plan.

**6.2      Funding of the Plan.**  The Reorganized Debtor shall make all payments due under the Plan to holders of Allowed Claims and Allowed Interests from one or more of the following: (a) distributions from Regency Palms; (b) ~~Exit Financing of not less than eight million dollars ($8,000,000), which shall include new equity financing and~~ such ~~additional~~ debt and/or equity financing that may be necessary to effectuate the Plan; (c) any proceeds from the prosecution and/or settlement of Causes of Action, including Avoidance Actions; and/or (d) proceeds from the sale or financing of the Reorganized Debtor's business ~~or real property~~.

~~**6.3      Exit Financing.**  The Reorganized Debtor shall be bound by, and thus, shall comply with all obligations arising from any loan and/or other agreements entered into with the Exit Financier and approved by the Court as part of this Plan.~~

**6.4      Powers of the Reorganized Debtor.**  The Debtor, as the Reorganized Debtor, shall continue to exist and to operate after the Effective Date of this Plan.  The Reorganized Debtor shall have all of the powers and rights accorded to it under the laws of the state of California, and, except as set forth in this Plan expressly to the contrary, shall continue to have all powers and rights accorded to them under any partnership agreement, operating agreement, Articles of Organization, Bylaws and/or other governance documents.  Once this Case is closed, subject to the terms described herein, the Reorganized Debtor shall have exclusive control over all Assets not otherwise sold or transferred.  Except only as provided expressly to the contrary in this Plan, after the Effective Date, the Reorganized Debtor may operate its business and administer and dispose of

1    assets free and clear of any limitations and restrictions that may be imposed by the Bankruptcy

2    Code or Bankruptcy Rules, and without any need for any approval of the Bankruptcy Court or any

3    Creditor.

4        **6.5**    **Authority to Act**.  On the Effective Date, all actions contemplated by this Plan

5    shall be deemed authorized and approved in all respects (subject to the provisions of this Plan) by

6    virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and

7    applicable state law and without any requirement of further action by the Debtor or the

8    Reorganized Debtor.  On the Effective Date, the Reorganized Debtor is authorized and directed to

9    implement the provisions by this Plan and any other agreements, documents and instruments

10    contemplated by this Plan. This authority includes the granting of a power of attorney in fact to

11    execute on behalf of any party who has recorded a lien against the Debtor's ~~Property~~Assets, but

12    who is no longer entitled to such lien by virtue of this Plan or applicable law.

13        **6.6**    **Representative of the Estate**.  The Reorganized Debtor shall be, and hereby is,

14    appointed as the representative of the Estate pursuant to 11 U.S.C. § s 1123(b)(3)(B) of the

15    Bankruptcy Code for the purpose of performing the duties and exercising the rights and remedies

16    granted to the Reorganized Debtor hereunder.  The Reorganized Debtor shall be vested

17    exclusively with the rights, authorities and powers to carry out and to implement this Plan,

18    including, without limitation, by managing and administering its business and using income

19    generated by its business, to make Distributions to Creditors in accordance with the terms and

20    conditions of this Plan.

21        **6.7**    **Causes of Action**~~.~~

22        The Debtor shall have the exclusive right to file, litigate, prosecute, appeal, enforce, or

23    collect Causes of Action.  Moreover, the Debtor's aforementioned rights are deemed

24    automatically transferred on the Effective Date from the Debtor to the Reorganized Debtor.

25    Accordingly, from and after the Effective Date, the Reorganized Debtor shall have the sole and

26    exclusive right to file, litigate, prosecute, appeal, enforce, or collect all proceeds realized from

27    Causes of Action.

28

1    **THE DEBTOR HAS NOT COMPLETED AN INVESTIGATION REGARDING**

2    **THE EXISTENCE OF CAUSES OF ACTION.  THE INVESTIGATION IN THIS**

3    **REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY**

4    **ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY**

5    **PARTICULAR CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET**

6    **FORTH IN THIS PLAN, A CAUSE OF ACTION MAY BE FILED AGAINST ANY**

7    **CREDITOR OR OTHER ENTITY AS THE REORGANIZED DEBTOR MAY**

8    **DETERMINE, IN THE EXERCISE OF ITS SOLE DISCRETION.**

9    **6.8    Post-Effective Date Professional Fees.**

10    6.9.1    Reorganized Debtor's Employment of Professionals.  The Reorganized

11    Debtor may employ, without any need to give notice to Creditors or to other parties-in-

12    interest or to obtain any approval of the Bankruptcy Court, professionals to assist the

13    Reorganized Debtor to perform its duties under this Plan, as the Reorganized Debtor deem

14    appropriate in the exercise of their sole and absolute discretion, and any fees and costs

15    incurred by such professionals shall be borne by the Reorganized Debtor.

16    6.9.2    Ordinary Course Payments to Professionals.  Any professional employed

17    after the Effective Date shall be entitled to obtain payment of the professional's fees and

18    costs, in the ordinary course, without any need to give notice to Creditors or other parties-

19    in-interest or to obtain any approval of the Bankruptcy Court.  Notwithstanding the

20    foregoing, if the professional does not obtain payment of its post-Effective Date fees and

21    costs within thirty (30) days after the professional's rendering of its billing statement

22    therefor, the professional shall be entitled to seek, by application filed in accordance with

23    the Bankruptcy Rules, an order of the Bankruptcy Court requiring prompt payment to the

24    professional of its fees and costs.

25    **6.9    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**  Nothing

26    contained in this Plan shall be deemed to impair in any manner any right that the Reorganized

27    Debtor, may have to seek after the Effective Date orders of the Bankruptcy Court approving

28

280495279291.3

1    actions to be taken consistent with this Plan as may be necessary or desirable to effectuate the

2    provisions of this Plan.

3        **6.10    Reporting by Reorganized Debtor.**  The Reorganized Debtor shall provide timely

4    to the twenty largest unsecured creditors and the secured creditors all post-confirmation reports

5    that the Reorganized Debtor is required to file pursuant to the Confirmation Order.

6        **6.11    Transfer of Estate Property to Reorganized Debtor**.  Except as otherwise

7    specifically provided in this Plan, on the Effective Date, all property and rights of the Estate of the

8    Debtor shall be transferred to the Reorganized Debtor, free and clear of all Claims, Liens, and

9    rights of Creditors.  As of the Effective Date, the Reorganized Debtor may operate its business and

10   use, acquire, and dispose of property and settle and compromise Claims without the supervision

11   of, or any authorization from, the Bankruptcy Court or the United States Trustee, and free of any

12   restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions specifically

13   provided for in this Plan or the Confirmation Order.  As of the Effective Date, all property of the

14   Reorganized Debtor shall be free and clear of all Claims, Liens, and other rights of Creditors,

15   except as otherwise expressly provided herein.

16       **6.12    Disposition of Assets**.  From and after the Effective Date, the Reorganized Debtor

17   shall be entitled, to sell, transfer, encumber or otherwise dispose of any interest in any of its assets,

18   without any need for obtaining any approval of the Bankruptcy Court.

19       **6.13    Compromise of Controversies**.  From and after the Effective Date, the

20   Reorganized Debtor, shall be entitled to compromise any objections to Disputed Claims, or any

21   controversies relating to Causes of Action or other litigation pending after the Confirmation Date

22   without any need for any notice to Creditors or any approval of the Bankruptcy Court; *provided*,

23   *however*, the Debtor or the Reorganized Debtor, as the case may be, shall provide notice to

24   Creditors of any settlement that affects a Cause of Action, and any dispute regarding such

25   settlement may be adjudicated by the Bankruptcy Court..

26       **6.14    Bankruptcy Court Approval Relative to Post-Confirmation Matters**.  Nothing

27   contained in this Plan shall be deemed to impair in any manner the right of the Reorganized

28   Debtor or any party-in-interest to seek at any time after the Effective Date orders of the

1 Bankruptcy Court approving actions to be taken consistent with this Plan as may be necessary or

2 desirable to effectuate the provisions of this Plan.

