JAMES R. FELTON, ESQ. (State Bar No. 138767)
 jfelton@gblawllp.com
JEREMY H. ROTHSTEIN, ESQ. (State Bar No. 316140)
 jrothstein@gblawllp.com
G&B LAW, LLP
16000 Ventura Boulevard, Suite 1000
Encino, California 91436
Tel: (818) 382-6200 • Fax: (818) 986-6534

Attorneys for
JKO Group, LLC and Blackhawk Solar, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

| | |
|---|---|
| In re | Case No.: 9:25-bk-10329-RC |
| GLOBAL PREMIER REGENCY PALMS OXNARD, LP, a California limited partnership, | (Chapter 11) |
| Debtor and Debtor-in-Possession. | **OPPOSITION OF JKO GROUP LLC AND BLACKHAWK SOLAR, LLC, TO DEBTOR'S AUGMENTED MOTION TO VACATE AND JOINDERS THERETO** |
| | [Declaration of Jeremy H. Rothstein, Esq., filed concurrently] |
| | Pretrial Conference:<br>Date:    August 26, 2026<br>Time:    9:00 a.m. |
| | Hearing:<br>Date:    August 27, 2026<br>Time:    9:00 a.m.<br>Ctrm:    Courtroom 201<br>          1415 State Street<br>          Santa Barbara, CA 93101 |

JKO Group LLC ("JKO") and Blackhawk Solar, LLC ("Blackhawk") submit this Opposition to the *Debtor's Augmented Motion to (I) Vacate Order Granting JKO Group LLC and Blackhawk Solar, LLC's Motion for Relief from the Automatic Stay and (II) for Sanctions and Award of Attorney Fees* (the "Motion") and the joinders thereto filed by CBC, WAB, and Gerald Marcil (collectively, the "Joiners"). Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO
2681389.2 - 32572.0001

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   DISCLOSURE....................................................................................................2

III.  ARGUMENT .....................................................................................................2

    A.    Legal Standard ........................................................................................2

    B.    Both JKO and Blackhawk have rights under the Stipulation and are therefore creditors and real parties-in-interest..................................................3

    C.    CBC's position does not establish fraud...............................................5

    D.    Bankruptcy is not the appropriate forum to resolve the banks' dispute with each other, JKO, and Blackhawk ............................................6

    E.    The Debtor could have discovered the underlying facts through reasonable diligence ..............................................................................7

    F.    Rule 60(b)(6) does not provide separate grounds for relief here ...........................8

    G.    The Court should not award sanctions...................................................9

        1.    Sanctions under the Court's inherent powers are not appropriate for alleged misrepresentations in a motion.........................................9

        2.    The Motion does not identify sanctionable conduct by JKO/Blackhawk counsel ................................................................10

        3.    Other grounds for sanctions are unavailing .............................................11

        4.    The Debtor has not established damages .................................................12

IV.   CONCLUSION.................................................................................................12

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO

2681389.2 - 32572.0001

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, 111 S. Ct. 2123 (1991) ........................................................................9, 10

*Casey v. Albertson's Inc.*,
   362 F.3d 1254 (9th Cir. 2004) ........................................................................3, 8

*De Saracho v. Custom Food Machinery, Inc.*,
   206 F.3d 874 (9th Cir. 2000) ........................................................................3

*Delay v. Gordon*,
   475 F.3d 1039 (9th Cir. 2007) ........................................................................8

*Eskanos & Adler, P.C. v. Leetien*,
   309 F.3d 1210 (9th Cir. 2002) ........................................................................11

*Floorgraphics Inc. v. News Am. Mktg. In-Store Servs.*,
   434 F. App'x 109 (3d Cir. 2011) ........................................................................3

*Lawson v. Banta*,
   No. 18-3670, 2020 U.S. Dist. LEXIS 198210 (E.D. Pa. Oct. 26, 2020) ....................................8

*Price v. Lehtinen (In re Lehtinen)*,
   564 F.3d 1052 (9th Cir. 2009) ........................................................................9, 10

*Zhiwen Yang v. Yun Zhang (In re Ying Liu)*,
   No. 24-3522, 2025 U.S. App. LEXIS 13780 (9th Cir. June 5, 2025)........................................8

**Statutes**

B&P Code § 6068(d) ........................................................................11

Uniform Commercial Code........................................................................5

**Other Authorities**

Fed. R. Bankr. P. 7001(b) ........................................................................6