3       **6.15**   **Debtor's Right of Setoff.**  Pursuant to 11 U.S.C. § 553 of the Bankruptcy Code or

4 applicable non-bankruptcy law, the Debtor may set off against any Allowed Claim and

5 Distribution to be made pursuant to this Plan on account of such Allowed Claim (before any

6 Distribution is made on account of such Allowed Claim), any account stated, claim, right, or cause

7 of action that the Debtor or the Estate, may possess against the holder of such Allowed Claim;

8 provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim

9 shall constitute a waiver or release by the Debtor or the Estate of any such account, claim, right,

10 and cause of action that the Debtor or the Estate may possess against the holder of such Allowed

11 Claim.  To the extent that the Debtor in allowing a Claim fails to effectuate a setoff with a Creditor

12 and seeks to collect a claim from such Creditor after a Distribution to such Creditor pursuant to

13 this Plan, the Debtors shall be entitled to full recovery on its claim against such Creditor,

14 notwithstanding any payment of the Creditor's Allowed Claim pursuant to this Plan.

15       In accordance with the provisions of 11 U.S.C. § 553 of the Bankruptcy Code, the Internal

16 Revenue Service and any other taxing authority shall be entitled to set off against any amounts

17 that such taxing authority may owe to the Debtor on account of overpayments by the Debtor of

18 pre-confirmation taxes any pre-confirmation tax liabilities that the Debtor may owe to such taxing

19 authority.

20       **6.16**   **Cash Payments**.  Cash payments made pursuant to this Plan shall be in United

21 States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor, or by wire

22 transfer from a domestic bank, at the option of the Reorganized Debtor, but subject to the payment

23 instructions as set forth in 11 U.S.C. § 7.5 of the Plan.

24 **VII.**

25 **DISTRIBUTIONS**

26       **7.1**   **Distribution Agent**.  The Reorganized Debtor shall serve as the Distribution Agent

27 for Distributions to be made to holders of Allowed Claims in the Case.  The Distribution Agent

28 may employ one or more sub-agents on such terms and conditions as it deems appropriate in the

-19-

1  exercise of their sole and absolute discretion.  The Distribution Agent shall not be required to

2  provide any bond in connection with the making of any Distributions pursuant to this Plan.

3      **Distributions**.  Any Distribution required to be made on the Effective Date shall be

4  deemed timely if made as soon as practicable after such date and, in any event, within thirty

5  (30) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming

6  an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon

7  as practicable thereafter but, in any event, within fifteen (15) days thereafter.

8      **7.2**      **Instruments and Securities**.

9      **7.2.1**      Rights of Persons Holding Instruments and Securities.  Except as otherwise

10  provided herein, as of the Effective Date, and whether or not surrendered by the holder

11  thereof, all Instruments and Securities evidencing or relating to any Claims shall be

12  deemed automatically cancelled and deemed void and of no further force or effect, without

13  any further action on the part of any person, and any Claims evidenced by or relating to

14  such Instruments or Securities shall be deemed discharged.

15      **7.2.2**      Cancellation of Liens.  Except as otherwise provided herein, any Lien

16  securing any Secured Claim shall be deemed released and discharged, and the Creditor

17  holding such Secured Claim shall be authorized and directed to release any collateral or

18  other property of the Debtor (including, without limitation, any cash collateral) held by

19  such Creditor and to take such actions as may be reasonably requested by the Reorganized

20  Debtor to evidence the release of such Lien, including, without limitation, by the

21  execution, delivery and filing or recording of such releases as may be requested by the

22  Reorganized Debtor.  If any Creditor fails to timely release any liens reflected in the public

23  record, then this Plan hereby grants to the Reorganized Debtor a power of attorney in fact

24  to execute on behalf of the Creditor any and all documents necessary to effectuate the

25  release of any and all liens in the name of Creditor.

26      **7.3**      **De Minimis Distributions**.  No Cash payment of less than fifty dollars ($50) shall

27  be made by the Reorganized Debtor to any Creditor.  Whenever payment of a fraction of a cent

28  would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to

-20-

280495279291.3

1   the nearest whole cent.  Any Cash or other property that is not distributed as a consequence of this

2   11 U.S.C. §  7. shall, after the last Distribution on account of Allowed Claims in the applicable

3   Class, be treated as Unclaimed Property under 11 U.S.C. §  7.6 of this Plan.

4         **7.4**    **Delivery of Distributions**.  Except as provided in 11 U.S.C. §  7.6 with respect to

5   Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative

6   Claims shall be distributed by mail as follows:  (i) with respect to each holder of an Allowed

7   Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of

8   Claim; (ii) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at

9   the address reflected on the Schedules filed by the Reorganized Debtor; provided, however, that, if

10   the Reorganized Debtor has received a written notice of a change of address for such Creditor, the

11   address set forth in such notice shall be used; or (iii) with respect to each holder of an Allowed

12   Administrative Claim, at such address as the holder thereof may specify in writing.

13         **7.5**    **Undeliverable Distributions**.  No further distribution of Unclaimed Property shall

14   be made to a Creditor unless and until the Reorganized Debtor is notified in writing of such

15   Creditor's then current address.  Subject to the provisions of 11 U.S.C. §  7.6 hereof, Unclaimed

16   Property shall remain in the possession of the Reorganized Debtor, pursuant to this 11 U.S.C. §

17   7.5, and shall be set aside and held in the Unclaimed Property Reserve to be maintained by the

18   Distribution Agent until such time as the subject Distribution becomes deliverable.  Nothing

19   contained in this Plan shall require the Reorganized Debtor or any other person to attempt to locate

20   such Creditor.

21         **7.6**    **Disposition of Unclaimed Property**.  If the Creditor entitled to a Distribution of

22   Unclaimed Property notifies the Reorganized Debtor of such Creditor's claim to the Distribution

23   of such Unclaimed Property within nine (9) months following the Initial Distribution Date, the

24   Unclaimed Property distributable to such Creditor shall be released from the Unclaimed Property

25   Reserve and paid to such Creditor within fifteen (15) days thereof.  Any Holder of an Allowed

26   Claim or Allowed Administrative Claim that does not assert a claim in writing for Unclaimed

27   Property held by the Reorganized Debtor, within nine (9) months following the Initial Distribution

28   Date shall no longer have any claim to or interest in such Unclaimed Property, and shall be forever

280495279291.3

barred from receiving any Distributions under this Plan or otherwise from the Reorganized

Debtor.  In such cases, any such Unclaimed Property shall be retained by the Reorganized Debtor,

shall not be subject to the unclaimed property or escheat laws of any state or other governmental

unit, and shall be distributed on account of Allowed General Unsecured Claims at the time when

the succeeding Distribution is to be paid to General Unsecured Creditors pursuant to 11 U.S.C. § s

5.5 hereof.

**VIII.**

**OBJECTIONS TO CLAIMS AND DISPUTED CLAIMS**

**8.1**    **Resolution of Objections to Claims**.  The Reorganized Debtor shall have the right

to request that the Bankruptcy Court extend the Claims Objection Deadline.  If extended, the

Reorganized Debtor shall have the sole and exclusive right to object to any Claims.  The

Reorganized Debtor shall also have the exclusive right to resolve and settle objections to Disputed

Claims, in his sole and absolute discretion, without Court hearing.

**8.2**    **Treatment of Disputed Claims**.

**8.2.1**    No Distribution Pending Allowance.  If any portion of a Claim is a

Disputed Claim, no Distribution provided for under this Plan shall be made on account of

such Claim unless and until such Claim becomes an Allowed Claim and is no longer a

Disputed Claim.

**8.2.2**    Distribution After Allowance.  Within fifteen (15) days following the date

on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim,

the Distribution Agent shall distribute to the Creditor holding such Allowed Claim any

Cash that would have been distributable to such Creditor if, at the time of the making of

any Distribution to the Class of which such Creditor is a member, such Claim had been an

Allowed Claim and not a Disputed Claim.  No interest shall be paid on such Claim.

**8.2.3**    Reserves for Disputed Claims.  In the event that a Disputed Claim is

pending as to any Creditor, the Distribution Agent shall establish a Disputed Claims

Reserve, and maintain a reasonable reserve necessary to pay such Disputed Claim in

accordance with the Plan.  No disbursement of funds from the Disputed Claims Reserve

-22-

1    shall be made on account of a Disputed Claim until such Disputed Claim has been

2    determined by a Final Order of the Bankruptcy Court.  In the event that any Disputed

3    Claim is ultimately disallowed by the Bankruptcy Court, the amount reserved for such

4    Disputed Claim, which has been disallowed by the Bankruptcy Court, shall be distributed

5    on account of Allowed General Unsecured Claims at the time when the succeeding

6    Distribution is to be paid to General Unsecured Creditors pursuant to this Plan.

7                                                  **IX.**

8                    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

9            **9.1    Executory Contracts Being Assumed**.  Effective as of, and conditioned on, the

10   occurrence of the Effective Date, the Debtor hereby assumes all of the executory contracts and

11   unexpired leases of the Debtor, as set forth on Schedule 9.1 hereto, and if determined by the

12   Debtor prior to the Effective Date, assumes such additional executory contracts as may be

13   identified by the Debtor.