Fed. R. Bankr. P. 9011 ........................................................................11

Fed. R. Bankr. P. 7004........................................................................11

Fed. R. Civ. P. 60(b) ........................................................................1, 6, 8

Fed. R. Civ. P. 60(b)(3)........................................................................2, 3, 6, 8

Fed. R. Civ. P. 60(b)(6)........................................................................8, 9



ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Debtor filed its first bankruptcy because it could not afford to pay its secured debt. By Court-approved Stipulation, JKO agreed to subordinate its position and reduce monthly payments in exchange for partial payment and the execution of the Deed in Lieu in favor of Blackhawk. Blackhawk was entitled to record the Deed in Lieu if the Debtor defaulted. The Debtor defaulted. Thus, the Court entered the RFS Order to allow Blackhawk to record the Deed in Lieu.

That core sequence gave JKO and Blackhawk standing and supported both the RFS Motion and the RFS Order. None of the hundreds of pages of argument and evidence submitted by the Debtor or the Joiners over the past ten months negates that core sequence, which prevents the Debtor from meeting its burden under Rule 60(b). Doubts about the holder of the Promissory Note and beneficiary of the Deed of Trust may be relevant to disputes among non-debtors, but they did not deprive JKO or Blackhawk of standing.



Also, the Debtor in this bankruptcy case existed simply as a conduit to accept "rent" equal to its debt service from its wholly owned operating subsidiary and former tenant, non-debtor Global Regency Oxnard Senior Care Services, LLC (the "Tenant Subsidiary"). The Tenant Subsidiary has not paid rent at all during this case, even during the several months that the Debtor served as landlord. Since the Debtor's only operation was to collect rent, it has effectively never operated over the course of this case. The limbo created by the Motion has allowed the Tenant Subsidiary to operate undisturbed, with no disclosure or Court oversight, for more than a year. There is no evidence that the Tenant Subsidiary has generated or will generate sufficient net operating income to service its debt, including annual payments of $979,306.61 to California Statewide Communities Development Authority ("CSCDA"), nor that it has reserved such amounts for that purpose.

Given these problems, it is unsurprising that the Debtor and the Joiners ask the Court to focus entirely on JKO and Blackhawk's alleged actions. They draw attention to an array of other issues, including alleged wider fraud on the Joiners and unrelated third parties. But these wider disputes do not involve the Debtor and did not cause the problems that led to the RFS Order. The Debtor did not

1

default because it did not know who to pay; it defaulted because it could not afford the payments. The Debtor and Joiners cite this larger universe of disputes to encourage the Court to rule against JKO and Blackhawk here, but more caution is warranted. Granting the Motion is not necessary to protect WAB or CBC. It would just tie this case to complex litigation among banks and other third parties over hundreds of million dollars in other courts, with only the keyhole view of those proceedings that such parties tactically decide to provide. All to decide which creditor will ultimately wind up foreclosing on real property that the Debtor cannot afford to save.

Cut through the complications, and you have a Debtor (i) attempting to avoid the burden of the Stipulation it knowingly entered for reasons having nothing to do with its own business or conduct, and (ii) seeking more time under the protection of the automatic stay more than 15 months into the case, despite presenting no evidence of its financial condition or prospects for reorganization.

**II.**

**DISCLOSURE**

In the interest of candor, JKO and Blackhawk disclose the following three facts that may be relevant to the Court's determination. First, Mahender Makhijani was arrested on June 10 for alleged bank fraud. Second, JKO and Blackhawk's counsel has not been in communication with their client for more than six weeks as of the filing of this Opposition. Third, on April 28, 2026, the CSCDA, which holds the senior lien on the Property, sent a notice of default to counsel for JKO and Blackhawk, WAB, CSC, and the Debtor. The notice demanded cure within 10 business days on the grounds that two installment payments of $489,657.83, due in December 2025 and April 2026, have not been paid. To counsel for JKO and Blackhawk's knowledge, there has been no further communication or action following the notice of default letter. Rothstein Decl. ¶¶ 5-7.