14           The Debtor may amend Schedule 9.1 to add thereto any executory contract or unexpired

15   leases, or to delete therefrom any executory contract or lease, up to and including the

16   Confirmation Date.  However, if any amendments are made to Schedule 9.1 less than twenty-four

17   (24) days before the Confirmation Date, the affected contract or lease parties shall have fifteen

18   (15) days from the date of service of notice of such amendments within which to serve on the

19   Debtor a written objection to the same.  Upon receipt of any such objection, the Debtor shall

20   promptly set a hearing on the same, and the assumption or rejection of the affected contract or

21   lease shall be delayed until the Bankruptcy Court makes a determination on this issue (such

22   determination may be made after the Confirmation Date, without delaying the confirmation of this

23   Plan).  To the extent that an executory contract or unexpired lease has been assumed prior to the

24   Confirmation Date by the Debtor pursuant to an order of the Bankruptcy Court, such assumption

25   shall not be affected by this Plan.  The assumption of any contract or lease pursuant to the

26   provisions of this 11 U.S.C. § 9.1 shall be only to the extent that such assumed contract or lease

27   constitutes an executory contract or unexpired lease within the meaning of 11 U.S.C. § 365 of the

28   Bankruptcy Code.  Inclusion of an agreement in Schedule 9.1 does not constitute an admission by

the Debtor or the Reorganized Debtor that (i) such agreement is an executory contract or unexpired lease within the meaning of 11 U.S.C. § 365 of the Bankruptcy Code, (ii) the Debtor must assume such agreement in order to continue to receive or retain rights, benefits, or performance thereunder or that any Claim under such agreement must be paid or default cured, or (iii) such agreement is a valid contract or lease.  Any contract or lease assumed pursuant to this Plan shall be assumed as previously amended or otherwise modified by the parties thereto, whether before or after the Petition Date.

        **9.2**      **Cure Claims.**  The amount of the Cure Claims identified on Schedule 9.1 shall be fixed in the amounts set forth therein, and the Debtor shall be liable and responsible for the payment of all Allowed Cure Claims pursuant to 11 U.S.C. § 365(b) of the Bankruptcy Code as set forth on Schedule 9.1 if an executory contract is assumed pursuant to this Plan. Any objection to the amount of any Cure Claim set forth in the Cure Claims Schedule shall be filed and served upon counsel for the Debtor on or before the fourteenth (14th) day prior to the Confirmation Hearing.  In the event that any such objection to the amount stated for a Cure Claim in the Cure Claims Schedule is not filed and served as set forth herein, the amount of the Creditor's Cure Claim shall be deemed forever to be the amount set forth in the Cure Claims Schedule, and any Cure Claim in excess of the amount set forth in the Cure Claims Schedule shall be waived and shall be forever barred in the Case, without further notice.  If the Debtor cannot resolve any such objections with the Creditor, the Debtor may either (i) elect to reject the executory contract or unexpired lease at the Confirmation Hearing, or (ii) have the Bankruptcy Court determine the merits of the objection on or after the Confirmation Hearing (without delaying the confirmation of this Plan).  Any amount of Cure Claim payable upon the assumption of an executory contract or unexpired lease shall be due and payable on or before the fifteenth (15th) day after the entry of a Final Order fixing the amount of the Cure Claim and then only in the amount fixed by such Final Order.

        **9.3**      **Executory Contracts Being Rejected**.  Effective as of, and conditioned on, the occurrence of the Effective Date, the Debtor rejects all executory contracts and unexpired leases not identified on Schedule 9.1, including all executory contracts and unexpired leases listed on

Schedule 9.3.  If the Debtor becomes aware of any executory contracts or unexpired leases not yet assumed or rejected or on Schedule 9.1, the Debtor reserves the right to file an amended Schedule 9.3 to identify any such contracts to be rejected.  If any amended Schedule 9.3 is filed later than twenty-four (24) days before the Confirmation Date, the affected contract or lease parties shall have fifteen (15) days from the date of service of notice of such amendments within which to serve on the Debtor a written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a hearing on the same, and the rejection of the affected contract or lease shall be delayed until the Bankruptcy Court makes a determination on this issue (such determination may be made after the Confirmation Date, without delaying the confirmation of this Plan).  To the extent that an executory contract or unexpired lease has been rejected by the Debtor prior to the Confirmation Date pursuant to an order of the Bankruptcy Court, such rejection shall not be affected by this Plan.

**9.4**    **Retention of Property Rights by Reorganized Debtor**.  To the extent that an agreement that provides the Debtor with property rights does not constitute an executory contract or unexpired lease, or the Debtor has obtained property rights under the executed portion of an executory contract or unexpired lease, rejection of such agreement shall not constitute an abandonment by the Debtor of any such property rights.

**9.5**    **Bar Date for Rejection Damages**.  Any Claim arising out of the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, their successors, Estate, or their properties, and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Rejection Claim is filed and served on the Reorganized Debtor within thirty (30) days after the later of (i) the date of entry of the order of the Bankruptcy Court approving the rejection of the executory contract or unexpired lease, or (ii) the Confirmation Date.

**9.6**    **Cure Claims Schedule**.  The Cure Claims Schedule shall be filed with the Bankruptcy Court, and served on the non-debtor parties to such executory contracts and unexpired leases, on or before the twenty-fourth (24th) day prior to the Confirmation Hearing.  Any objection to the amount of any Cure Claim set forth in the Cure Claims Schedule shall be filed and served

1  upon counsel for the Debtor on or before the fourteenth (14th) day prior to the Confirmation

2  Hearing.  In the event that any such objection to the amount stated for a Cure Claim in the Cure

3  Claims Schedule is not filed and served as set forth herein, the amount of the Creditor's Cure

4  Claim shall be deemed forever to be the amount set forth in the Cure Claims Schedule, and any

5  Cure Claim in excess of the amount set forth in the Cure Claims Schedule shall be waived and

6  shall be forever barred in the Case, without further notice.  If the Debtor cannot resolve any such

7  objections with the Creditor, the Debtor may either (i) elect to reject the executory contract or

8  unexpired lease at the Confirmation Hearing, or (ii) have the Bankruptcy Court determine the

9  merits of the objection on or after the Confirmation Hearing (without delaying the confirmation of

10  this Plan).  Any amount of Cure Claim payable upon the assumption of an executory contract or

11  unexpired lease shall be due and payable on or before the fifteenth (15th) day after the entry of a

12  Final Order fixing the amount of the Cure Claim and then only in the amount fixed by such Final

13  Order.

14  **X.**

15  **DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

16      **10.1    Discharge**.  Except as otherwise specifically provided in this Plan or in the

17  Confirmation Order, pursuant to 11 U.S.C. §  1141(d) of the Bankruptcy Code, the Distributions

18  and rights that are provided in this Plan shall be in complete satisfaction, discharge and release,

19  effective as of the Effective Date, of all Claims, whether known or unknown, liabilities of, Liens

20  on, obligations of, rights against and Interests in the Debtor and the Reorganized Debtor, and any

21  of their assets or properties, regardless of whether any property shall have been distributed or

22  retained pursuant to this Plan on account of such Claims, rights and Interests, including but not

23  limited to, Claims and Interests that arose before the Confirmation Date, including all debts of the

24  kind specified in 11 U.S.C. §  502(g), 502(h) and 502(i) of the Bankruptcy Code, in each case

25  whether or not (i) a Proof of Claim or Proof of Interest based upon such Claim or Interest is filed

26  or deemed filed under 11 U.S.C. §  501 of the Bankruptcy Code, (ii) such Claim or Interest is

27  allowed under 11 U.S.C. §  502 of the Bankruptcy Code, or (iii) the holder of such Claim or

28  Interest accepted this Plan.  The Confirmation Order shall constitute a determination of the

280495279291.3

1    discharge of all of the Claims against and Interests in the Debtor and the Reorganized Debtor,

2    subject to the occurrence of the Effective Date.