**III.**

**ARGUMENT**

**A.  Legal Standard.**

The Debtor is not entitled to relief under Rule 60(b)(3), which provides that "on motion . . . the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or

2

other misconduct of an adverse party." "To prevail, the moving party must prove by clear and convincing evidence that [1] the verdict was obtained through fraud, misrepresentation, or other misconduct and [2] the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Machinery, Inc*., 206 F.3d 874, 880 (9th Cir. 2000). [3] These requirements are conjunctive. Also, courts specifically require that fraud "not be discoverable by due diligence before or during the proceedings." *Casey v. Albertson's Inc*., 362 F.3d 1254, 1260 (9th Cir. 2004) (citing *Pac. & Arctic Ry. and Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)); *see also Floorgraphics Inc. v. News Am. Mktg. In-Store Servs.*, 434 F. App'x 109, 111-12 (3d Cir. 2011). In *Casey*, the Ninth Circuit Court of Appeals affirmed the denial of a motion under Rule 60(b)(3) predicated on the non-moving party's failure to respond to a document production, because discovery recalcitrance does not constitute fraud under Rule 60(b)(3).

### B. Both JKO and Blackhawk have rights under the Stipulation and are therefore creditors and real parties-in-interest.

To obtain relief, the Debtor must show that the RFS Order was "obtained through" fraud or misrepresentation in the RFS Motion, not simply that the RFS Motion contained misrepresentations. The alleged misrepresentations they identify are that JKO and/or Blackhawk were the current holders of the Promissory Note and assignees of the beneficiary of the Deed of Trust. But the RFS Motion and RFS Order were based on JKO and Blackhawk's rights under the Stipulation.[1] The RFS Motion was presented on the mandatory local form for relief from stay to proceed against real property, but the grounds were fundamentally different than a typical secured creditor seeking to foreclose under a deed of trust. The Court recognized this at the time. In ruling on the RFS Motion, the Court stated:

> The crux of Movants' argument [was] that under the terms of the Stipulation, as approved by the Dismissal Order, upon the Payment Default in March 2025, and the Payment Defaults that have followed, the Movants are 'entitled to record [their] Deed in Lieu of Foreclosure and [are] entitled to relief from the automatic stay to exercise this remedy." August 5, 2025, Tentative Ruling, 67 (citing RFS Motion, pages 1-2).

[1] The Stipulation and other relevant facts were provided in support of the RFS Motion and are incorporated herein by reference.

3

As the Court recognized, the Stipulation was approved by this Court, after notice and a hearing, on the Debtor's own motion in the prior bankruptcy case. No party has asked the Court to reconsider that approval or invalidate the Stipulation, nor described the possible consequences of doing so. The Debtor and JKO were parties, and the Stipulation gave Blackhawk the right to record the Deed in Lieu upon the occurrence of a default. The representations about the holder and beneficiary were not relevant to the Court's determination. If those facts had simply been omitted, the basis for the Court's ruling would not have shifted.

Tellingly, the Debtor still does not analyze the Stipulation and its effect on the relief sought on the Motion. Paragraph 11 of the Stipulation provides, in relevant part (with emphasis added),

> "a. Not later than 3 business days after the execution of this Stipulation, the Debtor shall deliver to G&B Law, LLP, the original completed and notarized grant deed in lieu of foreclosure . . . (the "Deed in Lieu"). **The Deed in Lieu shall be in favor of an entity to be identified by Newco prior to the entry of the Approval Order (the "Deed Holder"). JKO, on behalf of itself and Deed Holder,** acknowledges and agrees that the Deed in Lieu provided under this paragraph is not intended to, and does not, transfer title at the time of execution. **Deed Holder** [i.e. the entity identified by Newco to hold the Deed in Lieu] **shall hold and retain the Deed in Lieu provided that the Company [i.e. the Debtor] complies in all respect with the terms of this Stipulation and there is no Payment Default or Uncured Default . . . JKO and Deed Holder shall be granted relief from the automatic stay to the extent necessary to take the foregoing actions**. . . .
>
> **c. The liens and security interests that JKO has on the Property will not merge with the legal estate and title in the Property that may be transferred pursuant to this Paragraph 11.c.** The liens and Loan Documents will not be released or relinquished, and the priority of the liens of the Loan Documents will not be altered or subordinated to any other liens or interests. JKO may merge the liens and security interests with the fee or leasehold title to the property, but only by a separate document recorded later or through foreclosure. The statutes of limitations applicable to the exercise of JKO's rights and remedies under the Loan Documents are extended and tolled until four years after the Maturity Date.