3        **10.2    Injunction**.  Except as otherwise expressly provided in this Plan, or in the

4    Confirmation Order, if the Debtor is granted a discharge by this Court, then on such date that the

5    Court grants a discharge, all Creditors who have held, hold, or who may hold a Claim, or who

6    have held, hold, or who may hold an Interest, which is discharged pursuant to the terms of this

7    Plan (including but not limited to states and other governmental units, and any state official,

8    employee, or other entity acting in an individual or official capacity on behalf of any state or other

9    governmental units) shall be permanently enjoined from the following: (i) taking any of the

10   following actions on account of any such discharged Claim or Interest: (a) commencing or

11   continuing in any manner any action or other proceeding against the Debtor, the Reorganized

12   Debtor, their successors, or their property; (b) enforcing, attaching, executing, collecting, or

13   recovering in any manner any judgment, award, decree, or order against the Debtor, the

14   Reorganized Debtor, their successors, or their property; (c) creating, perfecting, or enforcing any

15   Lien against the Debtor, the Reorganized Debtor, their successors, or their property; (d) asserting

16   any set off, right of subrogation, or recoupment of any kind against any obligation due to the

17   Debtor, the Reorganized Debtor, their successors, or their property and (e) commencing or

18   continuing any action, in any manner, in any place that does not comply with or is inconsistent

19   with the provisions of this Plan; and (ii) taking any actions on account of any claims or rights of

20   action that are revested in, or transferred to, the Reorganized Debtor as of the Effective Date or

21   under this Plan (to the extent that the Debtor's Estate first held such claim or rights of action or

22   held the right to assert such claim or right of action after the Petition Date), including, without

23   limitation, commencing or continuing in any manner any Avoidance Action (i.e., no party may

24   pursue any avoidance claims, except as otherwise provided by this Plan).  Any person or entity

25   injured by any willful violation of such injunction shall recover actual damages, including costs

26   and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the

27   willful violator.

28

280495279291.3

# XI.

## LIMITATION OF LIABILITY AND RELEASES

**11.1**    **No Liability for Solicitation or Participation**.  As specified in 11 U.S.C. § 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan or that participate in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

**11.2**    **Limitation of Liability**.  Effective as of the Effective Date, neither the Debtor, Reorganized Debtor, nor any of their respective Affiliates, nor any of their respective members, officers, directors, employees, and other agents, advisors and Professionals shall have or incur any liability to any Creditor or Interest Holder or to any other person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the approval of the Disclosure Statement, the consummation of this Plan, the administration of this Plan, the Case or the property to be distributed under this Plan, to the fullest extent permitted by applicable statutory and case law, except the Reorganized Debtor shall be liable for the performance of obligations assumed by them or imposed upon them under or by this Plan.

# XII.

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

**12.1**    **Conditions Precedent to Plan Confirmation**.  The Bankruptcy Court shall have entered the Confirmation Order on terms and conditions satisfactory to the Debtor.

**12.2**    **Condition Precedent to Plan Effectiveness**.  The following are conditions precedent to the occurrence of the Effective Date:

**12.2.1**  Confirmation Order must become a Final Order.  In the event that an appeal, petition for certiorari or motion for reargument or rehearing or comparable post-confirmation relief is filed with respect to the Confirmation Order, and no stay of the effectiveness of the Confirmation Order is obtained, the Debtor may elect, in the exercise

of its sole and absolute discretion, to proceed with the Effective Date of this Plan and consummate this Plan, by filing and serving upon the Secured Creditors, the United States Trustee and the party seeking such post-confirmation relief, notice of such election.

**12.2.2**  Subordination Judgment must become a Final Order.  In the event that an appeal, petition for certiorari or motion for reargument or rehearing or comparable post-judgment relief is filed with respect to the Subordination Judgment, and no stay of the effectiveness of the Subordination Judgment is obtained, the Debtor may elect, in the exercise of its sole and absolute discretion, to proceed with the Effective Date of this Plan and consummate this Plan, by filing and serving upon counsel for the Secured Creditors, and the United States Trustee, notice of such election.

**12.2.3**  All agreements, instruments and other acts contemplated by, or to be entered into, or completed pursuant to, or in order to facilitate the implementation of, this Plan, as determined by the Debtor, including, without limitation, any and all loan agreements, purchase agreements, and related closing documents shall have been duly and validly executed and delivered by the parties thereto and completed, and all conditions to their effectiveness shall have been satisfied or waived, except only for the entry of the Confirmation Order.

**12.3**  **Waiver of Conditions**.  The conditions set forth in 11 U.S.C. § s 12.2.1 - 12.2.3 hereof may be waived by the Debtor without notice, leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain the Confirmation Order and consummate this Plan.

**XIII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to 11 U.S.C. § 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and

2804952792913

intent of this Plan are carried out.  Without limiting the generality of the foregoing, the
Bankruptcy Court shall retain jurisdiction for the following purposes:

13.1    To hear and determine any and all objections to the allowance, or requests for
estimation, of Claims or the establishment of reserves pending the resolution of Disputed Claims,
or disputes regarding the settlement, withdrawal, or abandonment of any Cause of Action;

13.2    To consider and act on the compromise and settlement of any Claim against, or
cause of action on behalf of, the Debtor or its Estate, including, without limitation, any Avoidance
Action;

13.3    To hear and determine any motions pending on the Effective Date to assume,
assume and assign or reject any executory contract or unexpired lease and to determine the
allowance of any Claim resulting therefrom;

13.4    To enter such orders as may be necessary or appropriate in connection with the
recovery of the Debtor's assets, wherever located;

13.5    To hear and determine any and all required applications for allowance of
compensation and reimbursement of expenses of Professionals;

13.6    To hear and determine any and all controversies, suits and disputes arising under or
in connection with the interpretation, implementation or enforcement of this Plan and any of the
documents intended to implement the provisions of this Plan or any other matters to be resolved
by the Bankruptcy Court under the terms of this Plan;

13.7    To hear and determine any motions or contested matters involving Taxes, tax
refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor,
including, without limitation, matters involving federal, state and local Taxes in accordance with
11 U.S.C. § s 346, 505 and 1146 of the Bankruptcy Code;

13.8    To hear and determine any and all applications, adversary proceedings and
contested matters pending on the Effective Date or that may be commenced after the Effective
Date as provided in this Plan;

13.9    To effectuate Distributions under, and performance of, the provisions of this Plan;

-30-

1    13.10    To hear and determine any motion to modify any provision of this Plan after

2    confirmation of this Plan, and, if in the best interests of the Debtor and Creditors, modification of

3    this Plan even after this Plan has been substantially consummated;

4    13.11    To correct any defect, cure any omission or reconcile any inconsistency in this

5    Plan, the exhibits to this Plan and any documents executed in connection with this Plan, or any

6    order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out

7    the purposes and intent of this Plan;

8    13.12    To determine such other matters as may be provided for in the Confirmation Order

9    or as may from time to time be authorized under the provisions of the Bankruptcy Code or any

10   other applicable law;

11   13.13    To enforce all orders, judgments, injunctions and exculpations issued or entered in

12   connection with the Case or this Plan;

13   13.14    To enter such orders as may be necessary or appropriate in aid of confirmation and

14   to facilitate implementation of this Plan, including, without limitation, any orders as may be

15   appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or

16   vacated;

17   13.15    To determine any other matter not inconsistent with the Bankruptcy Code; and

18   13.16    To issue a final decree closing the Case.

19   **XIV.**

20   **MODIFICATION OF THIS PLAN**

21    At any time prior to the confirmation of this Plan, the Debtor may supplement, amend or

22   modify this Plan, provided that, after the voting with respect to this Plan, the Debtor shall not

23   make any modifications to this Plan that affect materially and adversely the interests of General

24   Unsecured Creditors under this Plan.  The Debtor shall provide notice of any such modification

25   of this Plan, and an opportunity to be heard thereon as required under the Federal Rules of

26   Bankruptcy Procedure.  After confirmation of this Plan, the Reorganized Debtor may apply to the

27   Bankruptcy Court to modify this Plan in accordance with 11 U.S.C. §  1127 of the Bankruptcy

28

280495279291.3

Code and apply to the Bankruptcy Court to remedy ministerial defects or omissions in this Plan or to reconcile inconsistencies in this Plan.