It is undisputed that the Debtor breached the Stipulation by failing to make payments and has not proposed any means of paying its obligations. Accordingly, under the Stipulation, JKO had a claim

4

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO

for breach, and Blackhawk had a right to record. The Debtor cannot argue that JKO is not a real party in interest to enforce a contract that JKO is party to.[2]

The Debtor's argument that Blackhawk is not a real party in interest is also misplaced. The Stipulation provides that the Deed in Lieu would be granted to an entity of JKO's choosing. On July 14, 2023, the Debtor filed a Motion asking this Court to approve its Stipulation with JKO supported by the Declaration of Christine Hanna [Case No. 22-bk-10626, Dkt. No. 79] (the "Dismissal Motion").[3] The form Deed in Lieu was attached as Exhibit 5 to the Dismissal Motion (as defined in the RFS Motion) from the first case, and it identifies Blackhawk Solar LLC by name. The Debtor cannot pretend that Blackhawk came out of nowhere ("Blackhawk does not appear anywhere on the chain of title," Motion, 8:20-22) to record the Deed in Lieu.

Clearly, JKO and Blackhawk both have standing to enforce their own rights under the Stipulation, which is what they did. The Debtor got what it bargained for under the Stipulation, and the Tenant Subsidary has gotten the better part of a year to operate without paying rent. The RFS Order should not be disturbed.

**C. CBC's position does not establish fraud.**

The Debtor and CBC also rely on CBC's argument that JKO and Blackhawk were not authorized to enter into the Stipulation, file the RFS Motion, and so on. But CBC does not point to a single provision that JKO or Blackhawk actually violated or explained how a violation altered the outcome of the RFS Motion. Moreover, even if CBC were correct that JKO and Blackhawk breached the contract, that is not clear and convincing evidence that JKO and Blackhawk acted fraudulently.

CBC's position is counterintuitive. CBC claims that in advancing JKO money to purchase the loan, it became the direct lender and payee on that loan, and the actual holder of the deed of trust. Even if that argument were technically correct under the contracts or the Uniform Commercial Code, it

---

[2] For this reason, the cases cited by the Debtor in its motion to vacate are all distinguishable. None of these cases hold that a party to a contract does not have the right to enforce the contract.

[3] The Court took Judicial Notice of the Dismissal Motion in granting the RFS Motion.

5

would not establish that a contrary interpretation is tantamount to fraud. Indeed, WAB has a contrary interpretation, which the Debtor does not dispute.

Rule 60(b)(3) requires clear and convincing evidence that the RFS Order was procured through misconduct that affected the integrity of the proceedings, not a retrospective assertion that the parties' contractual relationships can now be characterized differently with additional documents. The mere existence of contracts does not establish that any party misled the Court, much less that any such alleged misstatement prevented CBC or the Debtor from presenting available arguments at the time of the RFS Motion.

Further, CBC's position would actually invalidate not the RFS Order but the Stipulation, which no party seeks to do and which would have unexplored consequences.

**D. Bankruptcy is not the appropriate forum to resolve the banks' dispute with each other, JKO, and Blackhawk.**

CBC and WAB each claim to have been defrauded by JKO and Blackhawk, but those are disputes among non-debtors that can be and are being litigated in other courts. WAB and CBC have each initiated litigation about these issues, and CBC has specifically sought rescission. CBC Joinder, 7:13-16; WAB Joinder 2:1-3.

Both CBC and WAB agree that their positions are in conflict, and that their dispute should be resolved in another court. Per CBC, lien priority "will be addressed and resolved independently within the State Court forum, where it belongs." CBC Joinder, 8:3-4. Per WAB, "The Court need not decide the disputed interests of CBC and Western Alliance to do so . . . . if no [consensual] resolution can be reached, they can avail themselves of other courts to resolve their disputes." WAB Position Statement, 7:6-9 [Doc. 185] (incorporated by reference into WAB Joinder).

CBC challenges the Stipulation and Deed in Lieu itself, claiming that JKO breached its contract by not disclosing the first bankruptcy or that it was entering into both documents. But CBC does not cite the contractual provisions allegedly breached. WAB, for its part, disputes CBC's position. *Id.* at 5:1-7:4 ("CBC cites to caselaw that is inapposite to the facts and law relevant here."). And they ask to do this not via adversary proceeding, as required (*see* Fed. R. Bankr. P. 7001(b)), but via mutually contradictory joinders. The Debtor takes no position. Thus, the Debtor and the Joiners are in the odd

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO

2681389.2 - 32572.0001

position of not asking to determine whether CBC or WAB is right, but simply to assume that one of them must be, because they all agree that JKO and Blackhawk are in the wrong. But Rule 60(b) motions are not decided by majority vote. They require clear and convincing evidence. But the evidence here is conditional and contradictory, not clear and convincing.