**14.1** **Nonconsensual Confirmation**.  In the event that any impaired Class of Claims should fail to accept this Plan in accordance with 11 U.S.C. §  1129(a)(8) of the Bankruptcy Code, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with 11 U.S.C. §  1129(b) of the Bankruptcy Code.

**XV.**

**MISCELLANEOUS**

**15.1** **Payment of Statutory Fees**.  All quarterly fees due and payable to the United States Trustee pursuant to 28 U.S.C. 1930(a)(6) shall be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve shall be established and set aside for payment in full thereof, as required by 11 U.S.C. §  1129(a)(12) of the Bankruptcy Code.  The Reorganized Debtor shall remain responsible for timely payment of his quarterly fees due and payable after the Effective Date, until the Reorganized Debtor's Case is closed, to the extent required by 28 U.S.C. 1930(a)(6).

**15.2** **Payment Dates**.  Whenever any Distribution to be made under this Plan becomes due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately following Business Day.

**15.3** **Other Documents and Actions**.  The Reorganized Debtor may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**15.4** **Notices**.  Except as expressly set forth herein to the contrary, all notices and requests in connection with this Plan shall be in writing and shall be hand delivered or sent by facsimile, with a copy sent by first-class mail, addressed to:

**TO THE DEBTOR:**

Global Premier Regency Palms Oxnard, LP
Attn:  Christine Hanna
2020 Main Street, Suite 300
Irvine, CA  92614
Email: christine@geb5.com

-32-

**WITH A COPY TO:**

Garrick A. Hollander, Esq.
Winthrop Golubow Hollander, LLP
1301 Dove Street, Fifth Floor
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:  (949) 720-4111
E-Mail:  ghollander@wghlawyers.com

All notices to any Creditor or Interest Holder shall be sent to it at its last known address or to the last known address of its attorney of record.  Any such person may designate in writing any other address for purposes of this 11 U.S.C. §  15.4, which designation shall be effective on receipt thereof by the Debtor.

15.5    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the state of California (without reference to its conflict of law rules) shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

15.6    <u>Binding Effect</u>.  This Plan and all rights, duties and obligations hereunder shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, Creditors, Interest Holders and their respective successors and assigns.

15.7    <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

15.8    <u>Severability of Plan Provisions.</u>  If, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of this Plan, the Bankruptcy Court shall, with the consent of the Debtor, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid,

-33-

void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of this Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

15.9    **No Waiver**.  The failure of the Debtor or any other entity to object to any Claim for purposes of voting shall not be deemed to be a waiver of the Debtor's or other entities' right to object to or examine such Claim, in whole or in part.

15.10    **Inconsistencies**.  In the event that the terms or provisions of this Plan are inconsistent with the terms and provisions of the exhibits to this Plan, any document executed in connection with this Plan, or the Disclosure Statement, the terms of this Plan shall control.

15.11    **Exemption from Certain Transfer Taxes and Recording Fees**.  Pursuant to 11 U.S.C. § 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other person or entity pursuant to, or implemented by, this Plan (including, without limitation, the granting of a security interest) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.  The Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.12    **Post-Confirmation Status Report**.  Within 180 days following the entry of the Confirmation Order, the Reorganized Debtor, shall file with the Bankruptcy Court a status report explaining the progress made toward consummation of this Plan.  The status report shall be served on the United States Trustee, and any parties who file a request for special notice of post-confirmation matters.  Unless otherwise ordered by the Bankruptcy Court, further status reports shall be filed every 180 days and served on the same entities.

15.13    **Post-Confirmation Conversion/Dismissal**.  A Creditor or other party-in-interest may file a motion to convert or dismiss the Case under 11 U.S.C. § 1112(b), if there is a default

-34-

by the Reorganized Debtor in performing this Plan.  The Reorganized Debtor reserves the right to object to any such motion for conversion or dismissal.

      15.14  **Changes in Rates Subject to Regulatory Commission Approval**.  The Debtor is not subject to governmental regulatory commission approval of its rates.

Date:  August   ~~July 30~~, 2025                    **GLOBAL PREMIER REGENCY PALMS**
                                                       **OXNARD, LP, a California limited partnership**

                                                       **GLOBAL PREMIER AMERICA #3, LLC,
a California limited liability company, its
General Partner**

                                                       By:_____
                                                       Name:  Christine Hanna
                                                       Its:     Manager

**SUBMITTED BY:**

**WINTHROP GOLUBOW HOLLANDER, LLP**

By: _/s/ *Garrick A. Hollander*_____
        Garrick A. Hollander
General Insolvency Counsel to
debtor and debtor-in-possession

# APPENDIX

## DEFINITIONS AND RULES OF INTERPRETATION

**A.    Definitions**.

The following defined terms are used in the Plan.  Any capitalized term that is not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    "Administrative Claim" means a Claim for costs and expenses of the administration of a Case under 11 U.S.C. §  503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, a Claim of a Professional employed at the expense of an Estate and any fees or charges asserted against an Estate under 28 U.S.C. § 1930.

2.    "Administrative Claim Deficit" means the unpaid balance owing to the Administrative Creditors after payments made to Administrative Creditors on account of their Allowed Administrative Claims from post-petition funds and Loan Proceeds.

3.    "Administrative Creditor" means a holder of an Allowed Administrative Claim.

4.    "Administrative Tax Claim" means a request by a Governmental Unit for payment of Administrative Claims for Taxes (and for interest or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs within the period from and including the Petition Date through and including the Effective Date.

5.    "Allowed Administrative Claim" means an Administrative Claim allowed pursuant to 11 U.S.C. § s 503(b) or 507(a)(1) and (a)(2) of the Bankruptcy Code or pursuant to 28 U.S.C. § 1930.

6.    "Allowed Claim"  means a Claim that is either (i) listed in the Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (ii) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court,

-36-

or as to which any such objection has been determined by a Final Order.  The amount of an Allowed Claim shall be as follows:  (a) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Bar Date, the amount of the Creditor's Claim as listed in the Schedules as neither disputed, contingent, unliquidated or unknown; or (b) if the Creditor filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (2) the amount thereof as fixed by a Final Order of the Bankruptcy Court if an objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court.  Any Claim that is not filed by the applicable Bar Date and that is listed as disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of the Plan, shall be zero, and no Distribution shall be made on account of such Claim.

7.      "Allowed Cure Claims" means an Allowed Claim for Cure Claims pursuant to the terms of the Plan and a Final Order.

8.      "Allowed Deficiency Claim" means that portion of an Allowed Claim which is in excess of the value of any collateral that is security for the repayment of the Claim, calculated in accordance with the provisions of 11 U.S.C. § 506 of the Bankruptcy Code.  Unless the Creditor should make an election under 11 U.S.C. § 1111(b) of the Bankruptcy Code, an Allowed Deficiency Claim held by any Creditor is treated hereunder as a Class 8 Allowed General Unsecured Claim.

9.      "Allowed General Unsecured Claim" means an unsecured Allowed Claim against the Debtor, however arising, not entitled to priority under 11 U.S.C. § 507(a) of the Bankruptcy Code, including, without limitation, a Rejection Claim.

10.      "Allowed Interest" means an Interest to the extent, and only to the extent, of the allowed amount of such Interest.  The amount of an Allowed Interest shall be (i) the amount provided by or established in the records of the Debtor on the Confirmation Date, provided, however, that a timely filed Proof of Interest shall supersede any listing of such

280495279291.3

Interest on the records of the Debtor; (ii) the amount stated in a timely filed Proof of

Interest if no objection to such Interest is filed prior to the Confirmation Date or such later

date as the Bankruptcy Court allows; or (iii) the amount of such Interest as fixed by a Final

Order of the Bankruptcy Court.

11.    "Allowed General Unsecured Claim" means a general unsecured claim that

is Allowed.

12.    "Allowed Priority Tax Claim" means an Allowed Claim provided for by 11

U.S.C. § 507(a)(8) of the Bankruptcy Code.