The Debtor and Joiners cite the larger universe of disputes to encourage the Court to rule against JKO and Blackhawk here, but this factor favors caution. If JKO or Blackhawk actually defrauded WAB or CBC, that is a dispute among non-debtors. There are ongoing proceedings that can provide appropriate protections and accountability for those disputes. In those proceedings, the parties can use procedures that allow full proper airing and determination of the issues, rather than tying the dispute to a nebulous bankruptcy case.

And this case does remain nebulous. Debtor's sole operation before losing the Property was to collect rent from the non-debtor Tenant Subsidiary, which it did not do. Thus, the Debtor essentially ran this case for the benefit of a non-debtor, about whose operations it has disclosed nothing. If the Debtor asks for the Property back, but it has expressed no intent to collect back rent or future rent for the benefit of creditors as a whole. The reimposition of the automatic stay would thus primarily, if not exclusively, benefit the Tenant Subsidiary. Essentially, the Debtor is asking this Court to adjudicate a complex dispute among non-debtors so that a non-debtor can remain protected by the automatic stay indefinitely.

**E.  The Debtor could have discovered the underlying facts through reasonable diligence.**

The Debtor could have discovered the underlying facts through reasonable diligence. The Motion is based on documents publicly recorded against the Debtor's sole real property asset before the Petition Date and speculation based on those documents. These are paradigmatic examples of documents that can be discovered with reasonable diligence of the kind Debtor's counsel conducted before the first bankruptcy case. The Debtor claims that it should not have been expected to run a lien search because the RFS Motion was a summary proceeding, but that is something that could have been done at any time as due diligence about the Debtor's sole asset. In reality, this was not a failure of diligence, because JKO and Blackhawk had rights under the Stipulation that did not change based on

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO

2681389.2 - 32572.0001

the recordings. But if the recorded documents are as dispositive as the Debtor now claims, then the Debtor should have been sure to check for them.

Rule 60(b)(3) does not accord relief under these circumstances. *See Lawson v. Banta*, No. 18-3670, 2020 U.S. Dist. LEXIS 198210 (E.D. Pa. Oct. 26, 2020) (denying relief under Rule 60(b)(3) where the movant could have obtained the purportedly fraudulent proof of service from the docket). Further, as in *Casey*, the Debtor had discovery tools available (under the Federal Rules of Bankruptcy Procedure) but did not use them. In that case, the Ninth Circuit affirmed denial of Rule 60(b)(3) relief because the movant had not used discovery remedies to follow up on discovery requests, including a motion to compel. *See Casey v. Albertson's*, 362 F.3d at 1260-61. Here, the Debtor did not request any discovery before the RFS Order or even before filing its current Motion. So, the Debtor cannot now argue that JKO or Blackhawk unfairly withheld information that it has now decided is relevant. A Rule 60(b) motion is not an opportunity to present facts that could have been presented before an order is entered. The Debtor's position would discourage parties from being diligent and undermine the finality of a wide swath of orders, as litigants frequently disagree with the facts as presented by their adversaries.

The Debtor also claims that it could not have discovered the issues raised by CBC with reasonable diligence. But, as described in Section II.C above, CBC's allegations are flawed and insufficient to support Rule 60(b) relief. So, the Debtor's level of diligence regarding those allegations is irrelevant.

**F. Rule 60(b)(6) does not provide separate grounds for relief here.**

The Debtor's arguments under Rule 60(b)(6) likewise fail. First, Rule 60(b)(6) does not supplant the requirements of other subsections of Rule 60(b). It is only available "when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60." *Delay v. Gordon,* 475 F.3d 1039, 1044 (9th Cir. 2007). Thus, in a case "where the Debtors based their Rule 60(b)(6) motion on the same reasons that they sought relief under Rule 60(b)(3)," the Ninth Circuit ruled that it was appropriate to deny relief under Rule 60(b)(6). *See Zhiwen Yang v. Yun Zhang (In re Ying Liu)*, No. 24-3522, 2025 U.S. App. LEXIS 13780, at *4 (9th Cir. June 5, 2025). The Debtor tries to address this

8

issue by quoting generic language for how Rule 60(b)(6) is used, but its reasons under Rule 60(b)(6) remain fundamentally the same as its reasons under Rule 60(b)(3).