13.    "Allowed Priority Wage Claim" means an Allowed Claim provided for by

11 U.S.C. § 507(a)(4)(5).

14.    "Allowed Secured Claim" means an Allowed Claim secured by a valid and

unavoidable Lien against property in which an Estate has an interest, or which is subject to

setoff under 11 U.S.C. § 553 of the Bankruptcy Code, to the extent of the value,

determined in accordance with 11 U.S.C. § 506(a) of the Bankruptcy Code, of the interest

of the holder of such Allowed Claim in the Estate's interest in such property, or to the

extent of the amount subject to any setoff, as the case may be.

15.    "Assessment Contract" means the contract entered into between the

CSCDA and the Debtor pursuant to which the CSCDA provided the PACE Loan to the

Debtor.

16.    "Assets" means all assets owned by the Debtor.

17.    "Avoidance Action" means any action or proceeding filed pursuant to the

provisions of 11 U.S.C. § s 510, 542, 543, 544, 545, 547, 548, 549 or 550 of the

Bankruptcy Code, or any similar action or proceeding filed to recover property for or on

behalf of an Estate or to avoid a Lien or transfer.

18.    "Bankruptcy Code" means Title 11, United States Code, as amended.  All

citations in the Plan to 11 U.S.C. § numbers are to the Bankruptcy Code, unless otherwise

expressly stated herein.

280495279291.3

19.    "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, Northern Division, which has jurisdiction over the Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules and regulations pertaining thereto.

20.    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy Court for the Central District of California, as amended.

21.    "Bar Date" means the last date for creditors and equity security holders whose claims or interests are not scheduled, or are scheduled as disputed, contingent, or unliquidated in the Debtors' Schedules to file Proofs of Claim, except for the following Claims: (i) Administrative Claims, and (ii) Rejection Claims.  The Bar Date for the Debtor's Case is _____ for non-governmental entities and _____ for governmental entities.

22.    "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

23.    "Case" means the means the Chapter 11 case commenced by the Debtor and pending before the Bankruptcy Court as Case No. 9:25-bk-10329-RC.

24.    "Cash" means cash and cash equivalents including, but not limited to, checks or similar forms of payment or exchange.

25.    "Causes of Action" means any and all claims, demands, counterclaims, setoff rights, recoupment rights, defenses, interests, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, arising prior to the Effective Date, in contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not the subject of litigation or otherwise asserted as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the

-39-

Effective Date, including but not limited to:  (a) Avoidance Actions; (b) claims for refunds, rebates or returns of deposits of any nature, including, without limitation, any Tax or insurance refunds; (c) claims to recover accounts receivable or other payables; and (d) any other claims, rights, interests or demands which may be asserted against persons or entities.

26.    "Claim" means (i) a right to payment from the Debtor, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

27.    "Claims Objection Deadline" means the first Business Day following the six-month anniversary of the Effective Date.

28.    "Class" means the group of Claims or Interests classified in Article V of the Plan pursuant to 11 U.S.C. § s 1122 and 1123 of the Bankruptcy Code.

29.    "Class 6.1 General Unsecured Claim" means a General Unsecured Claim that is not held by an Insider or Related Party.

30.    "Class 6.1 Plan Fund" means a fund equal to $100,000 cash to be used to pay members of Class 6.1, which shall be sourced from the Exit Financier.

31.    "Class 6.2 Plan Fund" means a fund equal to $25,000 cash to be used to pay members of Class 6.2, which shall be sourced from the Exit Financier.

32.30.  "Class 6.2 General Unsecured Claim" means a General Unsecured Claim that is held by a Related Party.

33.31.  "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

34.32.  "Confirmation Hearing" means the hearing(s) scheduled by the Bankruptcy Court for the purpose of considering the confirmation of the Plan.

-40-

35.33.  "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the Plan.

36.34.  "Creditor" means the holder of an Allowed Claim or Allowed Administrative Claim.

37.35.  "CSCDA" means the California Statewide Communities Development Authority, the governing body for the California Open PACE Program.

38.36.  "Cure Claims" means the amounts necessary to cure any defaults under executory contracts and unexpired leases assumed under the Plan.

39.37.  "Cure Claims Schedule" means the schedule of the Cure Claims, which shall be filed with the Bankruptcy Court on or before the twenty-fourth (24th) day prior to the Confirmation Hearing.

40.38.  "Debt Discharge Amount" means any amount of potential discharged indebtedness for federal income tax purposes.

41.39.  "Debtor" means Global Premier Regency Palms Oxnard, LP, a California limited partnership.  For the purpose of the Plan, reference to "Debtor" may, at times, include the Reorganized Debtor.

42.40.  "Disclosure Statement" means the Debtor's Disclosure Statement in Support of Debtor's Chapter 11 Plan of Reorganization, as the same may be amended or modified from time to time.

43.41.  "Dismissal Order" means the Court's Order Approving Debtor's Motion for Order: (1) Approving Compromise of Controversy with JKO Group, Inc. and (2) Dismissing Chapter 11 Case [Docket no. 119] entered in and dismissing the Debtor's First Chapter 11.

44.42.  "Disputed Claim" means all or any part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been filed with respect to such Claim, and the Claim is listed in the Schedules as unliquidated, disputed, contingent or unknown, or; (ii) the Claim is the subject of a timely objection or request for estimation which is filed on or before the Claims Objection Deadline, which objection or request for estimation has not

-41-

been withdrawn or determined by a Final Order.  In addition, prior to the earlier of (a) the

Claims Objection Deadline, and (b) such date as the Bankruptcy Court allows the Claim

pursuant to a Final Order, any Claim that is evidenced by a Proof of Claim shall be deemed

a disputed Claim for purposes of calculating and making any Distributions under the Plan

if: (1) no Claim corresponding to the Proof of Claim is listed in the Schedules, (2) the

Claim corresponding to the Proof of Claim is listed in the Schedules as disputed,

contingent, unliquidated or unknown, (3) the amount of the Claim as specified in the Proof

of Claim exceeds the amount of any corresponding Claim listed in the Schedules as not

disputed, not contingent, and liquidated, but only to such extent, or (4) the priority or

classification of the Claim as specified in the Proof of Claim differs from the priority of

any corresponding Claim listed in the Schedules.

45.43.  "Disputed Claims Reserve" means a segregated, interest-bearing trust

account for the benefit of General Unsecured Creditors, established at a financial

institution that is an authorized depository under United States Trustee's guidelines, into

which the Distribution Agent will deposit the Distributions required by 11 U.S.C. §  8.2.3.

46.44.  "Disputed Lien(s)" means an asserted lien(s) against Assets of the Debtor

that is either subject to a Disputed Claim, not duly perfected, or subject to an Avoidance

Action or subject to an action pursuant to Bankruptcy Code 11 U.S.C. § s 510(c)(2)

and/or 506(d).

47.45.  "Distribution" means the Cash and any other property sold, transferred,

returned or otherwise distributed under the Plan.

48.46.  "Distribution Agent" means the Reorganized Debtor or such other person as

determined by the Reorganized Debtor.

49.47.  "Distribution Date" means with respect to any Allowed Claim or Allowed

Interest, the date on which a Distribution is required to be made under this Plan.

50.48.  "EB-5 Funds" means all funds that were contributed by foreign investors to

be used by the Debtor for the Debtor's assisted living project pursuant to the United States

EB-5 program.

280495279291.3

51.49.  "Effective Date" means a date that is the later of: (i) the tenth (10th) day after: (i) the satisfaction or waiver of the conditions set forth in 11 U.S.C. § s 12.1 and 12.2 of the Plan; or (ii) the order confirming the Plan becomes final and non-appealable.

52.50.  "Estate" means the Debtor's bankruptcy estate created under 11 U.S.C. § 541 of the Bankruptcy Code in the Case.

53.51.  "Event of Default" means the Debtor's failure to cure within the Grace Period a payment required to made to member(s) of any Class under this Plan pursuant to the terms herein.

54.    "Exit Financing" means the financing funded by the Exit Financier to facilitate the effectuation of the terms of the Plan, which shall include new value on behalf and for the benefit of the equity Interest holders of the Debtor, and such other debt and/or equity financing as may be necessary.

55.    "Exit Financier" means the party that provides Exit Financing.

56.    "Fair Market Value" means the current "as is" value of the Property, which, for purposes of this Plan, shall be an amount equal to the Property's tax assessed value according to the County Assessor as of the Petition Date, which is equal to eight million, three hundred seventeen thousand, seven hundred and nineteen dollars.