Nor is there any extraordinary circumstance that warrants relief. The Debtor borrowed the funds, signed the Stipulation, and did not and cannot comply with its terms. The Debtor is simply seeking a miracle cure based on extrinsic circumstances. That is not a basis for relief under Rule 60(b)(6).

**G. The Court should not award sanctions.**

*1. Sanctions under the Court's inherent powers are not appropriate for alleged misrepresentations in a motion.*

The Debtor also seek an seeks an award against JKO, Blackhawk, and their counsel of record (collectively defined as the Sanctions Parties) for alleged "damages suffered as a result of the improper and unauthorized filing of the RFS Motion and the improper recording of the Deed in Lieu[.]" The Debtor explains that the Court has the power and authority to impose sanctions for misconduct, including attorney's fees. But the fact that the Court has such authority does not answer the question of whether the Court should exercise that authority to impose sanctions here.

The inherent power to sanction should be "exercised with great caution*." Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991) (cited in Motion). While a court may impose sanctions for a broad range of misconduct, it "must make an explicit finding of bad faith or willful misconduct." *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009)[4] (citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003). Further, sanctionee must be "provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable, and [be] furthermore aware that he stood accused of having acted in bad faith." *Id.* at 1060 (internal quotations omitted).

Here, the Debtor fails that notice requirement by failing to apprise the Sanctions Parties of exactly which conduct is alleged to be sanctionable for bad faith. The Debtor does not even explain what it believes each individual Sanctions Party committed, simply lumping in JKO, Blackhawk, and

---

[4] Overruled on other grounds by *In re Gugliuzza*, 852 F.3d 884, 896 (9th Cir. 2017)

9

their counsel together. It appears that the basis for the sanctions is the alleged misrepresentations in the RFS Motion regarding the Promissory Note. But the Debtor provides no examples of a Court sanctioning a litigant or attorney simply for making a single motion with incorrect facts, even if the litigant did so intentionally. Such an approach would contradict the "American Rule" that each party bears its own attorneys fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32 at 35 (describing American rule). In *Price v. Lehtinen*, an attorney was sanctioned for:

> (1) [his] failure to attend and to inform debtor of her confirmation hearing; (2) the pressuring of debtor to list her house for sale with his brokerage firm; (3) the lender's condition of retaining [him] as the broker for the loan transaction; and (4) his letter to debtor falsely informing her that her bankruptcy case had been dismissed and that a foreclosure sale was imminent. *Id.* at 1057 (explaining that this created conflicts of interest).

In *Chambers*, the Supreme Court's succinct summary of the litigation misconduct consumed three full pages. *Chambers v. NASCO, Inc.*, 501 U.S. at 36-39. Among other things, the sanctionee ignored several warnings by the Court and violated multiple injunctive orders. *See id.* Filing a single motion is not remotely equivalent to the repeated bad faith and vexatious litigation tactics that give rise to sanctions under courts' inherent powers. This was a single incident, involving no warnings by the Court.

### 2. The Motion does not identify sanctionable conduct by JKO/Blackhawk counsel.

The Debtor's arguments for sanctions against counsel are baseless. The Debtor claims that counsel misrepresented in the RFS Motion that JKO/Blackhawk had physical possession of the promissory note and that they were named as beneficiary on the security instrument. As the Debtor acknowledges, that representation was based on the Declaration of Jaspreet Sethi. Describing testimony is not bad faith or willful misconduct, even if the testimony turns out to be false. The Debtor does not and cannot claim that counsel knew that this representation was false nor point to any identifiable sanctionable conduct by counsel.

In *Chambers* and *Price v. Lehtinen*, there was evidence that attorney actively engaged in the conduct at issue and that such attorney had sufficient knowledge to be accountable for their own actions. For instance, a litigation attorney should understand conflicts of interest and the difference

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO
2681389.2 - 32572.0001

between good faith and bad faith litigation tactics (e.g., filing too many motions, knowing non-compliance with discovery, undermining orders).

Sanctioning an attorney for adducing incorrect evidence is something else entirely. That approach would effectively make all attorneys the guarantors of their client's truthfulness. That is inconsistent with ethical rules and would have a serious chilling effect on lawyers' ability to represent clients.[5] Moreover, such lawyers would be powerless to separate themselves from their own clients' alleged misrepresentation, because an attorney must "maintain inviolate the confidence, and at ***every peril to himself*** or herself to preserve the secrets, of his or her client." Cal. Bus. and Prof. Code § 6068(d). For the same reason, counsel will not discuss the circumstances and client communications that led to the filing of the Motion.