57.52.  "Final Order" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which a Debtor or a Reorganized Debtor is a party, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move to reargue, or to rehear shall have been waived in writing in form and substance satisfactory to the Debtor or to the Reorganized Debtor.

58.53.  "First Chapter 11" means the bankruptcy case commenced by, and arising from, the Debtor's filing of a voluntary petition under chapter 11 of the Bankruptcy Code on August 16, 2022, which was ascribed case no. 9:22-bk-10626-RC.

280495279291.3

59.54.  "First Payment Date" means the first Business Day of the first full month following the Effective Date.

60.55.  "General Administrative Claims Bar Date" means the date by which all requests for payment of Administrative Claims, except for a request for payment of a Claim of a Professional employed at the expense of an Estate, shall be filed with the Bankruptcy Court and served upon the Debtor, which shall be the date that is fourteen (14) days prior to the Confirmation Hearing.

61.56.  "General Unsecured Claim" means a Claim against the Debtor that is not (a) a Secured Claim, (b) an Administrative Claim, (c) a Tax Claim, or (d) a Priority Claim. This includes Class 6.1 General Unsecured Claims and Class 6.2 General Unsecured Claims.

62.57.  "General Unsecured Creditor" means the holder of an Allowed General Unsecured Claim.

63.58.  "Governmental Unit" shall have the meaning provided in 11 U.S.C. § 101(27) of the Bankruptcy Code.

64.59.  "GPA" means Global Premier America, LLC, which is owned fifty percent (50%) by Christine Hanna, and fifty percent (50%) by her brother Andrew Hanna.

65.60.  "GPA #3" means Global Premier America #3, LLC, which is owned 100% by GPA.

66.61.  "Grace Period" means a period of thirty (30) days after receipt of written notice of an asserted Event of Default.

67.62.  "Initial Distribution Date" means the date on which the first Distribution is made to a Class.

68.63.  "Insider" means any person that is defined as an "insider" pursuant to 11 U.S.C. § 101 of the Bankruptcy Code and all applicable case law interpreting same.

69.64.  "Interest" means any equity security in the Reorganized Debtor , including, without limitation, any common stock interest, preferred stock interest, stock option, warrant, partnership interest, or membership interest.

280495279291.3

70.65.  "Interest Holder" means the holder of an Interest in the Debtor. In particular, these Interests consist of: (i) GPA #3 as the general partner, which holds a 30% Interest in the Debtor (100% of which is owned by GPA, and (ii) 24 limited partners, who hold a collective 70% Interest in the Debtor.

71.66.  "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

72.67.  "JKO" means JKO Group, LLC, a Delaware limited liability company and successor to Debtor's secured creditor, Nano, and Blackhawk Solar, LLC, the assignee from JKO of JKO's rights and claims against the Debtor.

68.    "JKO Conveyance" means the transfer of the Property to JKO as result of JKO's recording of a deed in lieu of foreclosure on the Property, which is expected to occur as a result of the RFS Order.

73.69.  "Lien" means any lien, encumbrance, pledge or other charge against property.

74.70.  "Loan Documents" means all loan documents entered into by and between Nano and the Debtor that give rise to the JKO Claim, including, without limitation, the Construction Loan Agreement and Promissory Note dated March 23, 2020, as well as the Deed of Trust and UCC-1 financing statement dated August 30, 2018.

75.71.  "Nano" means Nano Banc, the original lender who provided construction financing to the Debtor.

76.72.  "PACE" means the holder of the claim arising from the PACE Loan, which is the CSCDA.

77.73.  "PACE Loan" means the amount of funds provided by the CSCDA to the Debtor pursuant to the Assessment Contract entered into in August 2023 between the CSCDA and the Debtor.

78.74.  "Paid in Full" means that the Debtor's payment obligations created by the Plan that are due to a particular Class of Creditor have been fully satisfied.

-45-

79.75. "Petition Date" means March 11, 2025, the date on which the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

80.76. "Plan" means the Debtor's First Second Amended Chapter 11 Plan of Reorganization, together with the exhibits and schedules hereto, as the same may be amended or modified from time to time.

81.77. "Plan Funds" means a fund equal to $100,000 cash to be used to pay members of Class 6.1 the aggregate of the Class 6.1 Plan Fund and Class 6.2 Plan Fund.

82.78. "Priority Claim" means any Allowed Priority Tax Claim or Allowed Priority Wage Claim.

83.79. "Priority Creditor" means a holder of any Allowed Priority Tax Claim or Allowed Priority Wage Claim.

84.80. "Priority Tax Claim" means any Claim provided for by 11 U.S.C. § 507(a)(8) of the Bankruptcy Code.

85.81. "Priority Tax Creditor" means a holder of an Allowed Priority Tax Claim.

86.82. "Professional" means a person or entity employed by the Debtors pursuant to a Final Order in accordance with 11 U.S.C. § s 327 of the Bankruptcy Code, or any attorney, accountant, appraiser, investment banker, broker, financial consultant, expert or other professional person employed by the Debtors post-confirmation.

87.83. "Projections" means the plan projections prepared by the Debtor reflecting Debtor's projected receipts and disbursements, including the assumptions on which such projections are based (**Exhibit 1** to the Disclosure Statement).

88.84. "Proof of Claim" means a written statement filed in a Case by a Creditor in which the Creditor sets forth the amount of its Claim, in accordance with Rule 3001 of the Bankruptcy Rules.

89.85. "Proof of Interest" means a written statement filed in a Case by an Interest Holder in which the Interest Holder sets forth the amount of its Interest.

90.86. "Pro Rata" means the proportionate share of an Allowed Claim held by a member of Class 6 (whether it is Class 6.1 or 6.2) relative to the total Allowed Claims held

by members of Class 6 (whether it is Class 6.1 or 6.2).   The Pro Rata formula is calculated as follows:

Allowed Claim of a member of Class 6.1 or 6.2

Total Allowed Claims of all members of Class

6.1 or 6.2

91.87.  "<u>Property</u>" means the real property located at 1020 Bismark Way, Oxnard, California, including all improvements made thereon.

92.88.  "<u>Regency Palms</u>" means the Debtor's subsidiary, Global Regency Oxnard Senior Care Services, LLC dba Regency Palms Senior Living.

93.89.  "<u>Rejection Claim</u>" means any Claim based upon, or arising from, the rejection of any executory contract or unexpired lease pursuant to order of the Bankruptcy Court or pursuant to the Plan.

94.90.  "<u>Related Party</u>" means any person or entity that is an Insider or is owned or controlled by Christine Hanna or Andrew Hanna, which includes: Christine Hanna, Magdy Hanna, GPA, Global Premier Development, Inc. and National Affordable Communities, Inc.

95.91.  "<u>Reorganized Debtor</u>" means the Debtor, as reorganized under the terms of this Plan on and after the Effective Date, and any successors thereto by merger, consolidation, acquisition, or otherwise.

96.92.  "<u>Required Notice Compromise</u>" means the compromise of any cause of action where the amount of controversy exceeds $50,000.

97.93.  "<u>Representatives</u>" means a party's employees, offices, directors, shareholders, agents, members, representations, and professionals.

94.     "<u>RFS Order</u>" means the Order Granting Motion for Relief from the Automatic Stay entered by the Bankruptcy Court on August 12, 2025, which lifted the automatic stay to allow JKO to enforce its remedies to obtain possession of the Property.

98.95.  "<u>Schedules</u>" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as required by 11 U.S.C. § 521(1) of the

280495279291.3

1    Bankruptcy Code, Rules 1007(a)(3) and (b)(1) of the Bankruptcy Rules, and Official

2    Bankruptcy Form No. 6, as the Schedules may be amended from time to time.

3        99.96.  "Secured Claim" means any Claim, including interest, reasonable attorneys'

4    fees, costs, and charges, to the extent allowable pursuant to 11 U.S.C. § 506(b) of the

5    Bankruptcy Code and the Plan, that is secured by a Lien on property in which a Debtor has

6    an interest or that is subject to recoupment or setoff under 11 U.S.C. § 553 of the

7    Bankruptcy Code, to the extent of the value of the interest of the holder of such Secured

8    Claim in the Debtor's interest in the property, determined pursuant to 11 U.S.C. § 506(a)

9    of the Bankruptcy Code.