Counsel denies any misconduct. Rothstein Decl. ¶¶ 3-4. It is unbecoming and discourteous to question an attorney's integrity without actual evidence of misconduct.

### 3.   *Other grounds for sanctions are unavailing.*

The Debtor and at least one Joiner also request sanctions under Federal Rule of Bankruptcy Procedure 9011. But "[a] motion for sanctions must be made separately from any other motion or request, describe the specific conduct alleged to violate (b), and be served under Rule 7004." The Debtor has not brought a separate motion, so its request under Rule 9011 fails. Nor has the Debtor described the specific conduct by counsel alleged to violate Rule 9011(b), as explained in the preceding subsection.

The Debtor also implies that the Sanctions Parties should be sanctioned for willful violation of the automatic stay in recording a Deed in Lieu. A willful violation only occurs "if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). But Blackhawk recorded the Deed in Lieu in compliance with the RFS Order. There was no automatic stay preventing the action, so the Sanctions Parties could not have known about it or intended to violate. Even if the Court retroactively nullifies the RFS Order,

---

[5] This would have a greater effect on small firms litigating against big firms, since the ruinous risk of paying big firms' attorney's fees would greatly exceed the upside of their own fees.

11

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO

2681389.2 - 32572.0001

it would not establish the requisite knowledge or intent. The Sanctions Parties could not have had actual, contemporaneous knowledge of the future nullification. Compliance with the RFS Order cannot retroactively be transformed into willful non-compliance with the automatic stay.

### 4. The Debtor has not established damages.

The Debtor asks for sanctions in the amount sufficient to compensate it for "damages suffered . . .including the fees and costs incurred in opposing the unauthorized RFS Motion and in bringing the within Motion[.]" But the Debtor does not quantify or even estimate those damages at all, effectively asking this Court to award sanctions without knowing the size of the award.

Moreover, the Debtor fails to acknowledge the benefit it obtained from the controversy around the RFS Order. The Debtor filed its chapter 11 petition to buy time following a default during which its Tenant Subsidiary could continue to operate. Because of the controversy, the Tenant Subsidiary will have operated for a full year without any court oversight or rent payment obligations. If the Court grants the Motion and conveys the Property back to the Debtors, the Debtor and Tenant Subsidiary will have received a massive boon, for reasons totally unrelated to its own business or conduct. In considering sanctions, that benefit must be weighed against whatever damages the Debtor claims to have suffered.

### IV.

### CONCLUSION

For the foregoing reasons, JKO and Blackhawk respectfully request that the Court deny the Motion and request for sanctions.

DATED: June 15, 2026                    G&B LAW, LLP

By:_____
        JAMES R. FELTON
        JEREMY H. ROTHSTEIN, ESQ.
        Attorneys for Creditor JKO Group, LLC
        and Blackhawk Solar, LLC

OPPOSITION TO AUGMENTED MOTION TO VACATE AND JOINDERS THERETO
2681389.2 - 32572.0001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16000 Ventura Blvd., Ste. 1000, Encino, CA 91436

A true and correct copy of the foregoing document entitled (specify): **OPPOSITION OF JKO GROUP LLC AND BLACKHAWK SOLAR, LLC, TO DEBTOR'S AUGMENTED MOTION TO VACATE AND JOINDERS THERETO.** be served or was served in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 15, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law**
- **Michael E Bubman    mbubman@mbn.law, aacosta@mbnlawyers.com**
- **Brian David Fittipaldi    brian.fittipaldi@usdoj.gov**
- **Amir Gamliel    agamliel@perkinscoie.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Craig S Ganz    ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com**
- **Steven T Gubner    sgubner@bg.law, ecf@bg.law**
- **Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com**
- **Peter W Lianides    plianides@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com**
- **Michael S Myers    myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com**
- **Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law**
- **Jordyn Paperny    jpaperny@wghlawyers.com, jmartinez@wghlawyers.com,svillegas@wghlawyers.com**
- **Matthew D Pham    mpham@allenmatkins.com, mdiaz@allenmatkins.com**
- **David M Poitras    dpoitras@bg.law**
- **Debra Riley    driley@allenmatkins.com, plewis@allenmatkins.com**
- **United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov**

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On June 15, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 15, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 15, 2026 | Andrea Contreras | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

2622781.1 - 32572.0001