10        100.97.        "Secured Creditor" means the holder of an Allowed Secured Claim.

11        101.98.        "Tax" means any tax, charge, fee, levy, or other assessment by any

12    federal, state, local or foreign taxing authority, including, without limitation, income,

13    excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad

14    valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include

15    any interest or additions attributable to, or imposed on or with respect to, such assessments.

16        102.99.        "Tax Claims" means any Claim, pre-petition or post-petition,

17    relating to a Tax.

18        103.100.        "Unclaimed Property" means any Distribution of Cash or other

19    property to a Creditor that is returned to the Reorganized Debtors as undeliverable.

20        104.101.        "Unclaimed Property Reserve" means an interest-bearing segregated

21    account in which Unclaimed Property shall be set aside and held as provided in 11 U.S.C.

22    § 8.7 of the Plan.

23        105.102.        "Uncured Default Determination" means a final non-appealable

24    order by the Bankruptcy Court determining that an Event of Default occurred, was not

25    excused or timely cured by the Debtor.

26        106.103.        "United States Trustee" means the Office of the United States

27    Trustee.

28    **B.    <u>Rules of Construction</u>**.

280495279291.3

For the purpose of this Plan, unless otherwise provided in this Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Plan to an existing document, Exhibit or schedule filed or to be filed means such document or schedule as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to an entity as a holder of a Claim includes that entity's successors and assigns; (v) except as otherwise stated herein, all references in this Plan to 11 U.S.C. § s, Articles and Exhibits are references to 11 U.S.C. § s, Articles and Exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; and (viii) the rules of construction set forth in 11 U.S.C. § 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Plan or any other provision in this 11 U.S.C. § .

## C.  **Schedules**.

All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

### Schedule 9.1

| Non-Debtor Contracting Party | Cure Claim |
|---|---|
| | |
| ~~Real Property Lease, as Amended, with Regency Palms~~ | ~~$0.00~~ |
| NESF Fund Services Corp/JTC USA | $0.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Schedule 9.3

## Executory Contracts Being Rejected

280495279291.3

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **DEBTOR'S SECOND~~FIRST~~ AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 9, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian David Fittipaldi -** brian.fittipaldi@usdoj.gov
- **Garrick A Hollander -** ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
  **Matthew D Pham -** mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Debra Riley -** driley@allenmatkins.com, plewis@allenmatkins.com
- **Jeremy H Rothstein -** jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com
- **United States Trustee (ND)-** ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On _____, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2025 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 9, 2025 | Silvia Villegas | */s/ Silvia Villegas* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

280495279291.3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF RED-LINED: (A) DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION; AND (B) DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 22, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian David Fittipaldi -** brian.fittipaldi@usdoj.gov
- **Garrick A Hollander -** ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
  **Matthew D Pham -** mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Debra Riley -** driley@allenmatkins.com, plewis@allenmatkins.com
- **Jeremy H Rothstein -** jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com
- **United States Trustee (ND)-** ustpregion16.nd.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **August 22, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2025 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 22, 2025 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

1

Label Matrix For local noticing
0973-9
Case 9:25-bk-10329-RC
Central District of California
Santa Barbara
Tue Apr 15 10:15:47 PDT 2025

Global Premier Regency Palms Oxnard LP
Christine Hanna
2020 Main St. Suite 300
Irvine, CA 92614

United States Trustee (LA)
915 Wilshire Blvd., #1850
Los AngelesCA90017

2

3

4

Northern Division
1415 State Street
Santa Barbara, CA 93101-2511

Andrew Hanna
Global Premier Development, Inc.
2010 Main Street, Suite 300
Irvine, CA 92614

California Dept of Tax and Fee Adm
Collection Support Bureau Bk Team
Mic: 74PO Box 942879
Sacramento, CA 94279-0001

5

6

7

California Dept. of Tax
and Fee Adm
Account Info Grp, MIC: 29
PO Box 942879
Sacramento, CA 94279

Christine Hanna
326 Quail Ridge
Irvine CA 92603

**20 LARGEST**
Door Systems
Attn: Mario Martinez
1150 La Brisas Place
Placentia, CA 92870-6643

8

9

10

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812-2952

**20 LARGEST**
Franchise Tax Board
PO Box 942857
Sacramento CA 94257-0531

11

12

13

Global Premier Regency Palms Oxnard,
LP
Attn: Christine Hanna
2020 Main Street Suite 300
Irvine CA 92614

**20 LARGEST**
Gary White
4206 Great Plains Dr NE
Salem OR 97305

**20 LARGEST**
Global Bancorp
Attn: Nina Hanna
8 Hilltop
Irvine CA 92603

14

15

16

Global Premier America LLC
c/o Christine Hanna (Reg Agent)
2020 Main Street Suite 300
Irvine, CA 92614

Global Premier America LLC
Attn: Christine Hanna
2020 Main Street Suite 300
Irvine, CA 92614

**20 LARGEST**
Global Realty and Investment Corp.
Attn: Nina Hanna
8 Hilltop
Irvine, CA 92603

17

18

19

Global Regency Oxnard
Senior Care Services, LLC
2020 Main St. Suite 300
Irvine, CA 92614

**SECURED**
JKO Group LLC
Attn: Jeremy Rothstein
G&B Law16000 Ventura Blvd
Suite 1000
Encino, CA 91436-2730

**20 LARGEST**
JTC USA Holdings
Attn: Dawn Shuster
75 State Street Suite 2801
Boston MA 02109

20

21

22

**SECURED**
Jones Hall, A Professional Law Corp
Attn: Corp Officer
475 Sansome Street, Suite 1700
San Francisco, CA 94111

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

**20 LARGEST**
Magdy Hanna
2200 Park Newport, #401
Newport Beach, CA 92660

23

24

25

National Affordable
Communities, Inc
Attn: Christine Hanna
2020 Main Street, Suite 300
Irvine, CA 92614

State of California
Employment Development Dpt
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

**20 LARGEST**
Studio Six5, Inc.
Attn: Corporate Officer
811 Barton Springs Rd Ste 800
Austin, TX 78704

26

27

28

| | | | |
|---|---|---|---|
| 1 | U.S. Securities and Exchange Commis<br>Attn:  Bankruptcy Counsel<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071-9591 | **20 LARGEST**<br>County of Ventura<br>Treasurer Tax Collector<br>800 S. Victoria Ave<br>Ventura, CA 93009 | **20 LARGEST**<br>Vortex Industries, Inc.<br>Attn: Corporate Officer<br>320 Irving Dr.<br>Oxnard, CA 93030 |
| 2 | | | |
| 3 | | | |
| 4 | **SECURED**<br>WO PACE Funding, LLC  Series 2023<br>c/o White Oak Global Advisors, LLC<br>Attn: Corporate Officer<br>3 Embarcadero Center, Floor 5<br>San Francisco, CA 94111 | **SECURED**<br>WO Pace Funding, LLC<br>Attn: California Statewide Comm.<br>Development Authority<br>~~1700 North Broadway, Suite 405~~<br>~~Walnut Creek, CA 94596~~<br>Rtd Mail 7/21/2025 – See Below New Address | **SECURED**<br>White Oak Global Advisors, LLC<br>Attn: Corporate Officer<br>3 Embarcadero Center, Suite 550<br>San Francisco, CA 94111 |
| 5 | | | |
| 6 | | | |
| 7 | | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA9101-7346 | **SECURED**<br>WO Pace Funding, LLC<br>Attn: California Statewide Comm.<br>Development Authority<br>3201 Danville Blvd, Ste 267<br>Alamo, CA 94507-1917 |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | **NEF [36]**<br>Allen Matkins Leck Gamble<br>Mallory & Natsis LLP<br>Attn: Matthew D. Pham<br>865 S. Figueroa Street, Suite 2800<br>Los Angeles, California 90017-2543 | **NEF RSN [35]**<br>Allen Matkins Leck Gamble<br>Mallory & Natsis LLP<br>Attn: Debra A. Riley<br>One America Plaza<br>600 West Broadway, 27th Floor<br>San Diego, California 92101-0903 | **NEF RSN [35]**<br>CSCDA<br>c/o White Oak Global Advisors<br>Attn: Jeff Habicht<br>3 Embarcadero Center, Suite 550<br>San Francisco, CA 94111 |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |